## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| BEVERLY WOOTEN, as Surviving Spouse of BARRY WOOTEN and BARRY WAYNE WOOTEN, as Administrators of the ESTATE OF BARRY WYATT WOOTEN, Deceased, | CIVIL ACTION FILE NO: 5:23-cv-00346 |
| Plaintiffs, | |
| v. | |
| FORD MOTOR COMPANY and ROBERT BOSCH LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

---

## RECAST COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

---

COME NOW, Plaintiffs Beverly Wooten and Barry Wayne Wooten (hereinafter "Plaintiffs"), as Surviving Spouse of Barry Wyatt Wooten and as Co-administrators of the Estate of Barry Wyatt Wooten, by and through undersigned counsel, and hereby bring this Complaint for Damages and Demand for Jury Trial against Defendants Ford Motor Company ("Ford") and Defendant Robert Bosch, LLC ("Bosch), respectfully showing the Court as follows:

## INTRODUCTION

### 1.

This is a civil tort action seeking recovery for the personal injuries and ultimate wrongful death suffered by Barry Wyatt Wooten ("Barry Wooten" or "Mr. Wooten") arising from a single automobile wreck that occurred on September 14, 2021 in Monroe County, Georgia, in which Barry Wooten was severely injured and subsequently died as a result of a defects in his 2021 Ford F-150 ("Defective Ford"). On June 8, 2022, Plaintiffs initially filed Civil Action Number 5:22-CV-00209-MTT. On March 16, 2023, Plaintiffs voluntarily dismissed that action without prejudice. Plaintiffs are refiling this action pursuant to O.C.G.A. § 9-11-41(e) within six months of the voluntary dismissal, which runs on September 15, 2023.

### 2.

The Defective Ford which was designed, manufactured, and sold by Ford as a complete vehicle, and which contained components that were designed and manufactured by Ford. Based upon investigation to-date, but without the benefit of full fact discovery, Mr. Wooten's vehicle experienced a sudden system failure that caused a loss of the ability to control the vehicle and proximately caused the subject fatal crash. Mr. Wooten is survived by his widow, Plaintiff Beverly Wooten, and adult children, Plaintiff Barry Wayne Wooten and Wendy Wooten Wells.

**3.**

The sudden system failure in the Defective Ford is related to, but not limited to, the Automated (or Advanced) Driver Assistance Systems ("ADAS"), which includes the following components:

- o 360 camera view (360 Degree Camera View);

- o Active Park Assist (Active Park Assist);

- o Adaptive Cruise Control (Adaptive Cruise Control);

- o Collision Warning (Forward Collision Warning);

- o Collision Braking (Pre-Collision Assist);

- o Blind Spot Detection (Blind Spot Information System);

- o Lane Departure Warning (Lane Keeping System);

- o Lane Keep Assist 1 (Lane Keeping System);

- o Lane Keep Assist 2 (Lane Centering);

- o Rear View (Rear Parking Aid Camera);

- o Park Assist (Parking Aid);

- o Front Cross Traffic (Blind Spot Information System);

- o Rear Cross Traffic (Cross Traffic Alert);

- o Adaptive Lighting 1 (Automatic High Beams);

- o Adaptive Lighting 2 (Automatic Headlamp Leveling);

- o Adaptive Lighting 3 (Adaptive Front Lighting); and,

- o Traffic Sign Recognition (Speed Sign Recognition).

- o BlueCruise (Active Driving Assistance System)

ADAS also contains cameras, radar sensors, and ultrasonic sensors, which failed in the Defective Ford.  Hereinafter, reference to "ADAS" includes the above-named components and its related cameras, radar sensors, and ultrasonic sensors, as well as the related modules.

### 4.

This action includes defective design, negligence, manufacturing defect, strict liability, failure to warn, and punitive damages claims against the designers, manufacturers, distributors, and lessors of the 2021 Ford F-150 driven by Barry Wooten at the time of the crash, arising out of the defective design, selection, inspection, testing, manufacture, assembly, equipping, marketing, distribution, and sale of an uncrashworthy and defective 2021 Ford F-150.

### 5.

Based upon current information and belief, but without the benefit of fact discovery, Plaintiffs reserve the right to dismiss any presently-named party and/or add any party(ies) to this lawsuit if discovery reveals that any named Defendant believed to be at fault is not at fault, or that any unnamed entity is believed to be at fault after further facts are shown.

### PARTIES, JURISDICTION, VENUE & SERVICE OF PROCESS

**A. Plaintiffs**

### 6.

Plaintiff Beverly Wooten ("Plaintiff" or "Mrs. Wooten" herein) is a citizen and resident of the State of Georgia, residing at 22 Mallie Drive, Forsyth, Monroe County,

Georgia. She is the surviving spouse of Barry Wyatt Wooten, and a proper party to bring this personal injury action on Barry Wooten's behalf. Aside from asserting a claim on behalf of Barry Wooten as his surviving spouse, Mrs. Wooten also asserts a claim as co-administrator on behalf of the Estate of Barry Wyatt Wooten, having been duly appointed the co-administrator of the Estate of Barry Wyatt Wooten via letters of administration issued on June 6, 2022 by the Probate Court of Monroe County, Georgia, the county in which Mr. Wooten resided prior to his death. By filing this action, she avails herself of this Court's jurisdiction.

**7.**

Plaintiff Barry Wayne Wooten ("Plaintiff" or "Mr. Wayne Wooten" herein) is a citizen and resident of the State of Alabama. Mr. Wayne Wooten also asserts a claim co-administrator on behalf of the Estate of Barry Wyatt Wooten, having been appointed the co-administrator of the Estate of Barry Wyatt Wooten via letters of administration issued on June 6, 2022 by the Probate Case Court of Monroe County, Georgia, the county in which Mr. Wooten resided prior to his death. By filing this action, he avails himself of this Court's jurisdiction.

**B. Defendant Ford**

**8.**

Ford is a global corporation incorporated under the laws of Delaware with its principal place of business in Dearborn, Michigan. At all relevant times, Ford was doing business in the State of Georgia and was designing, manufacturing, producing, promoting, advertising, and selling motor vehicles, including the 2021 Ford F-150,

VIN 1FTFW1ED3MFB75128 involved in the incident that forms the basis of this Complaint. Ford transacts business in this State, derives substantial revenue from business in the State of Georgia, and maintains a registered agent to transact business in this State. Ford may be served by delivering Summons and the Complaint upon its registered agent, The Corporation Company, located at 106 Colony Park Drive, Suite 800-B, Cumming, Georgia 30040.

**C. Defendant Robert Bosch, LLC**

**9.**

Bosch is a Delaware corporation doing business in the State of Georgia, whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  At all relevant times, Bosch was doing business in the State of Georgia and was designing, manufacturing, producing, promoting, advertising, and selling component engine control systems and parts for use in motor vehicles, specifically including the Engine Control Module (collectively, referred to as "engine control system"), which is a component in the ADAS in the 2021 Ford F-150, VIN 1FTFW1ED3MFB75128 involved in the incident that forms the basis of this Complaint. Bosch transacts business in this State, derives substantial revenue from business in the State of Georgia, and maintains a registered agent to transact business in this State. Bosch may be served by delivering Summons and the Complaint upon its registered agent located agent at  2 Sun Court, Suite 400, Peachtree Corners, Georgia, 30092.

**C. Jurisdiction**

---

**10.**

*Personal Jurisdiction over Ford: Georgia's Long-Arm Statute.* Ford (either on its own and/or by and through its affiliated subsidiaries) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed tortious acts/omissions that caused injury in the State of Georgia. Ford also maintains a registered agent to transact business in the State of Georgia, rendering it a "resident" of Georgia for purposes of personal jurisdiction under Georgia law. Under Georgia's long-arm statute (O.C.G.A. § 9-10-91), this Court has personal jurisdiction over Ford.

**11.**

*Personal Jurisdiction Over Ford: Due Process.* Ford derives substantial revenue from sales of its motor vehicles and component parts within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, the subject 2021 Ford F-150 and other motor vehicles and component parts with the knowledge, intent and/or reasonable expectation that they would find their way to Georgia through the stream of commerce. Its business is affected by motor vehicle and component part sales in Georgia. In fact, Ford (either on its own and/or by and through its affiliated subsidiaries) maintains at least ninety-three (93) certified Ford dealerships in the State of Georgia. Ford systematically cultivates a market in Georgia for Ford F-150s, including Mr. Wooten's Ford F-150 which caused harm in Georgia. Ford's actions in

marketing and selling its vehicles and components to locations in Georgia and maintaining numerous licensed dealerships and a registered agent in Georgia, should have led it to reasonably anticipate being hailed into Court here. In short, Ford has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Ford in this Court comports with due process.

**12.**

*Personal Jurisdiction over Bosch: Georgia's Long-Arm Statute.* Bosch (either on its own and/or by and through its affiliated subsidiaries) transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, regularly does or solicits business in Georgia, and committed tortious acts/omissions that caused injury in the State of Georgia. Bosch also maintains a registered agent to transact business in the State of Georgia, rendering it a "resident" of Georgia for purposes of personal jurisdiction under Georgia law. Under Georgia's long-arm statute (O.C.G.A. § 9-10-91), this Court has personal jurisdiction over Ford.

**13.**

*Personal Jurisdiction Over Bosch: Due Process.* Bosch derives substantial revenue from sales of its engine control systems and integrated component parts within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, the subject 2021 Ford F-

150's defective engine control system including the Engine Control Module and the components used with and/or comprising said system parts and other motor vehicle engine control systems and component parts with the knowledge, intent and/or reasonable expectation that they would find their way to Georgia through the stream of commerce. Its business is affected by the engine control system and component part sales in Georgia, including the sale of the defective engine control system. Bosch's actions in marketing and selling its engine control systems, including the Engine Control Module, components, and the defective engine control system to businesses (such as Defendant Ford) and consumers located throughout the State of Georgia, and maintaining a registered agent in Georgia, should have led it to reasonably anticipate being haled into court here. In Short, Bosch has sufficient "minimum contacts" with Georgia such that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Bosch in this Court comports with due process.

## 14.

This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

**D. Venue**

**15.**

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the event or events giving rise to this claim occurred in Monroe County, Georgia, which sits in the Middle District of Georgia, Macon Division.

**16.**

This is an action related to tortious acts or omissions committed in and producing injury in the State of Georgia and therefore the substantive and procedural laws of Georgia apply to the claims asserted herein.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**17.**

Plaintiffs adopt by reference the foregoing paragraphs as if fully set forth herein.

**A. The Subject Single Automobile Crash**

**18.**

On September 14, 2021 at approximately 3:24 p.m. on Interstate 475/Georgia State Route 408 ("I-475") near exit 15 ramp in Monroe County, Georgia, the single automobile collision giving rise to this action occurred. At that time, Barry Wooten was traveling northbound on I-475 and preparing to take the exit 15 ramp. He was the sole occupant of his 2021 Ford F-150 and was acting prudently and with reasonable care at all times.

**19.**

As Mr. Wooten was proceeding to navigate his vehicle to the right onto the exit ramp for exit 15, the ADAS and/or the engine control system in the Defective Ford suddenly failed to properly operate causing Mr. Wooten to lose the ability to steer, brake, and decelerate the Defective Ford.  Instead of traveling to the right and onto the exit ramp, Mr. Wooten's vehicle traveled straight ahead onto the gore between I-475 and the exit 15 ramp. Mr. Wooten's vehicle struck the stationary exit 15 sign and proceeded in a straight line from there, ultimately crashing into a large tree where the vehicle came to rest ("Subject Crash"). From the time the Defective Ford departed the exit ramp lane of travel and through the entire crash sequence, the Defective Ford failed to respond to Mr. Wooten's steering and braking inputs and failed to decelerate even though the accelerator had zero input.

**20.**

As a result of the ADAS failure, the F-150 crashed forcefully head-on into a large tree at a high rate of speed. Mr. Wooten suffered severe injuries. Despite his injuries, Mr. Wooten was conscious and responsive when the first responders arrived at the incident scene. Mr. Wooten stated that he could hardly breathe, and his leg was hurting.  But for the ADAS failure, inclusive of the engine control system failure, the Subject Crash would not have occurred at all.

**21.**

Mr. Wooten was extricated from his vehicle and transported by ambulance to Atrium Health Navicent – The Medical Center in Macon, Georgia, where he

succumbed hours later to his severe and traumatic injuries after a period of severe mental and physical pain and suffering.

**22.**

Due to the defective design and/or manufacture of the Defective Ford, the ADAS of Mr. Wooten's 2021 Ford F-150 failed to respond to his steering and braking inputs and failed to decelerate, which caused Mr. Wooten's vehicle to travel off the highway and crash into a large tree despite Mr. Wooten's attempts to steer the vehicle safely onto the exit ramp. If the Defective Ford had responded to Mr. Wooten's steering, braking, and acceleration inputs, the Defective Ford would not have crashed, but would have returned to exit ramp lane of travel. But for the ADAS failure, inclusive of the engine control system failure, the Subject Crash would not have occurred, and the ADAS failure, inclusive of the engine control system failure, was a principal contributing and causal factor to Mr. Wooten's injuries, pain and suffering, and subsequent death.

**23.**

The statements regarding the facts of the Subject Crash in the paragraphs above, are confirmed by data retrieved from the Defective Ford's Event Data Recorder ("EDR Data"). Based on the EDR data, Mr. Wooten began increasing steer inputs (i.e., inputs to the steering wheel in the truck) approximately 2.9 seconds before the crash and continued to attempt to steer up to the moment of the crash, including steering inputs of over 80 degrees at multiple points in time before the crash and a steer input of 84.1 degrees in the millisecond before impact. Had the ADAS  been functioning

properly, the vehicle should have responded to those inputs and moved to the right, away from trees ahead of it and into a safe grassy area along side of the highway. But that did not happen. Photographs of the scene depict tire travel marks visible in the grass leading to the tree that are straight with no sign of yawing or turning. The physical evidence at the scene and the EDR data demonstrates that although Mr. Wooten had turned the steering wheel hard to the right, the vehicle's tires were not responding to that input and remained in a straight position, allowing the vehicle to travel straight into the large pine tree rather than steer to safety. Mr. Wooten tried hard for nearly three seconds to steer the vehicle away from harm with both steering and braking inputs and no accelerator input. Despite Mr. Wooten's inputs, the ADAS failed to operate properly, failed to turn the vehicle, failed to slow the vehicle, and actually accelerated the F-150 into the large pine tree in the milliseconds before impact while Mr. Wooten was forcefully standing on his brakes. The ADAS failure caused the Subject Crash.

## 24.

The visible, straight tire marks visible in the grass leading up to the tree are likely to be or may be explained by the fact that in addition to attempting steering inputs to avoid harm, Mr. Wooten also engaged the vehicle's anti-lock braking system (ABS) starting 2.5 seconds before impact and continued to engage the braking system all the way to the time of impact, which is also confirmed by the EDR report from the Defective Ford.

**25.**

The EDR data demonstrating variable hard steering inputs in the seconds before the crash as well as engagement of the ABS during those same seconds also demonstrate that Mr. Wooten was conscious, had become aware of the danger of the situation confronting him, and was actively attempting to react to and save himself in an emergency situation – meaning he was not suffering from any loss of consciousness or physical inability to attempt to operate the vehicle before the crash with the tree occurred. The fact that Mr. Wooten was steering and braking but unable to steer the vehicle away from harm also supports a conclusion that the moments before impact with the tree would have also been terrifying for Mr. Wooten, supporting his claim for pre-impact fright, shock, terror, and mental suffering.

**26.**

At all relevant times, it was known to Ford  that it is essential that all component parts of the vehicle — especially the ADAS — perform without substantial failure so that there was no increase in the likelihood of collisions.

**27.**

As a direct and proximate result of the crash caused by the sudden manifestation of this ADAS defect, Mr. Wooten suffered severe personal injuries and conscious pre- and postimpact pain and suffering, ultimately resulting in his death hours later.

## AGGRAVATING CIRCUMSTANCES

**The Subject 2021 Ford F-150**

### 28.

The 2021 Ford F-150, VIN No. 1FTFW1ED3MFB75128, a pickup truck, was designed, tested, manufactured, assembled, imported and/or distributed, marketed, sold, and placed into the stream of commerce as a complete product by Ford.

### 29.

Pleading in the alternative as permitted by Fed. R. Civ. P. 8, the ADAS assembly and ADAS system components of the 2021 Ford F-150 were designed and manufactured by Ford .

### 30.

Mr. Wooten purchased his Ford F-150 new and he was the only owner of the vehicle prior to the Subject Crash. Prior to his death, Mr. Wooten was employed as the national director of service and parts for Five Star Automotive Group, which includes Ford dealerships within the state of Georgia; he knew how to properly maintain a Ford vehicle and had in fact kept the Defective Ford in good repair and maintenance prior to the Subject Crash.

### 31.

The Subject Ford F-150 was manufactured in May of 2021 in Ford's Dearborn Truck Assembly Plant and first sold for use by a consumer after that date. This action is, thus, commenced less than (10) years from the date of the first sale for use of the

vehicle. It also commenced less than two years from the date of the Subject Crash, September 14, 2021, giving rise to this claim.

**32.**

Upon information and belief, Ford set the specifications, tolerances, and other criteria for the design and manufacture of its vehicles, including component systems and parts. And Ford designs and manufactures component parts for its vehicles, including those installed in the Defective Ford and the subject ADAS.  The extent to which Ford may have collaborated with another manufacturer in the design and manufacture of the ADAS or any other related defective system will be further developed in discovery, but it is clear that Ford designed and manufactured the system that failed Mr. Wooten.

**33.**

As expressly permitted by F.R.C.P. 8, Plaintiffs allege that Ford  is individually and possibly collectively responsible for the design and manufacture of the ADAS of the Defective Ford and for all warnings and consumer information related thereto.

**34.**

As with any of its vehicles, Ford, as the designer and manufacturer of the complete vehicle, designed and obtained components for the Defective Ford from a variety of suppliers, including Bosch, which Ford selected and contracted with to provide parts or components made to Ford's design and/or manufacturing specifications. Those parts and components were then assembled, either in whole or

in part by Ford and the completed vehicle was manufactured and sold by Ford, as a Ford product sold under its Ford brand.

**35.**

Ford , as the designer and manufacturer of the completed vehicle, placed the Defective Ford into the stream of commerce and is legally responsible for the failures of any systems or components, whether designed by Ford or obtained from component suppliers, which make up the completed vehicle.

**36.**

Upon information and belief, the Defective Ford, reached the consumer in substantially the same condition as when it left the control of Ford and had not been materially altered, modified, or damaged from its condition as initially designed, manufactured, assembled, and placed into the stream of commerce as a complete product by Ford . More specifically, upon further information or belief, no person or entity had modified or altered in any way the ADAS assembly or any of its component or sub-component parts from the condition it was in at the time it was designed, manufactured, and placed into the vehicle as the result of the concerted efforts of Ford .

**37.**

At the time of the Subject Crash, the Defective Ford was in substantially the same condition as when it left the control of Ford and had not been materially altered, modified, or damaged prior to the crash.

**38.**

It was, at all relevant times, known to Ford that its vehicles needed to be without defect and fit for their intended uses when used on public highways and that it is essential that all component parts of the vehicle perform without failure so as to prevent grievous injuries caused by collisions due to such vehicle failures.

**39.**

At the time of the Subject Crash, the Defective Ford was being used as intended and, in a manner, reasonably foreseeable by Ford.

**40.**

At the time the Defective Ford was sold new, it was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended when it left Ford's control.

**41.**

The Defective Ford did not have effective equipment collision avoidance technology which would have prevented this front-end single car crash and/or would have mitigated the seriousness of it resulting in no serious injuries to Mr. Wooten.

**42.**

However, here Ford either designed and/or manufactured the vehicle and/or ADAS in a defective way such that the vehicle and/or ADAS did not respond to Mr. Wooten's active steering, braking, and acceleration inputs while attempting to drive the Defective Ford onto an exit ramp.

**43.**

Ford also failed to provide adequate warnings to reasonably foreseeable users or consumers of the Ford F-150 so that they could properly evaluate the risks in using such a vehicle and such component parts prior to purchase and use of the product.

**44.**

The danger posed by the defective and unreasonably dangerous condition of the Defective Ford was known or should have been known by Ford.

**45.**

The Defective Ford failed to function as expected.

**46.**

Alternative feasible designs existed that would not impair the Defective Ford usefulness or desirability.

**47.**

It is reasonably probable that the alternative feasible designs for the Defective Ford would have prevented the harm and Plaintiffs' injuries.

**48.**

As detailed below, Ford is a tortfeasor with respect to the injuries and other damages suffered by Barry Wooten, in an amount to be determined by the enlightened conscience of the jury, but, under any scenario, in an amount in excess of the minimum amount necessary to confer jurisdiction in this Court.

## III.    LEGAL CLAIMS

### COUNT ONE
### (Ford—Defective Design)

### 49.

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

### 50.

Ford designed, manufactured, tested, marketed, promoted, advertised and/or sold the Defective Ford.

### 51.

As a product designer, Ford is strictly liable for defects in its products which cause harm to consumers as a result of such defects, and as such Ford had at all relevant times a duty to the public and to Mr. Wooten to design products free of defects and unreasonable risks of harm to owners, users, and occupants.

### 52.

When Ford designed the Defective Ford, including its ADAS assemblies it knew, or should have known through its own testing, studies, and other real-world incidents, that the ADAS failed to operate properly which could increase the risk of severe injury caused by a steering, braking, and acceleration failure.

### 53.

Ford is strictly liable under Georgia products liability law for designing the ADAS of the 2021 Ford F-150 with defects resulting in sudden steering wheel locking, loss of steering wheel control, total steering wheel failure, and/or total failure of the

brakes to decelerate with no accelerator input. Ford chose to install an ADAS that lacks adequate design features which increases the likelihood of an unavoidable crash caused by a sudden system failure.

**54.**

When the F-150 left Ford's control, Ford had unreasonably failed to adopt safer, practical, feasible, and otherwise reasonable alternative designs of the ADAS that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the F-150. In short, the Defective Ford vehicle is defective by design under factors recognized in Georgia because the risks of the chosen design outweighed the utility of the design.

**55.**

The Plaintiffs' claims are based on characteristics of the 2021 Ford F-150 that can be eliminated without substantially compromising its usefulness or desirability. Ford failed to warn the public of those dangers, and thus the product was additionally defective in its design because it lacked adequate warnings to allow consumers to make informed decisions about the purchase and use of the product.

**56.**

As a direct and proximate result of the defective design of the Defective Ford and ADAS assemblies by Ford, the Plaintiffs suffered damages in an amount greatly exceeding this Court's jurisdictional minimum.

**57.**

Ford  is liable for the Defective Ford's design defect(s) causing or contributing to the injuries and death of Barry Wooten and all damages that are recoverable by Plaintiffs under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

**COUNT TWO**
**(Ford—Negligence)**

**58.**

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

**59.**

As a designer and manufacturer of consumer vehicles, Ford owed and owes duties of reasonable care to vehicle owners, users, and the public, including the Plaintiffs and Mr. Wooten, to design, manufacture, fabricate, assemble, inspect, market, distribute, sell, and/or supply vehicles, including but not limited to the Defective Ford, in a way as to avoid harm to persons using them or on the roads with persons using them such as Plaintiffs, through Mr. Wooten.

**60.**

Ford owed and owes such a duty  to the public, including the Plaintiffs and Mr. Wooten, that its vehicles, such as the Defective  Ford, are not defective and are reasonably safe for occupants in reasonably foreseeable events, and which contain adequate warnings to apprise users of dangers of the product as designed, such that they may make informed decisions concerning the purchase or use of the product.

---

**61.**

Ford owed Plaintiffs a duty to detect safety defects in its vehicles before selling them, and to exercise ordinary care in the design, manufacture, fabrication, marketing, distribution, sale, and supplying of the vehicles, including the Defective Ford, when equipping them with an unsafe and defective ADAS.

**62.**

At all relevant times, Ford knew that it was reasonably foreseeable that vehicle owners and users would operate Ford vehicles on the roadway. Ford knew that proper ADAS, comprised of robust component parts, are essential to the drivability and safety of its vehicles on the roadway. Despite its knowledge of the need for robust ADAS system components parts to withstand normal and reasonably foreseeable driving maneuvers, Ford failed to provide them. Ford breached its duties of reasonable care by manufacturing, designing, and marketing a dangerous and defective vehicle, by failing to equip the Defective Ford with an ADAS free of defects, which caused Plaintiffs' injuries. The defects contained in the Defective Ford made a collision unavoidable in reasonably foreseeable events.

**63.**

Ford also owed a duty and continuing duty to provide to the public, including Mr. Wooten, with sufficient warnings to protect the interests of those reasonably foreseeable users or consumers who would, based on their own reasonable assessments of the risks and benefits, decline product use or consumption.

**64.**

At all times relevant to the Complaint, Ford owed to the public, including the Plaintiffs, a duty to design, manufacture, and install a safe and defect-free ADAS so that the use of such vehicles, including the Defective Ford, were not defective and unreasonably dangerous to use.

**65.**

Ford  was careless and negligent, in its designing, manufacturing, testing, placing into the stream of commerce, and selling the Defective Ford described in this Complaint in a defective condition, and failing to warn potential purchasers and users and others of the unreasonably dangerous characteristics of the Defective Ford as it was equipped at sale.

**66.**

Ford breached its duties to Plaintiffs by failing to appropriately design, construct, sell, and/or manufacture the Defective Ford with a reasonably reliable ADAS.  Ford breached its duty as follows:

(a) The Defective Ford designed, manufactured, and marketed by Ford failed to include a reasonably reliable ADAS, that would have been able to steer and slow the vehicle in a manner intended by the Plaintiff;

(b) Ford did not adequately test the Defective Ford to determine whether its ADAS would expose prospective owners, users and occupants of its Ford F-150s to an unreasonable risk of physical harm and/or death during foreseeable operation;

(c) Ford knew, or should have known, from its own crash tests that a vehicle, like the Defective Ford with a defective ADAS, would fail, leading to collisions and that serious injury to its occupants could result; and,

(d) Ford negligently, recklessly, and/or knowingly failed to warn prospective owners, users, or occupants, including Plaintiffs, of the unreasonable risk of physical harm associated with the dangers of a vehicle with a defective ADAS system like the system installed in the Defective Ford.

**67.**

Because of the unsafe and defective ADAS in the 2021 Ford F-150 model, including Mr. Wooten's Defective Ford, was dangerously unsafe for normal and foreseeable use by and in the presence of the public because of its unsafe design, defective manufacture, and failure to include a properly functioning, safe and effective ADAS.

**68.**

Ford further breached its duty by failing to provide adequate warnings to consumers, such as Barry Wooten, of the existence of the risks and dangers involved with using the Ford F-150, including the Defective Ford, which were unsafe and not free of defects in its ADAS.

**69.**

Ford failed to exercise reasonable care in its specifications, manufacturing, and design the Defective Ford.

**70.**

Ford failed to exercise reasonable care in overseeing the manufacturing and design for the 2021 Ford F-150, including the Defective Ford.

**71.**

The Defective Ford was dangerously defective and unsafe for normal and foreseeable use by and in the presence of the public because of its unsafe design and defective manufacture of the ADAS.

**72.**

Ford knowingly failed to adequately inspect and/or test the 2021 Ford F-150 including the Defective Ford, before and during the design, production, and sale of the vehicle to the public and/or knowingly placed the defective and unreasonably dangerous vehicle in the stream of commerce.

**73.**

Ford knowingly failed to adequately inspect and/or test the 2021 Ford F-150, including the Defective  Ford, before and during the design and production of the Defective Ford before it placed that vehicle into the stream of commerce without including safe and effective ADAS.

**74.**

Ford negligently, recklessly and/or knowingly sold the 2021 Ford F-150, including the Defective  Ford, with unsafe and defective safety features such as the ADAS, despite being fully aware of the importance of installing safety systems that are safe and free of defects.

**75.**

Ford negligently, recklessly, and/or knowingly failed to warn of the potential dangers posed to consumers and the public by the use of the Defective Ford.

**76.**

As a direct and proximate result of Ford's negligence in designing, manufacturing, testing, and/or selling a dangerously defective product, namely the 2021 Ford F-150, including the Defective Ford, and/or its component parts, Plaintiffs suffered severe and significant injuries.

**77.**

Plaintiff's injuries and Barry Wooten's death were reasonably foreseeable to Ford.

**78.**

Plaintiffs' exercise of reasonable diligence could not have prevented the injuries caused by Ford's negligence.

**79.**

As a direct and proximate result of Ford's negligent breaches of its duties, Plaintiffs suffered damages in an amount well exceeding the jurisdictional minimum required to confer jurisdiction in this Court.

**80.**

All injuries suffered by Plaintiffs relating to this incident, past, present, and future, are due to the negligence or gross negligence of Ford without any contributing

negligence on the part of Plaintiffs. Plaintiffs have complied with all conditions precedent to the filing of this action.

**81.**

Ford  is liable for its negligence in causing or contributing to the severe injuries and death of Barry Wooten and all damages that are recoverable by Plaintiffs under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

**COUNT THREE**
**(Ford—Manufacturing Defect)**

**82.**

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

**83.**

Plaintiffs contend that Mr. Wooten's severe injuries and death were caused by a design defect in the Ford F-150, but plead in the alternative, as permitted by F.R.C.P. 8, to the extent Mr. Wooten's injuries and death were not caused by a design defect, they were instead caused as a result of the Defective Ford or its ADAS assemblies being manufactured in such a way as to not be without defects, including but not limited to, component parts that failed to operate as intended leading to loss of vehicular control, steering failures, braking failures, and failure to decelerate.

**84.**

As a product manufacturer, Ford owed and owes duties to vehicle owners, users, and the public, including the Plaintiffs and Mr. Wooten, to exercise reasonable

care in manufacturing a product that is reasonably safe for its intended or foreseeable uses. Ford is strictly liable for all manufacturing defects in its products which cause harm to consumers because of such defects, and as such Ford had at all relevant times a duty to the public and to Mr. Wooten to manufacture products free of defects and unreasonable risks of harm to owners, users, and occupants.

**85.**

To the extent the defect resulted from a manufacturing failure rather than design defect, Ford is strictly liable under Georgia products liability law for manufacturing the 2021 Ford F-150 and its ADAS assemblies that did not perform as intended during normal and reasonably foreseeable driving maneuvers resulting in sudden steering wheel locking, loss of steering control, total steering wheel failure, failure to brake, and/or failure to decelerate.

**86.**

Despite its knowledge of the need for properly manufactured components and sub-components of the ADAS to provide consumers with a safe and reliable vehicle, Ford failed to provide them. To the extent the loss of steering, braking, failure to decelerate exhibited by the Defective Ford resulted from a manufacturing failure rather than from the design of the Defective Ford itself, Ford breached its duties of reasonable care by manufacturing the Defective Ford in such a way that it deviated from its intended design, making it more dangerous than it would have been if manufactured as specified.

---

**87.**

As a direct and proximate result of Ford's deviation in manufacturing the Defective Ford from its intended design to the extent the Defective Ford's defect resulted from a manufacturing rather than design defect, Plaintiffs suffered damages in an amount well exceeding the jurisdictional minimum required to confer jurisdiction in this Court.

**88.**

Ford  is liable for any manufacturing defect(s) causing or contributing to the injuries and death of Barry Wooten and all damages that are recoverable under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

**COUNT FOUR**
**(Ford--Strict Liability)**

**89.**

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

**90.**

Plaintiffs are informed and believe, and upon such information and belief allege that at all times herein mentioned, the Defective Ford, and its related components and/or materials, or lack thereof, were defective and dangerous, in manufacture, design, sufficient instructions, and warnings, in that such defective components, materials, or lack of an effective and safe ADAS system for the Defective

Ford were likely to cause, bring about, and affect a failure of the Defective Ford, thereby rending the Defective Ford unsafe for its intended use.

**91.**

Furthermore, Plaintiffs are informed and believe, and upon such information and belief allege, that certain additional components and/or materials of the Defective Ford were defective in manufacture, design, sufficient instructions, and warnings, and the Defective Ford was neither appropriately nor adequately tested.

**92.**

Plaintiffs are informed and believe, and upon such information and belief allege that, at the time of the incident complained of, the Defective Ford was in substantially the same condition as it was when it left Ford's possession.

**93.**

At all times and places mentioned herein, Ford knew or should have known at the time said product left its possession, that said product was defective in design, manufacture, sufficient instructions, and warnings, that it did not meet users' and ordinary consumers' reasonable expectations for safety when used in a reasonably foreseeable manner, and was dangerous, defective, unfit, and unsafe for its intended use and that said conditions were likely to cause and bring about a failure and malfunction of the Defective Ford when used in a foreseeable manner, and not properly and adequately tested or inspected.

**94.**

Plaintiffs are informed and believe, and upon such information and belief allege that, the Defective Ford had associated deficits, risks, and defects, including

but not limited to, its defectively designed ADAS and/or lacked sufficient warnings and/or use instructions. Moreover, Ford failed to adhere to industry standards regarding the design, testing, distribution, and manufacturing process, amongst others, and failed to incorporate in the Defective Ford's defective design, a properly functioning crash avoidance technology which could have averted or mitigated Plaintiffs' injuries and damages, including that of decedent, Mr. Wooten.

**95.**

These deficits, risks, and defects were known or certainly knowable by Ford via the use and employ of scientific knowledge available at the time of design, manufacture, testing, and distribution of the Defective Ford.

**96.**

The associated risks, deficits, and defects of the Defective Ford presented a substantial danger to users of the product and ordinary consumers would not have recognized the associated risks, deficits, and defects.

**97.**

Ford further failed to adequately warn of the potential risks and hazards associated with the Defective Ford when used in a way that was reasonably foreseeable to Ford. This lack of sufficient use instructions and/or warnings was a substantial factor in causing the failure of the Defective Ford and, consequently, Mr. Wooten's death and bringing about Plaintiffs' damages.

**98.**

At the times and places mentioned herein, Ford knew or should have known at the time the Defective Ford left Ford's possession, that the Defective Ford was defective in instructions, warnings, design, and manufacture, likely to perform unsafely in a manner unanticipated by a user, and having such knowledge, Ford should have used reasonable care to warn, or give adequate use instructions and warning of the Defective Ford's defects and deficits in design and operational characteristics to those intending to use the Defective Ford in the manner in which it was intended to be used.

**99.**

At all times and places mentioned herein, Ford failed to use reasonable care to warn, give adequate use instruction or warning to provide facts describing the Defective Ford's dangerous propensities, to those whom they could expect to use the product or be endangered by its probable use, and such defects as illustrated herein above were a substantial factor in Mr. Wooten's death, and causing Plaintiffs' damages. The foreseeable risks of failure associated with the design of the Defective Ford outweigh the benefits associated with the Defective Ford.

**100.**

The Defective Ford was further defective due to inadequate warnings or use instructions because Ford knew or should have known that the defectively designed Defective Ford created a high risk of failure and resulting harm. Ford failed to adequately and timely warn consumers of the risk.

**101.**

On or about September 14, 2021 while Mr. Wooten used the Defective Ford in a reasonably foreseeable manner and for the purpose for which it was intended, by reason of the defective conditions thereof, and as a legal and proximate result thereof, the Defective Ford failed to perform properly.

**102.**

As a proximate result of the defects referenced herein above, the failure to use reasonable care to warn or give adequate use instructions and/or warning of the defective condition and dangerous characteristics of the Defective Ford when used in the intended manner, caused Mr. Wooten's death and Plaintiffs sustained economic and noneconomic damages , and other such damages, all in an amount to be proven at trial.

**103.**

Plaintiffs seek unliquidated damages exceeding the amount necessary to confer  jurisdiction in this Court.

**104.**

All injuries suffered by Plaintiffs relating to this incident, past, present, and future, are due to the negligence or gross negligence of Ford  without any contributing negligence on the part of Plaintiffs.

## COUNT FIVE
### (Ford—Failure to Warn)

### 105.

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

### 106.

As described throughout this Complaint, Ford designed and manufactured the 2021 Ford F-150, the Defective Ford.

### 107.

At all times, Ford caused the Defective Ford to be placed into the stream of commerce without adequately warning users or bystanders of the Defective Ford's deficiencies.

### 108.

The Defective Ford possessed characteristics that caused severe damage to Plaintiffs. Ford failed to use reasonable care to provide adequate warnings of such dangerous characteristics to owners, users and/or handlers of the Defective Ford.

### 109.

At the time of Plaintiffs' injuries, the Defective Ford was dangerous to an extent beyond that which would be contemplated by an ordinary owner, user and/or handler of the Defective Ford, with the ordinary knowledge common to the community as to the Defective Ford's characteristics.

**110.**

As a direct and proximate result of Ford 's failure to warn of the dangers of the Defective Ford, Plaintiffs sustained serious and substantial injuries.

**111.**

Ford is liable to Plaintiffs for failing to warn of the Defective Ford's deficiencies at the time the Defective Ford left Ford 's possession and/or control.

**112.**

Ford's instructions contained insufficient warning to adequately alert consumers of the dangerous risks associated with the Defective Ford.

**113.**

Ford  failed to provide adequate warnings of such risks and dangers to the consumer and/or innocent bystanders using the road.

**114.**

As a direct and proximate result of the Defective  Ford's defects, Plaintiffs suffered severe and significant injuries.

**COUNT SIX**
**(Bosch—Defective Design)**

**115.**

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

**116.**

As a product designer, Bosch is strictly liable for defects in its products which cause harm to consumers as a result of such defects, and as such Bosch had at all

relevant times a duty to the public and to Mr. Wooten to design products free of defects and unreasonable risks of harm to owners, users, and occupants.

**117.**

When Bosch designed the Defective Ford's defective engine control system, including the Engine Control Module, in whole or in part with Ford, it knew, or should have known through its own testing, studies, and other realworld incidents, that the engine control system, including the Engine Control Module, failed to operate properly which could increase the risk of severe injury caused by a steering failure, failure to brake, and failure to decelerate.

**118.**

Bosch is strictly liable under Georgia products liability law for designing the defective engine control system, including the Engine Control Module, of the 2021 Ford F-150 without sufficient and adequate design features which has increased the likelihood of an unavoidable accident caused by a sudden engine control system failure.

**119.**

When the Defective Ford's defective engine control system left Bosch's control, Bosch had unreasonably failed to adopt safer, practical, feasible, and otherwise reasonable alternative designs of the engine control system that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the vehicle's engine control system. In short, the Defective Ford's defective engine

control system is defective by design under factors recognized in Georgia because the risks of the chosen design outweighed the utility of the design.

**120.**

The Plaintiffs' claims are based on characteristics of the 2021 Ford F-150 defective engine control system manufactured by Bosch (in collaboration with co-Defendant Ford) that can be eliminated without substantially compromising its usefulness or desirability. Like Ford, Bosch failed to warn the public of those dangers, and thus the product was additionally defective in its design because it lacked adequate warnings to allow consumers to make informed decisions about the purchase and use of the product.

**121.**

As a direct and proximate result of the defective design of the Defective Ford's defective engine control system assemblies by Bosch, the Plaintiffs suffered damages in an amount greatly exceeding this Court's jurisdictional minimum.

**122.**

Bosch is liable, along with Defendant Ford, for the Defective Ford's design defect(s) causing or contributing to the injuries and death of Barry Wooten and all damages that are recoverable under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

## COUNT SEVEN
### (Bosch—Negligence)

### 123.

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

### 124.

As a designer of component systems or parts for motor vehicles, Bosch owed and owes duties of reasonable care to vehicle owners, users, and the public, including the Plaintiffs and Mr. Wooten, to design, manufacture, fabricate, assemble, inspect, market, distribute, sell, and/or supply engine control systems, including but not limited to the defective engine control system installed in the Defective Ford, in a way as to avoid harm to persons using them or on the roads with persons using them such as Plaintiffs, through Mr. Wooten.

### 125.

Bosch owed Plaintiffs a duty to detect safety defects in its engine control systems before selling them, and to exercise ordinary care in the design, manufacture, fabrication, marketing, distribution, sale, and supplying of the engine control system, including the defective engine control system installed in the Defective Ford, when equipping them an unsafe and defective engine control systems.

### 126.

At all relevant times, Bosch knew that it was reasonably foreseeable that vehicle owners and users would operate vehicles with its engine control systems on

the roadway. Bosch knew that proper engine control systems, comprised of robust component parts, are essential to the drivability and safety of its vehicles on the roadway. Despite its knowledge of the need for robust engine control system components to withstand normal and reasonably foreseeable driving maneuvers, Bosch failed to provide them. Bosch breached its duties of reasonable care by manufacturing, designing, and marketing a dangerous and defective engine control system, by failing to equip the Defective Ford with an engine control system free of defects, which caused Plaintiffs' injuries.  The defects contained in the defective engine control system installed in the Defective Ford made a collision unavoidable in reasonably foreseeable events.

**127.**

Bosch also owed a duty and continuing duty to provide to the public, including Mr. Wooten, with sufficient warnings to protect the interests of those reasonably foreseeable users or consumers who would, based on their own reasonable assessments of the risks and benefits, decline product use or consumption.

**128.**

At all times relevant to the Complaint, Bosch owed to the public, including the Plaintiffs, a duty to design, manufacture, and install a safe and defect-free engine control system so that the use of such engine control systems, including the defective engine control system installed in the Defective Ford, were not defective and unreasonably dangerous to use.

**129.**

Bosch was careless and negligent, in its designing, manufacturing, testing, placing into the stream of commerce, and selling the defective engine control system described in this Complaint in a defective condition, and failing to warn potential purchasers and users and others of the unreasonably dangerous characteristics of the defective engine control system as it was equipped when it left Bosch's possession.

**130.**

Bosch breached its duties to Plaintiffs by failing to appropriately design, construct, sell, and/or manufacture a reasonably reliable engine control system free of defects. Bosch breached its duty as follows:

(a) The defective engine control system designed, manufactured, and marketed by Bosch failed to include a reasonably reliable engine control system, which would have been able to control and coordinate all engine functions with each other and thereby control the Defective Ford in a manner intended by the Plaintiff;

(b) Bosch did not adequately test the defective engine control system to determine whether its engine control system would expose prospective owners, users, and occupants of vehicles containing its engine control systems, such as the defective engine control system installed in the Defective Ford, to an unreasonable risk of physical harm and/or death during foreseeable operation; and,

(c) Bosch negligently, recklessly, and/or knowingly failed to warn prospective owners, users, or occupants, including Plaintiffs, of the unreasonable risk of physical harm associated with the dangers of a vehicle installed with a defective engine control system like defective engine control system in the Defective Ford.

**131.**

By including Bosch's unsafe and defective engine control system in 2021 Ford F-150s, including the Defective Ford, was dangerously unsafe for normal and foreseeable use by and in the presence of the public because of its unsafe design, defective manufacture, and failure to include a properly functioning, safe and effective engine control system free of defects.

**132.**

Bosch further breached its duty by failing to provide adequate warnings to consumers, such as Barry Wooten, of the existence of the risks and dangers involved with operating a vehicle with a defective engine control system such as the one installed in Ford F-150s, including the Defective Ford, which were unsafe and not free of defects .

**133.**

Bosch failed to exercise reasonable care in its specifications, manufacturing, and design of the defective engine control system in 2021 Ford F-150s, including the defective engine control system installed in the Defective Ford.

**134.**

Bosch failed to exercise reasonable care in overseeing the manufacturing and design of the defective engine control system in 2021 Ford F-150s, including the defective engine control system installed in the Defective Ford.

**135.**

The defective engine control system was dangerously defective and unsafe for normal and foreseeable use by and in the presence of the public because of its unsafe design and defective manufacture of the engine control system.

**136.**

Bosch knowingly failed to adequately inspect and/or test the defective engine control system in 2021 Ford F-150s including the Defective Ford, before and during the design, production, and sale of the defective engine control system to the public and/or knowingly placed the defective and unreasonably dangerous defective engine control system in the stream of commerce.

**137.**

Bosch knowingly failed to adequately inspect and/or test the defective engine control system in the 2021 Ford F-150, including the defective engine control system installed in the Defective Ford, before and during the design and production of the defective engine control system before it placed the defective engine control system into the stream of commerce without including safe and effective engine control system.

**138.**

Bosch negligently, recklessly and/or knowingly sold and installed the defective engine control system in 2021 Ford F-150s, including the Defective Ford, with unsafe and defective engine control systems, despite being fully aware of the importance of installing engine control systems that are safe and free of defects.

**139.**

Bosch negligently, recklessly and/or knowingly failed to warn of the potential dangers posed to consumers and the public by the use of the defective engine control systems in vehicles such as the 2021 Ford F-150, including the Defective Ford.

**140.**

As a direct and proximate result of Bosch's negligence in designing, manufacturing, testing and/or selling a dangerously defective engine control system, namely the defective engine control system installed in 2021 Ford F-150s, including the Defective Ford, and/or its component parts, Plaintiffs suffered severe and significant injuries.

**141.**

Plaintiff's injuries and Barry Wooten's death were reasonably foreseeable to Bosch.

**142.**

Plaintiffs could not have prevented or avoided the injuries caused by Bosch's negligence through the exercise of reasonable diligence.

**143.**

As a direct and proximate result of Bosch's negligent breaches of its duties, Plaintiffs suffered damages in an amount well exceeding the jurisdictional minimum required to confer jurisdiction in this Court.

**144.**

All past, present, and future injuries suffered by Plaintiffs relating to this incident, past, present, and future, are due to the negligence or gross negligence of Bosch without any contributing negligence on the part of Plaintiffs. Plaintiffs have complied with all conditions precedent to the filing of this action.

**145.**

Bosch  is liable for its negligence in causing or contributing to the severe injuries and death of Barry Wooten and all damages that are recoverable by Plaintiffs under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

**COUNT EIGHT**
**(Bosch—Manufacturing Defect)**

**146.**

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

**147.**

Plaintiffs contend that Mr. Wooten's severe injuries and death were caused by a design defect in the Ford F-150, but plead in the alternative, as permitted by F.R.C.P. 8, to the extent Mr. Wooten's injuries and death were not caused by a design

---

defect, they were instead caused as a result of the defective engine control system assemblies being manufactured in such a way as to not be without defects, including but not limited to, component parts that failed to operate as intended leading to loss of control and coordination of all engine functions including steering, braking, acceleration, and deceleration in the Defective Ford.

**148.**

As a product manufacturer/component supplier, Bosch owed and owes duties to vehicle owners, users, and the public, including the Plaintiffs and Mr. Wooten, to exercise reasonable care in manufacturing a product that is reasonably safe for its intended or foreseeable uses. Bosch is strictly liable for all manufacturing defects in its engine control systems which cause harm to consumers because of such defects, and as such, Bosch had at all relevant times a duty to the public and to Mr. Wooten to manufacture engine control systems free of defects and unreasonable risks of harm to owners, users, and occupants.

**149.**

To the extent the defect resulted from a manufacturing failure rather than design defect, Bosch is strictly liable under Georgia products liability law for manufacturing the defective engine control system installed in the 2021 Ford F-150s, and in the Defective Ford, because it  did not perform as intended during normal and reasonably foreseeable driving maneuvers resulting in its failure to operate as intended leading to loss of control and coordination of all engine functions in the Defective Ford including loss of steering, failure to brake, and failure to decelerate.

**150.**

Despite its knowledge of the need for properly manufactured components and sub-components of the engine control system to provide consumers with a safe and reliable vehicle, Bosch failed to provide them. To the extent the loss of control and coordination of all engine functions in the Defective Ford resulted from a manufacturing failure rather than from the design of the defective engine control system itself, Bosch breached its duties of reasonable care by manufacturing the defective engine control system installed in Ford F-150s, including the Defective Ford in such a way that it deviated from its intended design, making it more dangerous than it would have been if manufactured as specified.

**151.**

As a direct and proximate result of Bosch's deviation in manufacturing the defective engine control system from its intended design to the extent the defects in the defective engine control system resulted from a manufacturing defect rather than a design defect of the defective engine control systems installed the in Ford F-150s, including the Defective Ford, Plaintiffs suffered damages in an amount exceeding the jurisdictional minimum required to confer jurisdiction on this Court.

**152.**

Bosch  is liable for any manufacturing defect(s) causing or contributing to the injuries and death of Barry Wooten and all damages that are recoverable under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

**COUNT NINE**
**(Bosch—Failure to Warn)**

**153.**

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

**154.**

As described throughout this Complaint, Bosch designed and manufactured the defective engine control system in 2021 Ford F-150s, including the Defective Ford.

**155.**

At all times, Bosch caused the defective engine control system to be placed into the stream of commerce without adequately warning users or bystanders, of the deficiencies in the defective engine control system installed in Ford F-150s, including the Defective Ford.

**156.**

The defective engine control system possessed characteristics that caused severe damage to Plaintiffs. Bosch failed to use reasonable care to provide adequate warnings of such dangerous characteristics to owners, users and/or handlers of the defective engine control system installed in Ford F-150s, including the Defective Ford.

**157.**

At the time of Plaintiffs' injuries, the defective engine control system was dangerous to an extent beyond that which would be contemplated by an ordinary owner, user and/or handler of the defective engine control system, with the ordinary knowledge common to the community as to the characteristics of the defective engine control system installed in Ford F-150s, including the Defective Ford.

**158.**

As a direct and proximate result of Bosch 's failure to warn of the dangers of the defective engine control system installed in Ford F-150s, including the Defective Ford, Plaintiffs sustained serious and substantial injuries.

**159.**

Bosch is liable to Plaintiffs for failing to warn of deficiencies in the defective engine control system at the time the defective engine control system left Bosch's possession and/or control.

**160.**

Bosch's instructions contained insufficient warning to adequately alert consumers of the dangerous risks associated with the defective engine control system installed in Ford F-150s, including the Defective Ford.

**161.**

Bosch  failed to provide adequate warnings of such risks and dangers to the consumer and/or innocent bystanders using the road.

**162.**

As a direct and proximate result of the defects of the defective engine control system, Plaintiffs suffered severe and significant injuries.

**COUNT TEN**
**(Ford and Bosch—Punitive Damages)**

**163.**

Plaintiffs re-allege all previous paragraphs and incorporate them herein by reference.

**164.**

Prior to the Defective Ford's design, manufacture, and sale, due to Ford and Bosch's knowledge of existing circumstances and conditions, Ford and Bosch knew or should have known that the ADAS, the engine control system, and their components were inadequately designed resulting in a sudden failure. Despite this knowledge, Ford and Bosch manufactured and sold Ford F-150s, including the Defective Ford, installed with the defective component parts of the ADAS and engine control system, which lacked strength and robustness to prevent a system failure and cause an unavoidable collision. Ford and Bosch failed to warn Mr. Wooten of its unreasonably dangerous designs.

**165.**

Plaintiffs believe and contend that discovery in this case will result in the production and identification of additional information and documents from Ford and Bosch that will show that they were fully aware of dangers and defects in the engine control system and ADAS of 2021 Ford F-150s, including the Defective Ford,

manufactured at the Dearborn Truck Assembly plant. Plaintiffs contend that Ford and Bosch consciously limited the number of 2021 Ford F-150s manufactured in May 2021 for monetary and public relations reasons, and that Ford and Bosch demonstrated an entire lack of care and diligence regarding the manufacturing and sale of defective vehicles.

**166.**

Plaintiffs also allege, and expect discovery to further reveal, that as the result of other incidents or reported events of steering failure before the Subject Crash that Ford and Bosch had sufficient actual knowledge to take action to warn and protect persons like the Plaintiffs' decedent, Mr. Wooten, but instead demonstrated clearly and convincingly a conscious indifference to safety to give rise to a jury award of punitive damages.

**167.**

As a result of Ford and Bosch's conscious disregard for the rights and safety of Mr. Wooten and/or Ford and Bosch's willful and wanton conduct described in detail in all paragraphs above, Mr. Wooten suffered catastrophic injuries, extreme physical, mental, and emotional pain and suffering, and death, and Ford and Bosch should be required to pay punitive damages in an amount that comports with the United States and Georgia constitutions and law, but is sufficient to punish them and deter them from similar future misconduct, with such amount to be determined by the enlightened conscience of the jury upon consideration of the evidence adduced at trial.

## V. <u>DAMAGES SOUGHT BY PLAINTIFFS</u>

**168.**

Plaintiffs seeks to recover from Ford and Bosch for every element and category of damages permitted under Georgia law to which they are entitled to, including but not limited to:

(a) Plaintiff Beverly Wooten, as Surviving Spouse of Decedent Barry Wooten, seeks damages for the full value of the life of Barry Wooten, both economic, noneconomic, tangible and intangible, in an amount to be determined by the enlightened conscience of the jury after hearing the evidence at trial;

(b) Plaintiffs Beverly and Wayne Wooten, as co-administrators of the Estate of Mr. Wooten, seek damages for the physical and emotional pain and suffering, shock, fright and terror endured by Mr. Wooten in the seconds before impact, during impact, and from the time of impact up until the time of his death, in an amount to be determined by the enlightened conscience of the jury after hearing the evidence at trial;

(c) Plaintiffs Beverly and Wayne Wooten, as co-administrator of the Estate of Mr. Wooten, seek  damages for all medical expenses, funeral expenses, and property damage incurred by the Estate, in an amount which reflects the reasonable value of those expenses and property based upon the evidence  to be presented at trial; and,

(d) Plaintiffs Beverly and Wayne Wooten, as co-administrator of the Estate of Mr. Wooten, seek punitive damages to which the Estate of Barry Wooten is entitled to recover, in a constitutionally appropriate amount determined by the

enlightened conscience of the jury to be sufficient to punish, penalize, and deter Ford and Bosch for its past misconduct and to deter them from engaging in similar misconduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray:

(a)     That summons issue requiring Ford and Bosch to appear and Answer this Complaint as provided by law;

(b)     That Plaintiffs have a trial by jury;

(c)     That Plaintiffs recover from Defendants all damages, economic and non-economic, tangible and intangible, general and special, that are compensable under Georgia law that are sufficient to compensate fully and fairly for all losses proximately caused by the tortious acts and omissions of Defendants, to be determined by the enlightened conscious of the jury at trial;

(d)     That punitive damages be awarded against Defendants Ford and Bosch;

(e)     That all costs be taxed against Defendants; and,

(f)     For such other and further relief as this Court deems just and proper.

Respectfully submitted, this 12th day of September, 2023.

**CHEELEY LAW GROUP, LLC**

ROBERT D. CHEELEY
Georgia Bar No. 122727
GABRIELLE M. HOLLAND
Georgia Bar No. 460601
2500 Old Milton Parkway, Suite 200

Alpharetta, GA  30009
Telephone:   (770) 814-7001
bob@cheeleylawgroup.com
gholland@cheeleylawgroup.com

**DC LAW, PLLC**

NICHOLAS HEATH WOOTEN
Texas Bar No. 24128672
*Pro Hac Vice Pending*
1012 West Anderson Lane
Austin, Texas 78757
Telephone: (512) 220-1800
nick@texasjustice.com

**ATTORNEYS FOR PLAINTIFFS**