# Declaration of Steve Loudon

State of Michigan

County of Wayne

1. I am a software development expert with 30+ years in the automotive electronics industry.
2. I have worked for General Motors and Delphi.
3. I have experience applying engineering and management skills in multiple domains—electronic design and manufacture, firmware design, development and testing, as well as engineering development process definition.
4. I have attached my CV.
5. I am serving as a consulting expert witness for the Plaintiffs in the case of Wooten vs. Ford Motor Co.
6. It is my hypothesis that Ford's incorporated algorithms caused Mr. Wooten's F-150 to go straight, rather than follow the curved lane markers at Exit 15 on I-475 in Monroe County, Georgia, while the vehicle was in cruise control.
7. Testing this hypothesis requires access to Ford's .a2L and .dbc files in native format, which are the same tools Ford used in design and development, and which were used in four (4) tests which Ford performed on the F-150.
8. None of those four tests involve the F-150 exiting from an interstate highway.
9. The .a2L and .dbc files have been produced in other litigation where I have served as a plaintiffs' expert witness—including Nissan, Subaru, Toyota, and Ram Trucks for the DOJ.
10. These files should be maintained by Ford, in native format, in the ordinary course of business as part of its robust configuration management system as required under the industry standards dating back to the 1990s. One of these standards is known as CMMi. This type of standard is widely consider as "best practices" and is embraced by many industries including the automotive industry. This standard and other similar standards are a part of the quality management systems that every auto manufacturer has agreed to comply with. CMMi as well as the other engineering standards such as ISO-26262 and IATF 16949 all contain requirements for document configuration management.

11. I have read the letter dated September 6 by Ford Counsel, Paul Petersen, wherein he discusses Ford's production in this case of MDF files and .mat files. Those files are of no benefit here because I intend to use the Vector .a2L and .dbc files in a real-world test at Exit 15 in Monroe County on a Ford F-150 to determine what instructions the algorithm dictates that the truck do under the same circumstances as Barry Wooten's truck would have experienced.
12. This real-world testing must be done because Ford has not produced any tests involving the performance of the truck on interstate exit ramps.
13. Since Ford designed the 2021 F-150 to operate with LKA/LCA on interstate highways, it should have also tested the vehicle to safely exit from the highway.
14. Testing performed by Plaintiffs' experts, Shawn Harrington and PJ Leiss, at Exit 15 using a 2018 Tesla Model 3, proves that it will safely follow the radius of the exit ramp, whereas the 2021 F-150 would not have followed the radius of the exit, and would have, but for immediate, severe steering input, followed the same general path as Barry Wooten's truck.
15. Performing a follow-up test on the F-150 with my Vector instrumentation will unequivocally tell us what the algorithm was instructing the vehicle to do in the exit lane.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on September 18, 2024.

______________________

Steve Loudon