## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| BEVERLY WOOTEN, as Surviving Spouse of BARRY WOOTEN and BARRY WAYNE WOOTEN, as Administrators of the ESTATE OF BARRY WYATT WOOTEN, Deceased, | CIVIL ACTION FILE NO: |
| Plaintiffs, | 5:23-cv-00346 |
| v. | |
| FORD MOTOR COMPANY and ROBERT BOSCH LLC, | |
| Defendants. | |

## <u>DECLARATION OF NITENDRA NATH</u>

Having first been duly sworn, I, Nitendra Nath, an employee of Defendant Ford Motor Company ("Ford"), competently testify as follows:

1.      My name is Nitendra Nath. I am over the age of 18, have personal knowledge of the matters set forth in this Declaration unless otherwise stated, and if called as a witness, I would be competent to testify to the matters in this Declaration. The facts stated in this Declaration are true and correct.

2.      I am employed by Ford Motor Company ("Ford"). My current position is Technical Leader, BlueCruise Architecture and Development. I received my Bachelor of Electrical Engineering from Savitribai Phule Pune University in Pune, India; and my Master of Science in Controls and Robotics and PhD in Nonlinear Control and Estimation from Clemson University in South Carolina. I began my employment with Ford in 2013 and have worked in various engineering positions in Ford's ADAS (Advanced Driver Assist Systems) group.

1

3.      By virtue of my past and current positions, I am generally familiar with the design and development of driver assist technologies, including Adaptive Cruise Control, Lane Centering Assist and BlueCruise systems in 2021 Ford F-150 pickup trucks, and certain records that Ford maintains regarding these systems and vehicles.

4.      In executing this Declaration, I do not intend to, and Ford has not authorized me to, waive any protections or privileges Ford may have as to proprietary, trade secret, or confidential information, or attorney-client communications or information developed in anticipation of or in response to litigation.

5.      For purposes of this Declaration, I have reviewed Plaintiffs' Recast Complaint for Damages and Demand for Jury Trial, Plaintiffs' Motion for Sanctions dated April 30, 2025, and my deposition taken in this case on March 13, 2025. I submit this Declaration in support of Ford Motor Company's opposition to Plaintiffs' Motion for Sanctions.

6.      Much like base cruise control, Adaptive Cruise Control ("ACC") and Lane Centering Assist ("LCA") are designed for a driver who is alert and attentive.  The driver is always in control of the vehicle.

7.      As explained by the National Highway Traffic Safety Association ("NHTSA"), Level 2 ADAS features like ACC with LCA require the driver to always be fully in control and driving and monitoring the vehicle at all times.  This is shown in Levels of Automation charts regarding ADAS features published by both NHTSA and the Society of Automotive Engineers ("SAE"):





8.    Ford follows NHTSA's and SAE's charts of Levels of Automation regarding ADAS features.  ACC with LCA is a Level 2 ADAS feature, and as such the driver is always responsible for controlling the vehicle.

9.    Consistent with industry and regulatory standards for Level 2 ADAS features, Ford provides information, instructions and warnings to drivers and vehicle owners regarding the appropriate use of such features.  Pertinent to this case, Ford's owner's manual states "*The driving assistance torque is limited and may not be sufficient for all driving situations such as driving through tight curves or driving through curves at high speeds.*" (2021 F-150 Owner's Manual at p. 323)(emphasis in original)

10.     Ford also includes in-vehicle warnings and messages to drivers regarding the operation of these features which work to help the driver understand the functionality of these systems.

11.     At the time of the crash in 2021, driving a 2021 Ford F-150 through an approximately 1,000' radius curve at 77 mph was outside of the design parameters of this generation of ACC, LCA, and BlueCruise[1] features as equipped on the 2021 Ford F-150 due to the functional safety design of these features and in compliance with United National Economic Commission for Europe ("ECE") regulatory guideline no. 79. The steering wheel torque demands for the vehicle to navigate such a curve at that speed are greater than the design capability of the vehicle's ADAS systems, which limit the amount of torque the vehicle can apply to ensure a driver is always able to maintain control.  This is consistent with Ford's owner's manual which states "You can override the system at any time by steering your vehicle." (*Id.*)

12.     I have reviewed the poster attached as Exhibit 15 to my deposition.  All concerns and issues discussed in this poster are quality concerns faced during the development of the BlueCruise feature.

13.     All the concerns and issues discussed in Exhibit 15 relate only to quality concerns and do not relate to any safety concerns with the performance or function of BlueCruise.  The screen shot at issue in Exhibit 15 does not demonstrate any problem with the Steering Probable Path ("SPP") or any safety concern.

14.     As I understand it, Plaintiffs' Motion argues that potential issues with SPP are a safety concern.  This is incorrect. The SPP issues examined during the development, validation

---

[1] BlueCruise is Ford's hands-free driver assistance feature available on certain mapped stretches of highway roads called BlueZones.  The subject 2021 F-150 was not equipped with BlueCruise software.

and further study of BlueCruise only related to potential quality concerns and are not safety concerns. SPP issues are not safety concerns because the safety regulators have defined that in a Level 2 ADAS feature like ACC with LCA, the driver is always in control and required to steer and brake as needed. ACC with LCA is not a self-driving or autonomous driving feature.

15.    It is a normal and expected part of the development process to look for and work through quality concerns with vehicle features and components. That is the point of this process. During development we are intentionally trying to flesh out any potential quality concerns that could arise with the technology so that we can appropriately design the feature. Issues that are discovered in the development phase would be addressed before final production.

16.    The poster attached as Exhibit 15 to my deposition was created during the development phase of the BlueCruise feature and discussed the transition from BlueCruise hands-off to hands-on driving modes, which transition does not exist with ACC with LCA because it is a strictly hands-on driver assist technology.

17.    The blue overlay lines not lining up with the white lines of the exit lane as shown on the screenshot that is contained in Exhibit 15 is not indicative of an error in the SPP as claimed by Plaintiffs. These differences between the blue overlays and white lines in the camera image can occur as a result of vehicle motion, camera misalignment, tool overlay issues, the focal length of the lens, or logging latencies, to name a few examples.

18.    Due to the compression of the three-dimensional data into the two-dimensional image seen in the screenshot, the difference in the blue overlay lines and the white lines in the image increases with distance from the vehicle. This is not a reliable indicator of an error with the SPP. For this reason, the blue lines shown in the screen shot on Exhibit 15 and being relied on by Plaintiffs for their Motion, in fact may not be representative of the actual path the camera was

plotting for the vehicle at the time, especially as it concerns the later path data towards the end of the view. It would be misleading and unscientific to say the blue overlay lines shown in this two-dimensional screenshot are in any way a reliable indicator of the actual path intended by the vehicle at the time, or in any way an actual predictor of the path the vehicle would ultimately take around that curve. This is because of the transformation between the blue line's three-dimensional data into this two-dimensional pixel image as well as the numbers that are shown in the corners of the image.

19.    It would be incorrect and misleading to say that the two-dimensional image shown in Exhibit 15 is proof that the test vehicle was plotting a path to take the vehicle off the road and into a gore as allegedly reflected in the screenshot in Exhibit 15.

20.    BlueCruise and ACC with LCA are not the same features. The features were designed at different times and by different teams for different purposes. They have different names and different part numbers. ACC with LCA is always a hands-on system, while BlueCruise offers eyes-on, hands-off capabilities. The algorithms that are utilized by these two different systems for their function and operation are different. ACC with LCA utilizes a proprietary algorithm from the supplier, Aptiv, while BlueCruise uses an internal algorithm created by Ford. There are additional functional safety monitors in BlueCruise that are not present in LCA that could apply and affect the performance of the different features around curves. BlueCruise utilizes map data for its function where ACC and LCA do not utilize any map data.

21.    Moreover, nor are the different generations of BlueCruise, ACC and LCA the same.

22.    Plaintiffs state that the BlueCruise feature, which was not equipped on the vehicle at issue in this case, has critical failures related to its SPP which caused lane departures at a rate more than 20,000 times that of human drivers. This is not accurate for many reasons, not the least

of which is one cannot compare vehicle testing designed to test the limits and performance of a feature to normal consumer driving. Also, Plaintiffs improperly compare lane departures from the testing with injury accidents in NHTSA data when the two are not the same.  An issue with SPP is not a critical failure.  SPP faults are by design to be controlled by the driver. There are no "embedded failures" related to the SPP of the BlueCruise feature.

23.     A critical failure by engineering definition only occurs if a lane departure takes place in a designated hands-free zone, and the driver fails in their responsibility to control the vehicle by intervening.  Thus, as stated above, this is a quality measure.  As discussed in the SAE J3016 Chart above, ACC and LCA are support features and the driver is driving.  Hands-free zones do not exist with ACC with LCA.  The driver must constantly supervise these support features and must steer, brake, or accelerate as needed to maintain safety.

24.     Regarding Exhibit E to Plaintiff's Motion, this discusses the overall, general limitations to camera-based ADAS technologies.  These limitations are not specific to BlueCruise, ACC or LCA, nor are they specific to Ford.  The regulators and industry are well aware of the impacts the environment can have on the performance of ADAS features, and Ford explains and warns about these in its owner's manual.  These limitations mostly deal with poor weather conditions or poor road conditions, neither of which are relevant to the issues in this lawsuit as I understand them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of May, 2025.

DocuSigned by:

*Nitendra Nath*

2A874AD483ED46B...

Nitendra Nath