UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BEVERLY WOOTEN, as surviving spouse of Barry Wyatt Wooten, and BARRY WAYNE WOOTEN, as administrators of the Estate of Barry Wyatt Wooten, deceased,<br>   *Plaintiffs*,<br><br>v.<br><br>FORD MOTOR COMPANY,<br>   *Defendant*. | Civil Action 5:23-cv-00346-MTT |

**PLAINTIFFS' SUPPLEMENTAL REPLY IN SUPPORT OF THEIR MOTION TO COMPEL**

  The Wootens have repeatedly chronicled the discovery abuse in this case. *See* Dkt. 107-1 and 131-1. Ford never challenged these factual statements in previous filings. Contradicting Ford's arguments of delay and lack of diligence are the facts set forth in Docket 131-1 at ¶¶24-49 and 107-1 at ¶¶ 1-7; 34-62. Ford has never disputed any of the Wootens' factual recitations of their previous discovery efforts. In fact, Ford previously justified its failure to respond to discovery as "normal discovery issues" in a "first of its kind" case.

  Now Ford says that the Wootens "first raised" the issues in their motion to compel "**on the last day**" of discovery. Dkt. 158 at 1. That's false. The Wootens have been pursuing FMEA documents from Ford since at least December 2023. See Dkt. 131, ¶24(a). The Wootens requested all three categories of documents in original discovery in March 2024. Pl. RPD. No. 2 & 4. At Dkt. 158, pg. 2, Ford conveniently omits from its timeline the

Wootens' August 5, 2024, letter to the Court raising both the failure to produce testing videos and FMEA documents. Despite Ford's continuing obligation to supplement and these myriad efforts to obtain Ford's compliance, Ford continues to withhold this discoverable evidence. Ford has had this evidence the entire time. Ford's "last-day-of-discovery argument" is a canard Ford is using as justification for its failure to respond and to supplement. Ford's response is chock-full of misrepresentations:

| **Ford** | **Wootens** |
|---|---|
| "While in the prior fourteen months, the parties have conferred countless times on several discovery disputes, never before ***the very last day*** of fact discovery did Plaintiffs write to Ford … requesting supplementation." Dkt. 158 at 3. | August 5, 2024: "We ask that the Court order Ford to comply with this production in full and **supplement their production with the testing videos and any other discoverable material in line with [Plaintiffs' RPD No. 4] not yet produced.** Ex. 1, Aug. 5, 2024 Letter.<br><br>"Plaintiffs ask for an order compelling Ford to **supplement** its production responses with the appropriate Bates label range for each response in accordance with Rule 34(b)(2)(E)(i)." *Id.* |
| "Plaintiff never issued a request for any videos…the absolute nearest request is for 'all testing results' related to 'in the 2021 Ford F-150 vehicles.'" Dkt. 158 at 6. | August 5, 2024: "In Plaintiffs' Request for Production 4…Plaintiffs requested that Ford produce testing results…Ford has withheld video testing of the 2021 platform truck. We ask that the Court order Ford to comply with this production request in full…" Ex. 1, Aug. 5, 2024 Letter. |

| | |
|---|---|
| | Ford admits to the existence and access to videos in its May 22, 2025 letter. |
| Ford's "OVERALL DISCOVERY TIMELINE" states that "*ELEVEN MONTHS PASS*" between April 25, 2024 and March 13, 2025—representing that during that 11 months, the Wootens never followed up, never re-requested, and never attempted to resolve a discovery dispute regarding FMEA, human factors, or testing videos. Dkt. 158 at 2. | August 5, 2024: the Wootens raise the FMEA and video issue again in a letter to the Court—directly referencing **FMEA and testing videos**—requesting production and supplementation. Ex. 1, Aug. 5, 2024 Letter.<br><br>October 23, 2024: The Wootens requested via email for Ford to designate a "**person, presumably with human factors training and experience**, who was involved in the design relating to the handoff from active lane-centering to a non-centering state" for deposition. Ex. 2, Oct. emails. |

Early in its response Ford admits that "in the prior fourteen months, the parties have conferred countless times on several discovery disputes," yet one page later, Ford claims that "Plaintiffs were neither diligent nor timely" in pursuing this discovery. Dkt. 158 at 3, 4. Ford's argument ignores the facts and history of these efforts in Dkt. 107-1 and 131-1.

Ford also attempts to cast the Wootens' requests as overly broad. Yet Ford did not comply with Rule 34's mandate. Nor did Ford approach the Wootens to discuss the breadth of their request. Ford repeatedly said that Ford did not have testing videos and did not have discoverable human factors studies. The Wootens cannot be expected to negotiate the scope of production or their request when Ford's response is that there are ***no responsive***

*materials.* The straw man Ford argues in its response shifts blame to the Wootens for the scope of their discovery requests while ignoring the fact that Ford denied the existence of these materials until the Wootens' diligence uncovered this subterfuge.

## Argument in Reply

### I.    Ford Should Be Ordered to Produce Human Factors Discovery

Ford asks the Court to relieve it of its obligations to respond regarding Human Factors discovery. Ford's last paradoxical defense goes like this: Even though we built a Level 2 ADAS system and told customers that the system would drive for them in certain conditions, "the driver is in control." Therefore, Barry Wooten drove himself in the gore and effectively killed himself.

NHTSA published a paper in 2018 stating "Studies have found that after relatively brief exposure to automated driving (under one hour), drivers in simulator experiments show increased response times for braking compared with their baseline response time in manual driving."[1] Ford's own human factors expert acknowledges that the automotive industry understands that human perception reaction time can be degraded by use of Level 2 ADAS technology.[2] Ford's knowledge that this technology degrades

---

[1] https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/13496_812572_alcsynthesis_080318.pdf last viewed 7/25/2025, at page 20 of the study (page 33 of 95 of the entire PDF).

[2] *See* attached portion of David Cades Transcript pages 167:15 -170:16. The Wootens are seeking Ford's agreement to attach this material without moving for an order to seal. Absent that, the Wootens will provide this directly to the Court.

driver reaction time strikes at the heart of Ford's defense to this claim and makes Ford's own research in this area highly probative.

Ford complains that the Wootens' request was potentially overbroad or unlimited in scope. Again, Ford told the Wootens that there were no human factors studies that are responsive. Only the disclosure of the Nath documents exposed Ford's position as false. *See* Dkt. 107-6, pg. 3. This very issue highlights why boilerplate objections coupled with a failure to follow the mandates of Rule 34 leads to avoidable discovery disputes.

## II. Ford's incomplete, boilerplate objections do not excuse it from producing responsive documents or at least a privilege log.

As the Eleventh Circuit has explained, "boilerplate objections" like Ford's, "may border on a frivolous response to discovery requests." *Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 371 (11th Cir. 2009). For good reason: "non-specific objections operate to render the producing party the final arbiter of whether it has complied with its discovery obligations under Rule 26 because the requesting party lacks sufficient information to understand either the scope of the objection, or to frame any argument as to why that objection is unfounded." *Williams v. Taser Int'l, Inc.*, 2007 U.S. Dist. LEXIS 40280, *9, WL 1630875 (N.D. Ga. June 4, 2007). Ford is using its improper discovery responses as cover for shirking its discovery duties. That clashes with Eleventh Circuit precedent.

## III. Ford's responses violate Rule 34(b)(2)(C) because they do not say that responsive documents are being withheld.

Ford's boilerplate objections do not excuse it from stating whether it is withholding documents. Under Rule 34(b)(2)(C), if Ford objects to a request, the "objection must state whether responsive materials are being withheld on the basis of that objection." The Wootens tried to work this dispute out informally with Ford after these disclosures came to light. The reason this matter is just now before the Court is very simple. Ford did not follow the rules and took advantage of the Court's informal discovery dispute resolution process until Ford's shenanigans were discovered.

In any event, Ford has no right to unilaterally narrow—in effect, rewrite—the Wootens' document requests. Ford "has the burden to show why the discovery request is improper" and "must show specifically how a general objection applies to the discovery request." *Huff v. Huff*, 2006 U.S. Dist. LEXIS 57090, at *2 (N.D. Ga. Aug. 15, 2006) (citation omitted). But Ford has not bothered trying to meet that burden here or at any point in this process.

## IV. Ford has continually breached its duty to supplement.

Under Federal Rule 26(e)(2), a party having previously made a disclosure "is under a duty to supplement" the disclosure if "the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Bishop v. City of Macon*, 189 F.R.D. 494, 495 (1999). Ford blames the Wootens for not "requesting supplementation," "offer[ing] to limit Request No. 2," or "target[ing] discovery to human machine interaction." Dkt. 158 at 3. But none of that is a legitimate basis for withholding information. In fact, it is hard to imagine how the Wootens could have known to request supplementation or

narrow a request when Ford told the Wootens there were no responsive documents until that falsehood was exposed through Nath's documents and testimony.

As for human factors, request 2 seeks "all studies, research, and literature Ford has in its possession on the types of timing and warnings to drivers for lane departure events and the time needed for drivers to perceive and react to such an event." Dkt. 158 at 2. Ford did not comply with Rule 34(a)(2)(c) and failed to notify the Wootens it was withholding documents under an objection by providing a log of withheld materials. Ford said: "there are no responsive documents." Ford received the request in March 2024, understood it, narrowed it, has the documents, yet refuses to produce them.

As for videos, Ford admits that request 4 is "the absolute nearest request" because it asks for "all testing results"—which reasonably includes *testing videos*—"in the 2021 Ford F-150 vehicles." Dkt. 158 at 6. Ford received the request, understood it then narrowed it, received follow-up requests from the Wootens, identified responsive videos in its control, alerted the Court, and still refuses production.

Ford now tries to tell the Court that it has no videos with overlays. Yet Ford, attempting to mitigate the devastation wrought on its earlier positions by Nath's testimony, elicited from Mr. Nath that Ford does in fact have videos of testing that shows overlays that plot the SPP of its test vehicles. See Dkt. 107-1, ¶¶ 10-13; 47-50; 58, 61-62. Ford even elicited testimony from Nath that the video might show the SPP correct itself before exiting the lane and entering the gore. Ford now takes the position that it only has green screens

and video with no overlays. The argument of counsel should not be given more weight than the sworn testimony of the man Ford acknowledges as the inventor of the feature at issue here. Alternatively, Ford could admit *in judicio* that the system plotted the wrong SPP thereby causing Barry Wooten's lane departure at Exit 15.

Finally, the Wootens explicitly requested FMEA documents in request 4. Again, Ford has always had responsive FMEA documents. And it had a duty to either produce the documents or at least be clear that it was withholding them. Ford did neither. Ford's only goal was to keep the Wootens in the dark or, failing that, run out the clock on discovery. Ford's boilerplate objections, failure to comply with Rule 34(a)(2)(c), and unilateral reinterpretation of the Wootens' discovery requests led to this issue. In *Ford Motor Co. v. Conley*, Ford was ordered to face a new trial after Conley's counsel discovered post-trial that Ford failed to disclose its insurers leading to a jury that was not properly qualified. 294 Ga. 530 (2014). The Georgia Supreme Court looked at Ford's response to discovery on this issue where Ford had also answered with objections and without disclosing Ford was withholding information and affirmed the trial court's finding that Ford's answers were misleading. *Id.* at 545. Likewise, Ford's answers here are misleading because Ford coupled boilerplate objections with a unilateral reinterpretation of the Wootens' request and a failure to comply with Rule 34's mandates. Ford withheld the LCA FMEA for a year and thereby misled the Wootens and caused discovery to be more broad and less focused than it would have been with the information. Ford now wishes to deny the Wootens

access to the balance of the information revealed in the late disclosed document because Ford feels it successfully "ran out the clock" on the discovery deadline in this case. This makes a mockery of the Rules and the purposes of discovery.

Ford does not get to decide whether the videos and human factors documents are useful for the Wootens. If that were the standard, Ford could "believe"—in good faith, of course—that nothing is useful and thereby avoid discovery altogether. The additional documents identified from the LCA FMEA are inherently proportional to the needs of a wrongful-death case involving product failure. Ford could not build the truck without these documents.

## Conclusion

The requested documents are discoverable because they are "nonprivileged," "relevant to any party's claim or defense," and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court should find that Ford (1) received requests for production that either explicitly or inherently requesting these documents, (2) that the Wootens followed up on these document requests before moving to compel, (3) that Ford admittedly has the documents, and (4) that Ford has not turned them over. Therefore, the Court should grant the motion compelling production of:

1. All materials responsive to the Wootens' RPD 2;
2. All Ford testing data and videos with overlays showing lane line detection, radar signals, and the SPP;

3. All the documents identified by the Wootens from the LCA FMEA listed at Dkt. 131-1 ¶ 17(a)(i)-(x).

4. Any other relief just and proper in the circumstances.

Dated: July 25, 2025,   Respectfully submitted,

/s/ Nick Wooten

| | |
|---|---|
| Virgil Adams | Robert D. Cheeley |
| ADAMS, JORDAN & HERRINGTON | Georgia Bar No. 122727 |
| P.O. Box 928 | Nicholas H. Wooten |
| 915 Hill Park, Suite 101 | Admitted *Pro Hac Vice* |
| Macon, Georgia 31202 | Andre T. Tennille III |
| (478) 743-2159 | Georgia Bar No. 940510 |
| (478) 743-4938 | Gabrielle D. Gravel |
| vadams@adamsjordan.com | Georgia Bar No. 449376 |
| | CHEELEY LAW GROUP, LLC |
| Donald H. Salvik | 2500 Old Milton Parkway, Suite 200 |
| Slavik Law Firm, LLC | Alpharetta, Georgia 30009 |
| 2834 Blackhawk Court | (770) 814-7001 |
| Steamboat Springs, CO 80487 | bob@cheeleylawgroup.com |
| (970) 457-1011 | nick@cheeleylawgroup.com |
| dslavik@slavik.us | dre@cheeleylawgroup.com |
| | gabby@cheeleylawgroup.com |

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that today I have served a copy of the foregoing on all parties of record through the Court's CM/ECF system, which automatically serves all counsel of record.

/s/ *Nick Wooten*
*Counsel for Plaintiffs*