UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BEVERLY WOOTEN, as surviving spouse of Barry Wyatt Wooten, and BARRY WAYNE WOOTEN, as administrators of the Estate of Barry Wyatt Wooten, deceased,<br>　　　*Plaintiffs*,<br><br>v.<br><br>FORD MOTOR COMPANY,<br>　　　*Defendant*. | Civil Action No.<br>5:23-cv-00346-MTT |

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S
# MOTION TO STRIKE AND MOTION FOR PROTECTIVE ORDER

## Introduction

The Court should deny Ford's motion to strike and motion for a protective order. Both motions violate Rule 11 because no one signed them, so the Court "must" strike them. Fed. R. Civ. P. 11(a).[1] Both motions stymie the search for truth. The real purpose for these motions is to keep the Court and ultimately the jury in the dark about Ford's culpability for Barry Wooten's death.

---

[1] Under Rule 11(a), "[e]very … written motion … must be signed by at least one attorney of record." Ford's written motions are not signed. Dkt. 170 at 15. So "[t]he court must strike" them. *See* Fed. R. Civ. P. 11(a).

## Argument

**I. Striking Wooten's treating physicians is improper and so is striking witnesses who have experienced the same product defect.**

Based upon the requirements of Rule 26(a)(2)(C), Plaintiffs' initial disclosures in August 2022 satisfied the Rule's fundamental requirements. *See* Ex. 1, Pl.s' Init. Disclosures Aug. 22, 2022; Ex. 2, Pl.s' Int'l Disc. Dec. 8, 2023; *and* Dkt. 172 (Pl.s' Init. Disclosures (July 24, 2025). ("Atrium Health Navicent Medical Center Providers … The medical providers who treated Mr. Wooten may testify about the medical treatment Mr. Wooten received for his fatal injuries, his pain and suffering, their observations, and patient care.") This same disclosure has appeared in every supplement. *See* Ex. 2. Plaintiffs also provided Ford with these medical records in the re-filed case at WOOTEN000755–1767 (Atrium Health Navicent Records) on October 13, 2024. Long ago Ford was put on notice of the general subject matter regarding the care provided to Mr. Wooten after the collision.

None of Mr. Wooten's treating physicians are retained experts, therefore, their disclosures are governed by Rule 26(a)(2)(c).

> The difference between written reports and disclosures is meaningful. For one, a Rule 26(a)(2)(B) written report must be "prepared and signed" by an expert, while a Rule 26(a)(2)(C) disclosure may be submitted by a party on behalf of its expert. *See* Fed. R. Civ. P. 26(a)(2)(B). And because written reports must include the "basis and reasons" for "all opinions" offered by the expert, plus the "facts or data considered by the witness," they are often sprawling compared to the short summary of opinions

>   required in a Rule 26(a)(2)(C) disclosure. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).

*Cedant v. United States*, 75 F.4th 1314, 1320 (11th Cir. 2023).

The Eleventh Circuit explained "[o]ur textual reading—that an expert's status as a retained witness depends on the original purpose of his retention—is supported by the Rule's history." *Id.* at 1322. The reason for relaxed disclosures under 26(a)(2)(C) is apparent. "Courts, the Committee said, 'must take care against requiring undue detail' from Rule 26(a)(2)(C) witnesses, 'keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.'" *Id.* at 1323-24 (citing 2010 Committee Notes on Rule 26(a)(2)(C)). This is the exact situation faced by Plaintiffs' counsel who have been required to work through the treating physicians' own attorneys to attempt to schedule depositions. Obtaining their cooperation for lengthy Rule 26(a)(2)(B) disclosures would be impossible and would impose a burden specifically rejected by the Rules.

The Eleventh Circuit went on to make explicit:

>   A retained expert witness typically will get involved in a case to provide expert testimony and will derive her knowledge of the case from preparation for trial. A non-retained witness, on the other hand, will have at least some first-hand factual awareness of the subject matter of the suit. Treating physicians, the type of expert witnesses involved here, are first hired by their patients to treat rather than to testify. But make no mistake—Rule 26(a)(2)(C) is not limited to treating physicians. The expert's job title, the subject or scope of his testimony, and the way that he formed his opinions are irrelevant inquiries for Rule 26(a)(2) purposes. The only question presented by

>the Rule's text is whether the witness was retained as an expert or otherwise employed as described in Rule 26(a)(2)(B).

*Id.* at 1324.

Ford has known from the start that Plaintiffs intended to call non-retained experts who have personal knowledge of Mr. Wooten's pain and suffering, his medical condition and treatment, and his death. *See Jackson v. Publix Supermarket, Inc.*, 2024 U.S. Dist. LEXIS at *10-11, WL 5113236 (N.D. Ga. Dec. 13, 2024) (Denying a motion to strike when a late disclosure was not substantially justified but did find it harmless: defendant cannot argue surprise that plaintiffs were seeking to offer treating physician testimony in a personal injury case, "especially given the fact that the Plaintiff produced all medical records and disclosed all facilities" where these physicians provided treatment.).

Wooten's treating physicians were disclosed in 2022, therefore this is not a late disclosure. *See* Ex. 1. And Ford cannot establish harm because it cannot claim surprise, the inability to cure (any alleged) surprise, that the evidence would disrupt trial, that the evidence is unimportant, or that Plaintiffs didn't disclose the evidence years ago.[2] Ford can't claim surprise because it has had records containing these names all along and all Navicent providers were included in the first and every subsequent initial

---

[2] ("As for harmlessness, judges in his district have applied the following five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.") *Jackson*, 2024 U.S. Dist. LEXIS at *9 (citation omitted).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE AND MOTION FOR PROTECTIVE ORDER  Page—4

disclosure. *See* Ex. 1. Ford cannot claim the inability to cure when it has been offered the opportunity to depose Dr. Christie and the Manleys, and rejected those opportunities. Trial has not been set, so trial cannot be interrupted. The evidence is important to Plaintiffs' claim for a defective system with similar instances and Ford's defense that Mr. Wooten was unbelted. As for the Manleys' crash in 2025, Ford cannot claim harm or surprise because Ford has connected data on all vehicles built on or after the 2020 model year and presumptively was aware of the incident as soon as it happened.

Unlike in *Wilson*, here Plaintiffs are not attempting to elicit expert opinions from Mr. Wooten's treating physicians. *Wilson v. TASER Int'l, Inc.*, 303 F. App'x 708, 712 (11th Cir. 2008). On the contrary, Mr. Wooten's "treating physician[s] may testify as [] lay witness[es] regarding [their] observations and decisions during treatment of a patient." *Id*. Additionally, *Cedant* resolved the different ways in which non-retained experts were being treated by various district courts. *Cedant*, 75 F.4th at 1321. *Cedant* held that "[t]he expert's job title, the subject or scope of his testimony, and the way that he formed his opinions are irrelevant inquiries for Rule 26(a)(2) purposes." *See id*. at 1324. Ford never mentions *Cedant* or how it contradicts Ford's position here.

Specifically, Dr. Christie's testimony is important because Ford has taken the position—since Georgia's new tort reform bill—that Mr. Wooten was unbelted. Ford takes this position with no evidentiary support. It does so even though EMS records, crash scene photos, ER medical records, and

NHTSA's report on this crash all say that Wooten was belted. If Ford continues pressing this issue, Dr. Christie may thoroughly debunk it—and eliminate the need for at least one of Ford's paid experts. So allowing his deposition will streamline the trial.

In any event, nothing in *Wilson* or *Henderson* justifies striking Dr. Christie's observations and perceptions. *Wilson*, 303 F. App'x at 712; *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) ("A treating physicians is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party.")

As for Nicholas and Katelyn Manley, Ford correctly recites that their crash occurred in March 2025. Dkt. 170 at 11, 12. And the Manleys, located in Indiana, did not know to immediately contact Plaintiffs' counsel and inform them of their wreck. Only through diligent and good faith pursuit of discovery, Plaintiffs were put in contact with the Manleys, through their own attorney, after the close of discovery.

Plaintiffs supplemented discovery to Ford providing the names and police report "in a timely manner" as soon as Plaintiffs confirmed the Manleys had experienced a similar incident. Fed. R. Civ. P. 26(e)(1)(A). "Rule 26(e)(1), in turn, requires a party who has made a disclosure under Rule 26(a) to supplement that disclosure in a timely manner if the party learns that the prior disclosure is materially incomplete or incorrect and if the additional information has not otherwise been made known during the discovery process. Fed. R. Civ. P. 26(e)(1)(A)." *Seascape Aquarium,*

*Inc. v. Associated Diversified Servs.*, 2018 U.S. Dist. LEXIS 245672, at *5 (M.D. Fla. Dec. 10, 2018). "Thus a party must amend a discovery answer if (1) she learns that her original answer is no longer true and (2) a failure to amend amounts to a knowing concealment." *O'Donnell v. Ga. Osteopathic Hosp.*, 748 F.2d 1543, 1548 (11th Cir. 1984). This scenario typically arises in the context of one party withholding discovery. The normal standard includes an analysis of "whether the failure to disclose was justified or harmless, […] the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008).

Applying this standard, Plaintiffs supplemented as soon as they confirmed the incident. The disclosure occurred as soon as Plaintiffs could confirm the incident. The incident is important to the case as it shows a similar incident. Ford is not prejudiced because Ford has connected data on all vehicles built on or after the 2020 model year and presumptively was aware of the incident as soon as it happened.

II. **There is no cause for a protective order—let alone good cause.**

Ford's motion for protective order violates Rule 26(c)(1). Ford has not certified, and cannot certify, that it "has in good faith" conferred or even tried to confer with Plaintiffs "in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1) ("The motion must include a

certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."). That alone precludes issuing a protective order here.

What's more, the Court may issue a protective order only to protect Ford "from annoyance, embarrassment, oppression, or undue burden or expense." *Banks v. Boswel*, No. 5:24-cv-134 (MTT), 2025 U.S. Dist. LEXIS 102581, at *1 (M.D. Ga. May 27, 2025) (quoting Fed. R. Civ. P. 26(c)(1)). Ford cannot show that deposing Mr. Wooten's treating physicians or newly discovered witnesses amounts to any of those things. These are run-of-the-mill evidentiary depositions. Ford cannot carry its burden of showing "the necessity of the protective order .... with a 'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Id.* (quoting *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011)).

The "prejudice" Ford drums up falls far short of the "good cause" needed for a protective order. See Fed. R. Civ. P. 26(c)(1). Ford is not prejudiced by (1) the disclosure of treating physicians' names that they have had for years and who were already disclosed as of 2022, and (2) Nicholas and Katelyn Manley, a married couple who experienced a similar incident mere months ago.

Ford contends that the disclosure—which only announces two *new names* being the Manleys—"would force Ford into a trial by ambush." Dkt. 170 at 13. Ford has had Mr. Wooten's ER records for years now, and could

have deposed any of the treating physicians, including Dr. Christie, at any time. Dr. Christie is still employed at Navicent in Macon and has a busy schedule at the hospital. Taking his deposition now would preserve evidence and prevent Dr. Christie from having to be subpoenaed and pulled from work to testify at trial.

Moreover, Ford has the opportunity to depose these witnesses as early as next week—but it refuses to participate. Dkt. 170 at 1. The real trial by ambush would be if these witnesses were called and Ford had no opportunity to depose them. Unlike *Thomas*, the parties are not supplementing discovery "one month before the start of trial." A trial date has yet to be set in large part because of the numerous discovery disputes Plaintiffs have had to take to the Court. *Thomas v. McDowell*, 2014 U.S. Dist. LEXIS 146914, at *6 WL 5305501 (S.D. Ohio Oct. 15, 2014). Furthermore, Ford cannot argue harm from a lack of report from Dr. Christie or the Manleys—none are offered as experts therefore no written report can be expected. "A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." *Perez v. Boecken*, No. SA-19-CV-00375-XR, 2020 U.S. Dist. LEXIS 101836, at *11 (W.D. Tex. June 10, 2020) (citation omitted). Plaintiffs produced the Manleys' police report to Ford as soon as they were identified. Dkt. 170 at 11.

## Conclusion

For those reasons, the Court should deny Ford's motion to strike and motion for protective order.

Dated: August 4, 2025                    Respectfully submitted,

| | |
|---|---|
| Virgil Adams<br>ADAMS, JORDAN &<br>HERRINGTON, P.C.<br>915 Hill Park, Suite 101<br>Macon, Georgia 31202<br>478.743.2159<br>478.743.4938 (fax)<br>vadams@adamsjordan.com<br><br>Donald H. Slavik<br>SLAVIK LAW FIRM, LLC<br>2834 Blackhawk Court<br>Steamboat Springs, CO 80487<br>(970) 457-1011<br>dslavik@slavik.us | */s/ Robert D. Cheeley*<br>Robert D. Cheeley<br>Georgia Bar No. 122727<br>Nicholas H. Wooten<br>Admitted *Pro Hac Vice*<br>Andre T. Tennille III<br>Georgia Bar No. 940510<br>Gabrielle D. Gravel<br>Georgia Bar No. 449376<br>CHEELEY LAW GROUP, LLC<br>2500 Old Milton Parkway, Suite 200<br>Alpharetta, Georgia 30009<br>(770) 814-7001<br>bob@cheeleylawgroup.com<br>nick@cheeleylawgroup.com<br>dre@cheeleylawgroup.com<br>gabby@cheeleylawgroup.com<br><br>*Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that today I have served a copy of the foregoing on all parties of record, including the Defendants counsel listed below:

Michael R. Boorman, mboorman@watsonspence.com
Paul E. Petersen III, ppetersen@watsonspence.com
Scott A. Richman, srichman@mtrclegal.com
Tiffany Gutierrez, tgutierrez@mtcrlegal.com
Michael Carey, mcarey@dykema.com

/s/ *Robert D. Cheeley*
*Counsel for Plaintiff*