UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BEVERLY WOOTEN, as surviving spouse of Barry Wyatt Wooten, and BARRY WAYNE WOOTEN, as administrators of the Estate of Barry Wyatt Wooten, deceased, *Plaintiffs*,<br><br>v.<br><br>FORD MOTOR COMPANY, *Defendant*. | Civil Action 5:23-cv-00346-MTT |

## PLAINTIFFS' OPPOSITION TO FORD'S MOTION TO SEAL AND FOR APPROPRIATE SANCTIONS

Ford requests the Court sanction Plaintiffs for their "overzealous" search for evidence. As will be shown, Ford's position lacks any merit. At the outset, Plaintiffs are compelled to emphasize that the NHTSA documents they obtained are (1) specifically responsive to Plaintiffs' third request for production; (2) more than a year overdue from Ford; and (3) at all times, Plaintiffs were entitled to have Ford produce ***unredacted copies*** of the NHTSA documents to comply with discovery. These facts alone are dispositive of Ford's motion. Even so, Plaintiffs will explain their actions in full detail and respond to all of Ford's allegations. Included in this explanation is the declaration of Nicholas Wooten, explaining his responsibility for ordering the collection and removal of the failed redactions from the NHTSA documents as Exhibit 4 to this response.

## Introduction, Background & Response to Allegations

Ford's motion admits that it was given notice on July 31, 2025, that Plaintiffs had learned of the NHTSA documents and had "easily viewed" them. Dkt. 184, pg. 2. Ford admits that Plaintiffs then served Ford with the 10,710 pages of NHTSA documents on August 5, 2025, along with a request that Ford admit to producing the documents to NHTSA but withheld them from Plaintiffs. Plaintiffs' Dropbox records indicate that Ford's counsel accessed the NHTSA documents within minutes after it was sent. Prior to the August 7 hearing, Ford never acknowledged Plaintiffs' communications, and significantly, Ford never communicated any concerns about the NHTSA documents or any objection to Plaintiffs classifying the NHTSA documents as non-confidential under the terms of the Parties' protective order. During the August 7 hearing Ford failed to object to the use of the NHTSA documents on any grounds.

In brief, Ford attempts to characterize NHTSA's Preliminary Evaluation 24012 (PE-24012) as "involving Mustang Mach-E vehicles." Dkt. 184 at 2. Ford's counsel told the Court at the August 7 hearing that "[m]y understanding is if they pulled this off of NHTSA -- this was a NHTSA investigation into the BlueCruise feature on the Mustang Mach-E, which is a different vehicle. So this comes from an investigation dealing with a different vehicle and a different feature on a different vehicle. I don't see the relevance." *See* Dkt. 184-3, 80:8-14.

Exhibit 5 to this response is the NHTSA ODI Resume for the Engineering Analysis 25001 (EA25001) that was prompted by PE24012. To be clear, this document has never been confidential and is publicly available on

the NHTSA website today. Exhibit 5 is Bates labeled Wooten039653-039655. The second page of Exhibit 5 explains the chronological history of NHTSA's investigation. NHTSA explained, "[i]n June 2024, ODI sent an Information Request (IR) letter to Ford requiring that it provide certain information pertaining to crashes, non-crash reports, and technical specifications that relate to BlueCruise, as well as other Ford partial driving automation systems that offer lane and speed maintenance." Continuing, NHTSA wrote:

> Ford stated that there are 2,539,962 Ford and Lincoln vehicles (including subject and peer vehicles) equipped with a partial driving automation system within the scope of the request. The majority of these vehicles are equipped with a system that Ford calls Lane Centering Assist (LCA), which is a hands-on partial driving automation system that combines longitudinal control authority governed by Adaptive Cruise Control (ACC) and lateral control authority governed by a steerable path. LCA is offered on a wide range of Ford and Lincoln models beginning in model year 2019. Vehicles that are equipped with BlueCruise, the focus of this investigation, have LCA capability and additionally offer hands-free partial driving automation when certain conditions are met.

Exhibit 5 makes clear that NHTSA was investigating more than two Mach-E crashes involving BlueCruise.

It is true that on August 5, 2025, Plaintiffs produced to Ford 10,710 pages of **Ford** documents that were publicly available on NHTSA's website. Plaintiffs Bates Labeled those documents with the Bates Range of WOOTEN039617-WOOTEN050327. Each document was responsive to Plaintiffs' third Request for Production which sought all communications between Ford and NHTSA regarding its ADAS systems, including BlueCruise.

Ford's initial response to Plaintiffs' third request for production was due in April 2024. Rule 26(e) required Ford to timely supplement discovery responses. Based on the date found on page 1 of Exhibit 2 to this response, Plaintiffs believe that Ford first provided the 10,710 pages of documents to NHTSA on August 30, 2024. Ford's duty to supplement its response to Plaintiffs' third request for production was triggered by Ford's submission to NHTSA. By the time Plaintiffs located the documents on NHTSA's website, nearly a year had passed since Ford provided these documents to NHTSA without Ford fulfilling its Rule 26(e) obligation to supplement its discovery responses with the NHTSA documents.

## Argument

### I.   Ford bore the burden of properly redacting all documents it submitted to NHTSA.

NHTSA placed the burden squarely on Ford to provide NHTSA with a file containing properly redacted documents. *See* Exhibit 1, Wooten039561-Wooten039572 (NHTSA's Information Request ID PE24-012-01 to Ford dated June 4, 2024). On the last page of Exhibit 1, Bates number Wooten039572, NHTSA expressly instructed Ford:

> "You are also required to submit one redacted "public version" of the information for which you are seeking confidential treatment. Pursuant to Part 512.5(a)(2), the redacted "public version" should include redactions of any information for which you are seeking confidential treatment (i.e., the only information that should be unredacted is information for which you are **not** seeking confidential treatment)."

The Director of Ford's Automotive Safety Office responded to NHTSA on August 30, 2024, stating that Ford produced a "second PDF file [ ] labeled "PUBLIC" and contains a "public" copy of the documents." *See* first page of Exhibit 2, Bates number Wooten050328. The exchange between NHTSA and Ford in Exhibits 1 & 2 makes clear that Ford had the sole responsibility for properly redacting the documents submitted to NHTSA. Ford understood NHTSA would post the "public" (redacted) documents on NHTSA's website. Faced with this certainty, the Director of Ford's Automotive Safety Office failed to confirm that proper and effective redactions had been applied to the documents Ford submitted to NHTSA.

The Ford Automotive Safety Office is based in Michigan. Emily Frascaroli is the Director. *See* Ex. 2. Publicly available information indicates "Emily Frascaroli is Managing Counsel of the Product Litigation Group for Ford Motor Company, including the Product Litigation, Asbestos, and Discovery teams."[1] Like all other lawyers, Ms. Frascaroli owes Ford a basic duty of competence under Rule 1.1 of the Michigan Rules of Professional Conduct. The comments to Rule 1.1 state: "[t]o maintain the requisite knowledge and skill, a lawyer should engage in continuing study and education, *including the knowledge and skills regarding existing and developing technology that are reasonably necessary to provide competent representation* for the client in a particular matter." (Emphasis supplied). Ford's failure to properly redact the documents submitted to NHTSA is a self-inflicted wound that exposed these 10,710 documents to public access.

---

[1]    *See* Law.com, https://www.event.law.com/corpcounsel-WIPL-19/speaker/64913/emily-frascaroli (last visited August 22, 2025).

Plaintiffs' diligence in identifying Ford's failure and obtaining the NHTSA documents is not improper or sanctionable.

Because of Plaintiffs' third request for production, Plaintiffs were always entitled to unredacted copies of the NHTSA documents. Ford's own admissions to NHTSA and Ford's statements to this Court confirm ACC with LCA as well as BlueCruise Limited and BlueCruise Hands-On are within the scope of NHTSA's investigation under these definitions. *See* Dkt. 180-5, Wooten012294-012295. Any argument by Ford that the NHTSA documents are not relevant has already been disproven by their substance.

## II. Removal of ineffective redactions from publicly available NHTSA documents is not improper.

The documents Ford submitted to NHTSA were "redacted" only in the sense that someone tried to cover the text with a blacked-out image. Each of those documents could be "unredacted" by simply selecting the blacked-out image and deleting that image from the page after downloading the document from NHTSA's website. This is a simple action any computer literate person with any commercially available PDF program could complete within seconds.

Ford's effort at "redaction" is also known as a "redaction fail." The Paul Manafort case is most famous example of this mistake.[2] Manafort's lawyers made the same mistake that Ford's Director of the Automotive Safety Office made here disclosing significant harmful client information.

---

[2] *See* Rakesh Madhava, *What Happened to Paul Manfort's Redactions*, Nextpoint, https://www.nextpoint.com/ediscovery-blog/what-happened-to-paul-manaforts-redactions/ (last visited August 22, 2025); *and also see* Judge Herbert B. Dixon Jr., *Embarrassing Redaction* Failures, 53 THE JUDGES' JOURNAL 37 (2019), https://www.americanbar.org/content/dam/aba/publications/judges_journal/vol58no2-jj2019-tech.pdf (last visited August 22, 2025).

There is a proper way to permanently redact documents that cannot be removed once the redactions are finalized. As a relevant example, NHTSA asked Ford's competitors to provide information regarding their own Level 2 ADAS systems. Each of Ford's competitors successfully provided documents containing effective redactions that could not be removed. Ford's peers proved by their actions that Ford either (1) could not complete this simple task or, (2) simply chose not to properly redact the NHTSA documents. By this failure, Ford made the NHTSA documents publicly available to anyone with an ounce of curiosity and the ambition to click the documents two times.[3]

Plaintiffs did nothing wrong. Rather, Plaintiffs were diligent in pursuing discovery from all available sources. If Plaintiffs' counsel had not reviewed Ford's filings with NHTSA, then Plaintiffs' counsel arguably would not have discharged their own obligations of diligence under Rule 1.3 and competence under Rule 1.1. At the very least, Plaintiffs would have been denied the benefit of the NHTSA documents.

### III. The NHTSA documents were covered by Plaintiffs' third request for production.

Ford owed Plaintiffs supplemental production of the NHTSA documents for eleven months when Plaintiffs found them on NHTSA's website. Ford cannot claim otherwise. Ford previously produced a handful of NHTSA documents to Plaintiffs in Ford's tardy April 25, 2025 document production

---

[3] Ford cannot deny knowledge that information submitted to NHTSA would be made publicly available. Besides the contents of NHTSA's letter at Exhibit 1, NHTSA's website makes this clear. *See* National Highway Traffic Safety Administration, https://www.nhtsa.gov/resources-investigations-recalls (last accessed August 21, 2025).

including the LCA FMEA (Dkt. 131-1) and Ford's response to NHTSA question 5 (Dkt. 180-5). Ford was clearly aware Plaintiffs sought any communications and documents between NHTSA and Ford. Ford made an incomplete production of these materials on April 25, 2025 which prompted previous motion practice.

Plaintiffs' third request for production, served in March 2024, specifically sought Ford's communications and document production to NHTSA all along. "[T]he duty to supplement discovery continues even after discovery is closed." *Barbour v. Hamm*, 2024 U.S. Dist. LEXIS 208792, at *13 (M.D. Ala. Nov. 18, 2024) (citing *Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001) (concluding that plaintiff "had a continuing duty to disclose information" relevant to damages "even after discovery closed") (citing Fed. R. Civ. P. 26(e)); *Fair Fight Action, Inc. v. Raffensperger*, 2022 U.S. Dist. LEXIS 185132, 2022 WL 6354499, at *2 (N.D. Ga. Mar. 25, 2022); *Dayton Valley Invs., LLC v. Union Pac. R. Co.*, 2010 U.S. Dist. LEXIS 108232, 2010 WL 3829219, at *3 (D. Nev. Sept. 24, 2010) ("[Rule 26(e)] does not limit the time for supplementation of prior disclosures to the discovery period. . . . [T]he mere fact that supplemental information is provided or requested after the discovery cutoff date is not dispositive.")).

## A. Ford fails to show the NHTSA documents deserve protection.

Ford's submission to NHTSA sought confidential treatment of the NHTSA documents to exempt them from general public access under FOIA. The FOIA exemption is not relevant or even applicable to the Court's analysis of whether the NHTSA documents deserve any protection from disclosure in

private litigation. "[…] FOIA generally mandates the disclosure of agency-held records and allows the withholding of such in only narrowly-construed statutory exemptions[.]" *In re F & H Barge Corp. v. D & H Corp.*, 46 F. Supp. 2d 453, 454 (E.D. Va. 1998). "[C]ourts have allowed private litigants to obtain documents in discovery via the FOIA." *Id.* 454-55. "[A party] cannot invoke FOIA as a barrier to relevant discovery requests[...]" *Id.* 455.

Ford's request under FOIA for confidential treatment to NHTSA in no way entitled Ford to withhold the NHTSA documents from Plaintiffs or to offer the Plaintiffs Ford's unilateral redactions of the NHTSA documents. *See Bonnell v. Carnival Corp.*, 2014 U.S. Dist. LEXIS 22459, at *7-9 (S.D. Fla. Jan. 31, 2014) (collecting cases explaining why unilateral redactions create additional problems including collateral litigation and are disfavored).

If Ford believes the NHTSA documents deserve confidentiality in this litigation, the protective order provided Ford with a process to challenge Plaintiffs' designation of the NHTSA documents as non-confidential in ¶¶4, 17, 20. See Dkt. 34. Ford never claimed that the NHTSA documents deserved treatment as anything other than non-confidential documents until after the August 7 hearing. Ford has not argued and cannot demonstrate that any of these materials fall under Rule 26(b)(5)(B) as being "subject to a claim of privilege or of protection as trial-preparation material[.]" Ford has not provided any "basis" for asserting confidentiality of the NHTSA documents in private litigation between private parties.

## B. Ford's discovery violations created this problem.

Plaintiffs reiterate their prior representation to the Court during the August 7 hearing: In this case, Plaintiffs have produced almost 17,000 more pages of ***Ford documents*** to Ford than Ford has produced to the Plaintiffs.

**Ford Documents Produced<br>By Party**

**Ford Docs to Plaintiffs**
**Page Count – 12,627**

**Ford Docs to Ford**
**Page Count – 29,643**

**Difference +16,836**

This scenario is unheard of in modern products liability litigation. Plaintiffs have produced to Ford more than twice as many pages of ***Ford documents*** than Ford has produced to Plaintiffs in what Ford calls "first of its kind litigation" involving an emerging technology. This scenario aligns with the Court's acceptance of Ford's admission that Ford did not discharge its discovery obligations.[4]  If Ford had discharged its discovery obligations, then Plaintiffs would not have been forced to engage in self-help to obtain the NHTSA documents.

## IV.    Plaintiffs had every right to use the NHTSA documents at the August 7 Hearing.

---

[4] Dkt. 184-3, pg. 53:1-7.

Ford's motion seems to argue that Plaintiffs committed some improper act by using the NHTSA documents in open court at the August 7 hearing. As noted above, Ford admits receiving notice on July 31 that Plaintiffs had learned of the NHTSA documents and had "easily viewed" them. Dkt. 184, pg. 2. Ford admits Plaintiffs served 10,710 pages of unredacted NHTSA documents on August 5. Ford admits Plaintiffs contemporaneously sought an admission that Ford had produced the documents to NHTSA but not to Plaintiffs. Ford ignored these communications. Ford certainly never objected to Plaintiffs' designation of the NHTSA documents as non-confidential. Ford never invoked the protective order to request that the documents be given a confidential designation. Ford never asked for an explanation about how Plaintiffs had unredacted copies of the NHTSA documents. Ford never communicated with Plaintiffs before the August 7 hearing to relay any concerns about the NHTSA documents or to object to Plaintiffs classifying the documents as non-confidential.

Ford forfeited its right to object. "[F]orfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *Alia Merch. V. United States Dep't of Educ. Office of Civil Rights Atlanta Div., Sec'y, United States Dep't of Educ.*, 2022 U.S. App. LEXIS 30018, at *5 (11th Cir. Oct. 28, 2022) (citing *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022). Ford's silence regarding the NHTSA documents before the August 7 hearing easily fits within the Eleventh Circuit's definition of forfeiture or waiver of a known right under the protective order.

Ford also failed to object to the use of the NHTSA documents during the August 7 hearing. Ford sat through the hearing and the presentation of the NHTSA documents to the Court without making any objection **on any grounds** to their use in the hearing. "Generally, when a party does not object to the admission of certain evidence at trial, that party waives his right to complain about such admissions later." *BFS Retail & Commer. Operations, LLC v. Harrelson*, 701 F. Supp. 2d 1369, 1377 (S.D. Ga. 2009) (citing *Judd v. Rodman*, 105 F.3d 1339, 1342 (11th Cir. 1997); *and Typographical Service, Inc. v. Itek Corp.*, 721 F.2d 1317, 1320 (11th Cir. 1983)).

Ford also cannot rely on the protective order to argue Plaintiffs' use of the NHTSA documents was improper for two reasons. First, the Court specifically added this language to the Parties agreed protective order:

> "Notwithstanding anything to the contrary in the foregoing order, the Court finds that it shall not apply to exclude evidence from public disclosure when that evidence is relied upon in support of or opposition to any motion or relevant in any hearing or trial." *See* Dkt. 34, page 14.

This is proper because:

> "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents. The media and public presumptively have a right to access judicial records. The common law right of access to judicial records establishes a general presumption that criminal and civil actions should be conducted publicly and includes the right to inspect and copy public records and documents. It is an essential component of our system of justice and is instrumental in securing the integrity of the process."

*Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1166 (11th Cir. 2019) (Internal citations and quotations omitted).

The NHTSA documents were materials used at the hearing for the purpose of rebutting Ford's arguments to the Court which contradicted Ford's submissions to NHTSA. The Eleventh Circuit has explained that "materials submitted by litigants—whether or not they are formally filed with the district court—that are 'integral to the "judicial resolution of the merits"' in any action taken by that court are subject to the common law right of access and the necessary balancing of interests that the right entails." *Id.* at 1167 (citing *AbbVie Prods., LLC*, 713 F.3d 54, 64 (11th Cir. 2013) (quoting *Chicago Tribune Co.*, 263 F.3d 1304, 1312 (11th Cir. 2001)).

Based on Exhibit 3, two days before the August 7 hearing, Ford was on notice that: (1) Plaintiffs' counsel had obtained the NHTSA documents, (2) Ford's attempt to redact the NHTSA documents had failed, (3) Plaintiffs' production had not designated the NHTSA documents as confidential, and (4) Plaintiffs' counsel intended to use the NHTSA documents in this case. If Ford thought Plaintiffs' treatment of the NHTSA documents was improper, the protective order provided Ford with a process to challenge Plaintiffs' failure to designate the NHTSA documents as confidential in ¶¶4, 17, 20. Ford sat on its hands and said nothing until after the NHTSA documents had been used to highlight the incongruity between Ford's statements to NHTSA and the Court on numerous points.

## V.    No Confidentiality Designation Would Prevent the Use of Evidence During a Hearing.

Ford's argument about the use of the NHTSA documents at the August 7 hearing ignores the fundamental presumption that all court proceedings are public. "Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case. Absent a showing of extraordinary circumstances set forth by the district court in the record … the court file must remain accessible to the public." *In re Deepwater Horizon Belo Cases*, 2022 U.S. Dist. LEXIS 238522, at *4-5 (N.D. Fla. Sep. 8, 2022) (quoting *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). "The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Id.* (quoting *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)). As noted here and in the authority in Section IV above, no confidentiality designation can prevent material from being offered into evidence and becoming public and being treated as non-confidential once the materials become evidence in a contested matter. Even if Ford had produced the NHTSA documents with its most restrictive designation under the protective order, such a designation would not prevent Plaintiffs' use of these materials at the August 7 hearing to disprove Ford's assertions.

## VI.    Ford's Allegations are Addressed.

Plaintiffs' counsel's declaration in support of the opposition to Ford's motion is attached to this response as Exhibit 4. The declaration includes a detailed factual explanation of how Plaintiffs' counsel determined the NHTSA documents were not properly redacted and the steps taken in the process of

ordering the removal of the failed redactions and the collection of the NHTSA documents. Included in the declaration at paragraph 38 is an itemized table of Ford allegations and Plaintiffs' succinct responses. Plaintiffs' counsel's declaration makes clear that attorney Nicholas Wooten is responsible for all of the decisions that Ford has challenged and explains his good faith belief that these decisions were legally and ethically proper at all times.

## Conclusion

Ford's motion is a veiled attempt to set up a straw man so that Ford can knock it down. The NHTSA documents were ineffectively redacted by Ford's Managing Counsel. Embarrassed by its own *faux pas*, Ford vilifies Plaintiffs' counsel for doing their job.

For all these reasons, Plaintiffs request that the Court deny Ford's motion. To the extent that there are any issues remaining where the Court has questions over the conduct regarding these allegations, Plaintiffs request a hearing before the Court to address any of the Court's concerns.


Dated: August 22, 2025,                     Respectfully submitted,


                                            */s/ Nick Wooten*
Virgil Adams                                Robert D. Cheeley
ADAMS, JORDAN & HERRINGTON                  Georgia Bar No. 122727
P.O. Box 928                                Nicholas H. Wooten
915 Hill Park, Suite 101                    Admitted *Pro Hac Vice*
Macon, Georgia 31202                        Andre T. Tennille III
(478) 743-2159                              Georgia Bar No. 940510
(478) 743-4938                              Gabrielle D. Gravel
vadams@adamsjordan.com                      Georgia Bar No. 449376
                                            CHEELEY LAW GROUP, LLC

Donald H. Salvik
Slavik Law Firm, LLC
2834 Blackhawk Court
Steamboat Springs, CO 80487
(970) 457-1011
dslavik@slavik.us

2500 Old Milton Parkway, Suite 200
Alpharetta, Georgia 30009
(770) 814-7001
bob@cheeleylawgroup.com
nick@cheeleylawgroup.com
dre@cheeleylawgroup.com
gabby@cheeleylawgroup.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that today I have served a copy of the foregoing on all parties of record by email.

/s/ *Nick Wooten*
*Counsel for Plaintiffs*