IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BEVERLY WOOTEN, as Surviving Spouse of BARRY WOOTEN and BARRY WAYNE WOOTEN, as Administrators of the ESTATE OF BARRY WYATT WOOTEN, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | CIVIL ACTION FILE NO:<br><br>5:23-cv-00346 |

**FORD MOTOR COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO SEAL AND FOR APPROPRIATE SANCTIONS**

Nothing in Plaintiffs' Response (Doc. No. 187) justifies or excuses knowingly altering and unredacting documents that contain confidential business information. In what has become a pattern, Plaintiffs first conflate BlueCruise on Mach-E vehicles with Mr. Wooten's non-BlueCruise-equipped F-150, then seek to deflect away from their own actions by blaming Ford, and lastly claim because Ford's counsel in this separate matter from the NHTSA investigation did not catch-on earlier, they should get a free pass.

I.   **The NHTSA Documents are Outside the Scope of Court Sanctioned Discovery.**

Regardless of whether the documents Plaintiffs altered from the NHTSA website are responsive to Plaintiffs' discovery requests (which Ford disputes), the fact is their actions were completely improper under the discovery procedures established by this Court.

On responsiveness, Plaintiffs never challenged Ford's response to Request for Production No. 3 with respect to communications with NHTSA or any other governmental agency. Plaintiffs

have shown they are fully aware of the Court's procedure in challenging discovery responses, yet they never pursued it here.

Plaintiffs' own Exhibit 1 (Doc. No. 187-1) makes plain the NHTSA documents are not within the scope of established discovery in this case. NHTSA's investigation was initiated after two crashes involving Ford Mustang Mach-E vehicles "equipped with Co-Pilot 360 Active 2.0" and "covers the Ford BlueCruise system equipped in these vehicles" (*Id.*) "In each crash, the BlueCruise system is confirmed to have been engaged immediately prior the accident." (*Id.*)

> This letter is to inform you that the Office of Defects Investigation (ODI) of the National Highway Traffic Safety Administration (NHTSA) has opened a Preliminary Evaluation (PE24-012) to investigate 2021-2024 Ford Mustang Mach-E vehicles equipped with Co-Pilot360 Active 2.0. This letter covers the Ford BlueCruise system equipped in these vehicles and other Ford vehicles. ODI's evaluation will include the system's performance of the dynamic driving task and driver monitoring. The agency is aware of two crashes resulting in three fatalities which have been submitted under Standing General Order 2021-01. In each crash, the BlueCruise system is confirmed to have been engaged immediately prior to the incident.

(Plfs' Ex. 1, Doc. No. 187-1).

Ford has steadfastly maintained its objections to expanding the scope of discovery into (1) other unrelated vehicles and (2) BlueCruise, with which Mr. Wooten's vehicle was not equipped. Ford first responded to Plaintiffs' Request for Production No. 3 on April 25, 2024. In that response, Ford offered to search for and produce a host of documents related to "**Ford's Lane Keeping System, Lane Departure Warning, Lane Keeping Assist, or Traffic Sign Recognition available in 2021-2023 Ford F-150 pickup trucks**," and objected to the remainder as outside the scope of discovery reasonably relevant to this case. (Doc. No. 107-3, and below).

> **REQUEST FOR PRODUCTION NO. 3:** Please produce all internal communications within Ford and external communications, including but not limited to, NHTSA and other regulatory agencies with suppliers concerning technical specifications, performance criteria, testing requirements, and testing results for Ford Lane Keeping, Lane Centering, Lane Departure, Camera training including object recognition, camera only ADAS, camera plus radar ADAS, and camera plus radar plus driver monitoring ADAS, and BlueCruise.
>
> **RESPONSE:** Ford will search for and produce, if located, the following documents:
>
> - Final end-item assembly drawings, material specifications, engineering specifications applicable to Ford's Lane Keeping System, Lane Departure Warning, Lane Keeping Assist, or Traffic Sign Recognition available in 2021-2023 Ford F-150 pickup trucks;
>
> - Attribute requirements, test procedures, and/or sign off documents applicable to Ford's Lane Keeping System, Lane Departure Warning, Lane Keeping Assist, or Traffic Sign Recognition available in 2021-2023 Ford F-150 pickup trucks;
>
> - Functional requirement specifications, design verification plan and report, interface requirements, design verification test procedures, and/or design verification testing applicable to Ford's Lane Keeping System, Lane Departure Warning, Lane Keeping Assist or Traffic Sign Recognition available in 2021-2023 Ford F-150 pickup trucks.
>
> Beyond this, Ford objects to this Request because it is overly broad, unduly burdensome, and seeks information that is neither relevant to the issues in this litigation nor proportional to the needs of the case, ==particularly as it is not limited to the vehicle program or model year reasonably at issue==, a reasonable or relevant time frame, ==the components at issue in this litigation==, or any particular type of document.

Plaintiffs never sought to challenge those responses or overturn the objections. Instead, Plaintiffs circumvented the system, downloaded publicly available redacted documents from NHTSA's website, and admittedly purposefully removed the redactions for their use and never disclosed these actions. This conduct should not be countenanced.

II. **Nothing In Plaintiffs' Response Justifies or Excuses Unilaterally Altering Redacted Documents.**

Plaintiffs' Response essentially argues that because it was easy, it was okay to cheat. In apparent support of their actions, Plaintiffs point to what they call the "Paul Manafort Case." However, nothing in the cited Manafort materials supports the position that "failed redactions" are open season for opposing attorneys. The *Madhava* article contains no discussion of the propriety of removing those redactions or whether the Court made any ruling on whether anyone was

sanctioned for the un-redactions.  More importantly, as shown by the *Judge's Journal* that Plaintiffs cite, the Manafort redaction removal was performed by ***third party media*** outlets, not opposing counsel—who have legal and ethical obligations to refrain from such conduct.  (*See* Ford's Motion, p. 5-7, Doc. No. 184, for discussion of such attorney obligations.)  Further, once the redaction issues in the Manafort case came to light, "[t]he pleadings were quickly removed from public access.  They were replaced later with properly redacted pleadings."[1]  By comparison here, Plaintiffs actually fought against Ford's request to seal the confidential documents.  And even today, Plaintiffs are pushing for their experts to be able to rely on these improperly unreacted documents as new, additional bases for their opinions.

As is plain from the documents' face, **both Ford and NHTSA intended for them to remain confidential** and not be disclosed to the public.  Plaintiffs acknowledge that confidential submissions are governed by 49 C.F.R. Part 512.  (Plfs' Ex. 1, Doc. No. 187-1).  Information that has been claimed or determined to be confidential under Part 512 can <u>only</u> be disclosed by NHTSA if: "**the submitter of the information is given written notice of the Administrator's intention to disclose information under this section.** Written notice will be given at least twenty (20) working days before the day of release, unless the Administrator finds that shorter notice is in the public interest." *Id.* at 512(a)(4).  In a letter to NHTSA on April 30, 2024 (Plfs' Ex. 2, Doc. No. 187-2), Ford explained its claim of confidentiality for these records and justification for the redactions.  NHTSA never disagreed with Ford's representations, allowed only the redacted version of Ford's documents to remain on the publicly accessible docket, and never sought to release any part of the confidential information under 49 C.F.R. Part 512.

---

[1] Judge Herbert B. Dixon Jr., *Embarrassing Redaction* Failures, 53 THE JUDGES' JOURNAL 37 (2019), https://www.americanbar.org/content/dam/aba/publications/judges_journal/vol58no2-jj2019-tech.pdf  (last visited August 28, 2025).

Finally, NHTSA's Terms of Use, on the same website from which Plaintiffs' downloaded the redacted documents, make it clear that Plaintiffs' actions in modifying and unredacting these documents were prohibited and improper.[2]

> **DISCLAIMER AND LIMITATION OF LIABILITY**
>
> This web site and the information it contains is provided as a public service by the National Highway Traffic Safety Administration (NHTSA), U.S. Department of Transportation (DOT). This system is monitored to ensure proper operation, to verify the functioning of applicable security features, and for other like purposes. Anyone using this system expressly consents to such monitoring. **Unauthorized attempts to modify any information stored on this system, to defeat or circumvent security features, or to utilize this system for other than its intended purposes are prohibited and may result in criminal prosecution.**

Plaintiff plainly violated these Terms of Use as well as Ford's and NHTSA's privacy expectations when they altered documents containing confidential business information.

## III.    Any Lack of Instantaneous Objections to the Improper Unredactions Is Immaterial.

According to Plaintiffs, on August 5, 2025, Plaintiffs produced to Ford "10,710 pages" (Doc. No. 187, p. 3) of unredacted NHTSA documents two days before a hearing in this case on August 7, 2024.  The only description Plaintiffs gave was these documents were publicly available on the NHTSA website and they were "easily viewed" using Adobe.  (Plaintiffs' Response, Doc. No. 187, p. 2).  Contrary to Plaintiffs' insinuation in their Response, Plaintiffs never disclosed to Ford or the Court that these documents were originally redacted before Plaintiffs downloaded, unredacted, and produced them to Ford.  Ford's outside counsel had no duty to, and nothing in Plaintiffs' nondescript letters put Ford's counsel on notice they should, investigate how these documents existed before Plaintiffs got them or to investigate whether Plaintiffs had altered the documents.  This is especially true where the documents involved a different vehicle and different

---

[2] https://www.nhtsa.gov/about-nhtsa/terms-use (last visited August 28, 2025).

systems from those at issue in this case. To the contrary, Ford's counsel did not automatically assume Plaintiffs' counsel violated their ethical duties and removed redactions from confidential documents.

None of Plaintiffs' cited case law is on point to require Ford to have objected to the use of unredacted documents at the hearing. For example, *BFS Retail & Commer. Operations, LLC v. Harrelson*, 701 F. Supp. 2d 1369, 1377 (S.D. Ga. 2009), cited by Plaintiffs, involved Harrelson waiving his right to object to a **trial exhibit** that Harrelson "was aware of contents of this exhibit well in advance of trial," and "The exhibit was listed in the proposed pretrial order submitted jointly by the parties. *Id.* at 1338. Contrast that with Plaintiffs' dumping 10,710 pages on Ford two days prior to a motion hearing, not indicating they had been tampered with, using a select few pages at the hearing while still not disclosing the removal of the redactions, and then claiming Ford's counsel should have figured out on their own before or during the hearing that Plaintiffs improperly unredacted the documents.

It was only after Ford's counsel returned from the hearing and alerted Ford that the Court had ordered Chet Hearn to sit for a second deposition—based on the draft affidavit—that someone at Ford realized the redactions to the draft Affidavit had been removed. Ford and its counsel then further investigated the other documents Plaintiffs used at the hearing and a sampling of the 442 documents Plaintiffs had manually unredacted. Immediately after learning the documents had been altered, Ford contacted NHTSA—who then removed the documents from the public domain. It was only after Ford brought this alteration to the Court's attention that Plaintiffs stopped using cryptic language like "easily viewed" and admitted they had manually unredacted each page by hand. Had Plaintiffs really believed they were doing nothing wrong, there would have been no

need to obfuscate and this would have been brought to Ford and the Court's attention from the beginning.

## CONCLUSION

Nothing in Plaintiffs' Response justifies or excuses the intentional alteration of confidential business documents. Ford respectfully requests the Court enter the appropriate modest sanctions of: (1) fully and permanently sealing the altered documents filed in the Court file as Doc. Nos. 180-1 through 180-7; (2) requiring Plaintiffs to destroy any altered or unredacted Ford documents in their possession, whether produced by Plaintiffs or not, (3) requiring Plaintiffs to disclose whether they have disseminated **any unredacted Ford documents** to their experts or any third parties, and to claw back and destroy any and all such copies of **any unredacted Ford documents**; (4) prohibiting Plaintiffs from re-deposing Chet Hearn, (5) prohibiting Plaintiffs from using any of the NHTSA documents, whether produced by Plaintiffs in this case or not, for any purpose in this litigation or at trial; ; and (5) ordering that Plaintiffs are barred from conducting ANY AND ALL additional discovery in this case, with the case proceeding to dispositive and Rule 702 motions and then trial, if necessary.

Respectfully submitted this 29th day of August, 2025.

/s/ Paul E. Petersen
Michael R. Boorman
Georgia Bar No. 067798
Paul E. Petersen, III
Georgia Bar No. 791066
WATSON SPENCE, LLP
Bank of America Plaza
600 Peachtree Street NE
Suite 2320
Atlanta, GA 30308
Telephone: 229-436-1545
mboorman@watsonspence.com
ppetersen@watsonspence.com

Scott A. Richman
*Admitted pro hac vice*
Tiffany M. Gutierrez
*Admitted pro hac vice*
MCDONALD TOOLE RICHMAN & CORRENTI, P.A.
srichman@mtrclegal.com
tgutierrez@mtrclegal.com

Michael Carey
*Admitted pro hac vice*
DYKEMA
mcarey@dykema.com

Derek Linkous
*Admitted pro hac vice*
Bush Seyferth PLLC
linkous@bsplaw.com
*Attorneys for Defendant
Ford Motor Company*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Robert D. Cheeley
Nick Wooten
Andre Tennille
Gabrielle Gravel
CHEELEY LAW GROUP, LLC
2500 Old Milton Parkway, Suite 200
Alpharetta, Georgia 30009
bob@cheeleylawgroup.com
Nick@cheeleylawgroup.com
dre@cheeleylawgroup.com
ggravel@cheeleylawgroup.com
*Counsel for Plaintiffs*

Donald H. Slavik
Slavik Law Firm, LLC
3001 South Lincoln Avenue
Suite C-1
Steamboat Springs, Colorado 80487
dslavik@slavik.us
*Counsel for Plaintiffs*

Virgil L. Adams
ADAMS, JORDAN & HERRINGTON, P.C.
915 Hill Park Suite 101
P.O. Box 928
Macon, GA 31202
vadams@adamsjordan.com
*Counsel for Plaintiffs*

This 29th day of August, 2025.

                                                  */s/ Paul E. Petersen, III*
                                                  Michael R. Boorman
                                                  Georgia Bar No. 067798
                                                  Paul E. Petersen, III
                                                  Georgia Bar No. 791066