IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BEVERLY WOOTEN, as Surviving Spouse of BARRY WOOTEN and BARRY WAYNE WOOTEN, as Administrators of the ESTATE OF BARRY WYATT WOOTEN, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendants. | CIVIL ACTION FILE NO:<br><br>5:23-cv-00346 |

**FORD MOTOR COMPANY'S TO REPLY REGARDING
<u>ADDITIONAL DOCUMENT PRODUCTION</u>**

Ford Motor Company ("Ford") files this Reply to Plaintiffs' Response Regarding Additional Documents (Doc. No. 223), showing as follows:

**1. IPMA Detection Specification (Rev. 2)**

Ford maintains its position that the IPMA Detection Specification applicable to the subject vehicle and sent to Mobileye for 2021 P702 F-150 pickup trucks is Version 1.0, which Ford produced to Plaintiffs on May 17, 2024. "Version 2" of the IPMA Detection Specification is not applicable to the subject vehicle and does not reflect the information sent to Mobileye related to 2021 P702 F-150 pickup trucks. The version of the IPMA Detection Specification referred to as Version 2 was left in the SPP Specification in error. Ford researched the history of references to the IPMA Detection Specification in prior SPP Specifications and saw that the Version 2 IPMA Detection Specification relates to the prior CADS 3.5 technology and is referenced in prior versions of the SPP Specification. Ford acknowledges that this is a scrivener's error – the SPP Specification was copied from prior versions and some references, including the reference to a

prior version of the IPMA Detection Specification copied over from CADS 3.5, was not updated with the work actually happening in the enhanced DAT 2.0 systems with FNV (Fully Networked Vehicle) electrical architecture. **Because Ford transitioned to DAT 2.0, the IPMA Specification applicable to DAT 2.0 started over with Version 1.** The *earlier* "Version 2" IPMA Detection Specification applies to CADS 3.5 and relates to lane detection only. The Version 1 IPMA Detection Specification, which Plaintiffs have, includes not only lane detection, but also signs, lane lines, and other features that were communicated to Mobileye.

Additionally, as Natalie DeCook's Second Supplemental Report (Exhibit A) details, The Mobileye chip in the subject vehicle is not a Ford specific offering. The chip provides many different vision sensor outputs for other customers who may have needs different from Ford. Ford only uses certain sensor outputs if they are required by a feature's specifications and meet Ford's defined performance criteria, as outlined in the IPMA Detection Specification. The IPMA Detection Specification must be read in connection with other documents, including the SPP Specification, to determine what shall, should, and may be used from the vision and radar sensors available on the vehicle to determine the SPP used by Lane Centering. Accordingly, the only version of the IPMA Detection Specification that is relevant to the subject vehicle is Version 1, which was provided to Mobileye in connection with 2021 P702 pickup trucks and was previously produced in this case.

There is no "conflict." There was a scrivener's error, which Ford has explained above in great detail. The "Version 2" of the IPMA Detection Specification does not apply to the subject vehicle. The technology predates the subject vehicle, and the specification is absolutely irrelevant. Plaintiffs' request for this document should be denied.

2.  **CGEA 1.3 CADS3p5 LROS Specification (Rev. 17)**

As indicated above, CGEA 1.3 relates to an earlier electrical architecture and CADS 3.5 relates to an earlier suite of ADAS technology. However, the subject 2021 P702 F-150 vehicle was equipped with the updated FNV electrical architecture and DAT 2.0 ADAS technology. Accordingly, the CGEA 1.3 CADS3p5 LROS Specification does not apply to the subject vehicle and is not relevant. Further, as Ford has already explained, and similar to the scrivener's error in referencing the prior version of the IPMA Specification, the CGEA 1.3 CADS3p5 LROS Specification was erroneously not updated in the SPP Specification when the new DAT 2.0 version of the SPP Specification was created. The reference should have been to the FNV2 DAT2 LROS Interface Specification.

Plaintiffs' statement that Ford should not avoid production of these specifications because "trade secrets" are discoverable severely minimizes Ford's objections. As Ford previously stated, this Court already ruled that .a2L and .dbc files are not discoverable. (Doc. No. 97). The Court stated that Plaintiffs have not shown a basis for obtaining these materials. This has not changed. As previously stated, Plaintiffs' assertions that Lane Keeping, Lane Centering, and Intelligent Adaptive Cruise Control were active at the time of the crash are not supported by the actual evidence in this case. However, if we assume that these systems were active for the sake of this argument, Plaintiffs' remaining assertions about the functionality of these driver assist features grossly and inappropriately misrepresent the technology and the indisputable role of the driver in using these features. Ford has agreed multiple times that the 2021 F-150's Adaptive Cruise Control and Lane Centering Assist features were not designed to be capable of navigating the vehicle though this 20 mph exit lane curve at 77 mph. Therefore, this document is both irrelevant and unnecessary.

Plaintiffs' offer to not share these materials inappropriately mischaracterizes Ford's objection to producing this new document and the Court's prior order that .dbc and .a2L files are not discoverable in this case. The values within .dbc and .a2L files and supporting documents can aid hackers in potentially altering the vehicle's behavior inconsistent with Ford design and testing, whether intentional or unintentional. (Doc. 49 at 17). Further, this information is invaluable to teams attempting to reverse engineer Ford's technology. (Doc. 49 at 17). What matters here is that the LROS Specifications requested are not applicable to the subject vehicle's performance in the subject incident. For the reasons stated, these documents are not relevant or necessary, meaning there is no benefit to Plaintiffs, and the production of these documents could cause irreparable harm because they contain highly proprietary information that could be used by competitors or hackers in ways that could disadvantage Ford or its customers.

## CONCLUSION

Ford produced the applicable and relevant IPMA Detection Specification over a year ago. Ford has provided considerable explanation why the additional documents Plaintiffs request are neither applicable to the subject vehicle nor relevant to the issues in this litigation and are ripe for being taken out of context if they were produced. The relevant information about Lane Centering performance in the subject vehicle is contained within the SPP Specification and IPMA Detection Version 1.2, both of which Plaintiffs already have. Defining an arena of technology using outdated feature specifications is nonsensical. Plaintiffs' continuing unfounded request for these additional documents should be denied.

Respectfully submitted this 24th day of October, 2025.

>WATSON SPENCE, LLP
>
>*/s/ Paul E. Petersen*
>Michael R. Boorman
>Georgia Bar No. 067798
>Paul E. Petersen, III
>Georgia Bar No. 791066
>Bank of America Plaza
>600 Peachtree Street NE
>Suite 2320
>Atlanta, GA  30308
>Telephone: 229-436-1545
>mboorman@watsonspence.com
>ppetersen@watsonspence.com
>
>Scott A. Richman
>*Admitted pro hac vice*
>Tiffany M. Gutierrez
>*Admitted pro hac vice*
>MCDONALD TOOLE RICHMAN & CORRENTI, P.A.
>srichman@mtrclegal.com
>tgutierrez@mtrclegal.com
>
>Michael Carey
>*Admitted pro hac vice*
>DYKEMA
>mcarey@dykema.com
>
>Derek Linkous
>*Admitted pro hac vice*
>BUSH SEYFERTH PLLC
>linkous@bsplaw.com
>
>*Attorneys for Defendant*
>*Ford Motor Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Robert D. Cheeley
Nick Wooten
Gabrielle Gravel
McKenzie R. Nadel
CHEELEY LAW GROUP, LLC
2500 Old Milton Parkway, Suite 200
Alpharetta, Georgia 30009
bob@cheeleylawgroup.com
Nick@cheeleylawgroup.com
ggravel@cheeleylawgroup.com
mckenzie@cheeleylawgroup.com
*Counsel for Plaintiffs*

Donald H. Slavik
Slavik Law Firm, LLC
3001 South Lincoln Avenue
Suite C-1
Steamboat Springs, Colorado 80487
dslavik@slavik.us
*Counsel for Plaintiffs*

Virgil L. Adams
Caroline W. Herrington
ADAMS, JORDAN & HERRINGTON, P.C.
915 Hill Park Suite 101
P.O. Box 928
Macon, GA 31202
vadams@adamsjordan.com
cherrington@adamsjordan.com
*Counsel for Plaintiffs*

This 24th day of October, 2025.

                                                */s/ Paul E. Petersen*
                                                Michael R. Boorman
                                                Georgia Bar No. 067798
                                                Paul E. Petersen, III
                                                Georgia Bar No. 791066