# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

|  |  |
|---|---|
| BEVERLY WOOTEN, as Surviving Spouse of BARRY WYATT WOOTEN, Deceased, BEVERLY WOOTEN and BARRY WAYNE WOOTEN, as Co-Administrators of the ESTATE OF BARRY WYATT WOOTEN, Deceased, | CIVIL ACTION FILE NO. |
| Plaintiffs, | 5:23-cv-00346-MTT |
| v. |  |
| FORD MOTOR COMPANY, |  |
| Defendant. |  |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO QUASH FORD'S SUBPOENA TO NON-PARTY DROPBOX ONLINE, INC.

Ford's Response to Plaintiffs' Motion to Quash (Doc. 354) confirms, rather than cures, the fundamental defect in its Dropbox subpoena. Ford does not dispute its subpoena reaches two full years of an entire law firm's file storage across all clients and matters. Instead, Ford offers three arguments in defense: (1) its proposed filter process (although not contemplated or incorporated in its subpoena) adequately protects privilege; (2) Plaintiffs impliedly waived privilege by voluntarily disclosing the violations; and (3) Plaintiffs' privilege assertion is a blanket invocation that is legally insufficient. None of these arguments withstand scrutiny. The subpoena should be quashed, or in the alternative modified as set forth herein.

### Introduction

Plaintiffs do not dispute Ford has a legitimate interest in understanding the full scope of the improper disclosures made by former counsel Nick Wooten and paralegal Kamden Ahlberg. To the contrary, Plaintiffs' Counsel voluntarily disclosed those violations, provided Ford with copies of the seven improper disclosure emails,

and stated at the April 1, 2026 hearing they did not object to Ford reviving the two inactive Dropbox links. Doc. 351 at 35:17–12; 36:12–25. That is not the conduct of a party trying to obstruct a legitimate investigation.

What Plaintiffs object to is the instrument and over-reaching scope Ford chose to pursue that investigation: a subpoena demanding every document uploaded, downloaded, or accessed through Dropbox by every attorney and staff member at Cheeley Law Group, across every client matter, for a two-year period, without an established, Court-approved protocol for handling privileged materials. Doc.352-1, Ford's Subpoena. That is not a targeted forensic investigation—it is a wholesale seizure of Plaintiffs' Counsel's firm-wide file storage. The Federal Rules do not permit it, and Ford's proposed workarounds do not cure it. Doc. 354. at 6.

Argument

## I. Ford's proposed filter-process does not cure the overbreadth or protect privilege.

Ford's primary defense is its proposed filter process—routing production through its retained forensic expert, Brian Chase of Archer Hall, before anything reaches Ford—adequately addresses Plaintiffs' privilege concerns. Significantly, Ford's proposal to involve Brian Chase is *not* contemplated or incorporated in the current subpoena.  If the subpoena to Dropbox is not quashed, Dropbox would have no obligation to first produce any documents to Ford's expert before producing to Ford. Thus, an amended or modified subpoena reflecting Ford's proposal is needed before properly addressed. However, even assuming Ford amended its subpoena to reflect its new proposal involving Mr. Chase, any modified   subpoena should still be quashed for at least three reasons.

### A. Chase is Ford's expert, not a neutral.

Ford characterizes its proposed process as "akin to the use of taint or filter teams in government investigations." Doc. 354 at 6. But the analogy breaks down at

2

its most critical point: in the government context, taint teams operate under direct judicial supervision, pursuant to a court-issued warrant, with protocols approved by a neutral magistrate. *See United States v. Korf (In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means)*, 11 F.4th 1235, 1249 (11th Cir. 2021) ("[The Filter-Team Protocol] requires the Intervenors' permission or court order for any purportedly privileged documents to be released to the investigation team. This means that the filter team cannot inadvertently provide the investigation team with any privileged materials."). Brian Chase was retained and will be paid by Ford. He is not a neutral arbiter. Entrusting an adversary's consultant with unfettered initial access to opposing counsel's entire firm-wide file storage—even subject to filtering commitments—does not provide the independent, court-supervised protection that privilege demands.

This Court has the authority to appoint a truly neutral forensic examiner or to establish a Court-supervised review protocol if additional Dropbox investigation is warranted. That is the appropriate mechanism, not a unilateral arrangement with Ford's own expert.

### B. No court-approved protocol is in place.

At the April 1, 2026 hearing, this Court made clear any forensic investigation would need to be "set up in a way that would protect, for example, issues of confidentiality," and that "certainly the details are going to have to be addressed." Doc. 351 at 39:23–40:1; 36:8–9. Ford issued its sweeping subpoena on May 5, 2026—without a Court-approved protocol in place and without resolving the scope and confidentiality issues the Court expressly flagged as prerequisites. The meet-and-confer correspondence (Doc. 352-2) confirms the parties were far apart, and no agreement was reached. Ford's unilateral action in the face of the Court's limits and

guidance is itself a basis to quash under Rule 26(b)(1) as the scope is unproportional to the legitimate needs of Ford's investigation. Doc. 351 at 44:18-45:6.

### C. The proposed process still sweeps in irrelevant and privileged material.

Under Ford's proposal, although not incorporated into Ford's current subpoena, Mr. Chase would first receive the entirety of Cheeley Law Group's Dropbox production—thousands of documents from dozens of unrelated client matters, including medical records—and then filter for relevance. But the privilege protection the Federal Rules afford does not permit even an initial review of privileged material by an adversary's agent absent a finding that no other means will suffice. Rule 45(d)(3)(A)(iii) mandates quashing a subpoena that "requires disclosure of privileged or other protected matter." The word "requires" does not have an exception for "requires, but subject to review by the opposing party's consultant."

## II. Plaintiffs' voluntary disclosure did not constitute implied waiver of privilege over the entire Firm's Dropbox activity.

Ford invokes the implied waiver doctrine, arguing that by disclosing the improper transmissions, Plaintiffs placed privileged material "at issue" and thereby waived the privilege as to the full scope of Cheeley Law Group's Dropbox activity. Doc. 354 at 5. This argument distorts both the doctrine and the facts.

Implied waiver applies when a privilege holder selectively discloses privileged communications to gain a tactical advantage "for its own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party." *United States ex rel. Permenter v. Eclinicalworks, LLC*, No. 5:18-cv-382 (MTT), 2026 LX 203946, at *10-11 (M.D. Ga. May 18, 2026) (citation modified). The rationale is to prevent a party from using privilege as both a sword and a shield. That is not what happened here, and Plaintiffs are not using the

4

disclosed Dropbox links and emails "to establish[] the elements of the case" or some other advantage. *Id.*at \*11.

Instead, Plaintiffs' Counsel disclosed the improper transmissions voluntarily, in line with a duty of candor to the Court and opposing counsel—not to advance a litigation position or gain a strategic advantage. *See* Fed. R. Civ. P. 11(b). Disclosure occurred on February 12 and 18, 2026, unprompted by any Court order or discovery demand. Doc. 348. To treat that act of good faith as a wholesale waiver of attorney-client privilege and work product protection across every Cheeley Law Group matter would create a perverse and dangerous incentive: attorneys who self-report violations of court orders lose all privilege; attorneys who stay silent are better protected. That cannot be the law.

Even under Ford's own authority, the scope of any implied waiver is limited to the subject matter actually placed at issue. *See Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 241 (N.D. Cal. 2015). What Plaintiffs placed at issue is the content of seven identified Dropbox links transmitted in violation of the protective order and the Court's order regarding the NHTSA documents. Any waiver—to the extent one exists at all—extends only to those seven links and their direct subject matter. It does not extend to two years of an entire firm's file storage across unrelated clients, unrelated matters, and unrelated staff.

Ford's argument would effectively nullify privilege for any law firm that self-reports a disclosure violation. Courts should be reluctant to extend implied waiver in a manner that punishes good-faith candor.

### III. Plaintiffs' privilege objection is not a "blanket" assertion—it's a facial challenge to an overbroad subpoena.

Ford argues Plaintiffs' privilege assertion is an impermissible "blanket" invocation, citing *Popcorned Planet, Inc. v. Lively*, 815 F. Supp. 3d 1248, 1252 (M.D.

Fla. 2025), for the proposition that privilege must be established document-by-document. But Ford misapplies the standard.

The document-by-document requirement—and the accompanying privilege log obligation under Rule 45(e)(2)—applies at the compliance stage, when a subpoenaed party has received a valid subpoena and is withholding specific, identified documents from production. It does not apply when the challenge is facial: that the subpoena, as written, structurally demands privileged material and therefore should never be complied with at all.

Plaintiffs' motion is a facial challenge. The subpoena, on its face, demands "any and all records" of an entire law firm's Dropbox activity for two years. No document-by-document showing is required to establish that such a demand will necessarily sweep in privileged attorney-client communications and attorney work product—that is self-evident from the scope of the demand itself. Rule 45(d)(3)(A)(iii) mandates quashing or modifying a subpoena that, on its face, "requires disclosure of privileged or other protected matter." Requiring Plaintiffs to produce a privilege log of thousands of documents that have not yet been produced—and that should never be produced—gets the analysis exactly backwards.

Furthermore, the privilege at stake is not only Plaintiffs. The subpoena demands two years of file storage for a law firm with multiple attorneys working on numerous unrelated matters. Those clients, who have no connection to this litigation, are not parties to this case, and have no opportunity to assert their own privilege here, would have their confidential communications swept into a production in a case they know nothing about. Ford's response does not address this at all. It cannot.

## IV. The appropriate remedy is a narrowly tailored, Court-supervised process—not wholesale production.

The proper sequencing for resolving Ford's legitimate investigative interest is: first complete the forensic email review authorized at the April 1, 2026 hearing, of

which the parties are currently negotiations the protocol; then if that review identifies additional Dropbox transmissions beyond the seven already disclosed, seek a targeted, Court-approved subpoena for those specific links; and finally, in the meantime, permit Dropbox to produce the contents of the seven identified links already disclosed by Plaintiffs, including revival of the two inactive links, pursuant to a Court-approved protocol.

Ford argues limiting the subpoena to the identified links would force it to rely solely on Cheeley Law Group's own account of the misconduct. But that concern will be wholly addressed by the forensic email review, pending protocol negotiations, which will be conducted by a consultant under court supervision and is not limited by Cheeley Law Group's own searching. If that review reveals additional Dropbox activity not yet identified, Ford will have discrete, identified emails and links to investigate. What Ford does not have is the right to skip to an unrestricted production before that process concludes.

## Conclusion

For the foregoing reasons, and those set forth in Plaintiffs' Motion to Quash, Plaintiffs respectfully request this Court quash Ford's subpoena to non-party Dropbox Online, Inc. In the alternative, Plaintiffs request the Court modify the subpoena to limit production to: (a) the contents of the seven Dropbox links identified in Plaintiffs' February 18, 2026 disclosure, including revival of the two inactive links; and (b) any additional links specifically identified through the pending forensic email review—all pursuant to a court-approved protocol protecting privilege and confidentiality. Plaintiffs further request that any such protocol be established by the Court, not unilaterally by Ford's retained consultant.

Respectfully submitted this 2nd day of June 2026.

7

**SLAVIK LAW FIRM, LLC**


*/s/ Don Slavik*
Donald H. Slavik
CO Bar No. 33860
*Admitted Pro Hac Vice*
2834 Blackhawk Court
Steamboat Springs, CO 80487-2018
Tel.: (970) 457-1011
Fax: (267) 878-7697
dslavik@slavik.us

**CHEELEY LAW GROUP, LLC**

*/s/ Andrew Craft*
Robert D. Cheeley
GA Bar No. 122727
Andrew Craft
GA Bar No. 844764
McKenzie R. Nadel
GA Bar No. 251909
Gabrielle W. Waldrop
GA Bar No. 449376
2500 Old Milton Parkway
Suite 200
Alpharetta, GA 30009
Tel.: (770) 814-7001
Fax: (678) 559-0273
bob@cheeleylawgroup.com
mckenzie@cheeleylawgroup.com
andrew@cheeleylawgroup.com
gabby@cheeleylawgroup.com

*Attorneys for Plaintiffs*

8

## CERTIFICATE OF SERVICE

I hereby certify that today I caused to be served the foregoing via email to the following counsel of record:

Michael R. Boorman
Paul E. Petersen, III
WATSON SPENCE, LLP
Bank of America Plaza
600 Peachtree Street NE
Suite 2320
Atlanta, GA 30308
mboorman@watsonspence.com
ppetersen@watsonspence.com

*Attorneys for Defendant*
*Ford Motor Company*

Michael G. Horner
REYNOLDS, HORNE & SURVANT
PO Box 26610
Macon, GA 31221-6610
firm@reynoldsinjurylaw.com

*Attorney for Intervenor*

Scott A. Richman
Tiffany M. Gutierrez
MCDONALD TOOLE WIGGINS, PA
111 N. Magnolia Avenue
Suite 1200
Orlando, FL 32801
srichman@mtwlegal.com
tward@mtwlegal.com
WootenvFord@mtwlegal.com

*Attorney for Defendant*
*Ford Motor Company*

/s/ Andrew Craft
Andrew T. Craft

9