**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| BEVERLEY WOOTEN, as Surviving Spouse of BARRY WOOTEN and BARRY WAYNE WOOTEN, as Administrators of the ESTATE OF BARRY WYATT WOOTEN, Deceased,<br><br>Plaintiffs,<br>v.<br>FORD MOTOR COMPANY,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 5:23-cv-00346 |

**DEFENDANT FORD MOTOR COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL**

Mr. Wooten and Cheeley Law—the subjects of this inquiry and the very ones who have necessitated it—now ask the Court to end it on their assurance that there is nothing more to find.[1] (Docs. 360, p. 16 and 363, p. 1). Ford cannot accept those assurances, and the Court should not either. Virtually every prior assurance that counsel had given the Court regarding the full picture of their Court Order Violations has proven false, and their responses now further contradict each other about who knew what, and when. If counsel have their way, the full scope of the harm to Ford and this Court will remain unknown.

The Court should grant the motion as narrowed below. What remains is two-fold: 1) production of the communications most likely to reveal additional violations—the AIEG listserv emails, communications with the media and outside groups, and emails to recipients whose "expert" or "staff" status is unconfirmed—and 2) the Written Assurances and disclosure list the

[1] This reply addresses only the two response briefs to Ford's Motion to Compel (Docs. 360 and 363). Ford will respond in opposition separately to Mr. Wooten's latest unsupported motions to claw back (Doc. 361) and to terminate (Doc. 362).

Protective Order has always required. At a minimum, the Court should order those materials submitted for *in camera* or third-party review, which neither response opposes. (Doc. 363, pp. 2, 11; Doc. 360, pp. 2, 15).

## ARGUMENT

Both responses wrongly claim Ford seeks every email the Protocol swept up. That has never been the case. And to narrow the dispute further, Ford withdraws its request for two categories of materials.

- <u>Sanctions-defense legal advice and representation.</u> Communications in which counsel sought legal advice or possible representation in defending the sanctions proceedings (e.g., emails to Frank Beltran and Andrew Lemmon), sent and received after Ford's August 18, 2025 sanctions motion.
- <u>Retained ethics experts for sanctions defense.</u> Communications regarding the potential retention of Professor Patrick Longan as a consulting ethics expert and emails to Professor Matt Hall sent after August 18, 2025.[2]

Attached as Exhibit 1 is a log of emails and attachments that remain ripe for compelled production.

*However*, Ford maintains its demand that Plaintiffs' counsel produce the Written Assurance affidavits and disclosure list required by Paragraph 8 of the Protective Order (Doc. 47) for all recipients of confidential documents specifically including those bulleted above after Ford's August 18, 2025 sanctions motion. Paragraph 8 is not optional[3], and neither response resists this relief on the merits. Cheeley Law agreed at the September 29, 2026 conference to create and produce the disclosure list but has yet to do so. Mr. Wooten "does not oppose an order directing the firm that holds those records to comply with Paragraph 8." (Doc. 360, p. 15). Ford asks that they be produced within ten days.

---

[2] Ford already withdrew its request for communications sent to litigation vendors and court reporters in its Supplement to its Motion to Compel (Doc. 359) but reiterates the withdrawal here.

[3] "**Before** receiving access to any Protected Document...," every person who receives Protected Documents "shall execute a 'Written Assurance,'" and "the receiving party shall retain each such executed Written Assurance and shall keep a list identifying all persons" and all Protected Documents disclosed to them. (Doc. 47 ¶ 8). (emphasis added).

**I. Counsel's prior assurances have proven false time and again, and this Court should not rely on them now.**

Plaintiffs' central pushback to any further production is that counsel "reviewed each of the requested additional emails and assured Ford" that the emails contain no improper disclosures, so "the inquiry . . . should cease." (Doc. 363, p. 5). Mr. Wooten likewise asks the Court to accept his descriptions of the withheld entries. (Doc. 360, pp. 9–12). But counsel's assurances are exactly what this investigation has repeatedly disproved.

Mr. Wooten swore under oath that the unredacted NHTSA documents went only to three named experts and "not . . . to anyone outside their Firm." (Doc. 196-1). That was not true. Counsel told the Court at the October 2, 2025 hearing, "we did not share them outside this case." (Doc. 213, 27:15-19). That was false. Cheeley Law told the Court on February 13, 2026 there were two improper disclosures; within five days, there were at least eight. (Doc. 358, p. 3). At the April 1, 2026 hearing, Cheeley Law denied any knowledge of emails sending privileged and confidential documents to the media. (Doc. 351, 9:4-7 and 31:14-17). Emails proved that to be untrue. (Doc. 358, pp. 5 and 7). At the same hearing, both counsel affirmatively told this Court, "there's been no other sharing than what the Cheeley Firm has located." (*Id.* 43:8-11). They were not. And on March 16, 2026, Cheeley Law assured Ford that its review of Mr. Wooten's and Mr. Ahlberg's emails was complete and revealed no further violations; the forensic search– even incomplete as it remains–has already turned up six more. (Doc. 358, pp. 3–7).

Worse, former and current counsel now contradict each other. Mr. Wooten swears that, before the January 14, 2026 transmission to Garrett Rogers, he told Mr. Cheeley personally that he intended to share the materials, and Mr. Cheeley did not object. (Doc. 360-1, ¶ 10). He also points to an August 4, 2025 email in which Mr. Ahlberg told a reporter that Mr. Cheeley was initially "fine with getting the information out there." (Doc. 360, p. 8 (citing NHW0002914)). Yet

at the April 1 hearing, Cheeley Law told this Court it had no information that materials from this case had been shared with other lawyers litigating against Ford or the media. (Doc. 351, 9:4-7, 31:14-17, 42:6-10, 43:8-11). Mr. Wooten says he redacted the Dostie pages before they went to Mr. Rogers; Cheeley Law says the sent copy it found was unredacted. (Doc. 360, p. 7; Doc. 351, 42:22–43:5). Both accounts cannot be true, and only the documents can say which is.

This is the "deliberate cover up" and false or misleading discovery conduct that the Eleventh Circuit confronted in *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1540 (11th Cir. 1993), where the Court affirmed the most severe sanctions against a products-liability defendant and its counsel for exactly this pattern. *Id.* at 1545–1546. A privilege claim "cannot be sustained purely on the basis of unsworn information in a privilege log," because the party asserting privilege "bears the burden of proving the existence of the privilege." *United States v. Davita, Inc.*, 301 F.R.D. 676, 684 and 680 (N.D. Ga. 2014). Cheeley Law says it "produced affidavits verifying" its assurances (Doc. 363, p. 5), but no Cheeley affidavit appears anywhere in the record. (*See* Doc. 363 *generally*). Mr. Wooten, for his part, offers yet *another* declaration. (Doc. 360-1). Given counsel's record, more say-so—sworn or not—cannot carry that burden.

Counsel's characterizations of individual emails fare no better. Mr. Wooten describes his September 2-3, 2025 emails to/from the AIEG listserv regarding "Question about Failed Redactions" as a bare "legal question with no documents attached." (Doc. 360, p. 10). However, the absence of an attachment does not mean the communication is harmless. First, a listserv of roughly 1,000 members is not a "Qualified Person" entitled to receive protected documents. (Doc. 47). Second, the thread began on September 2, 2025—the same day the Court entered the Sanctions and Embargo Order (Doc. 195)—and the thread's subject is at the center of the NHTSA embargo violation. Confidential and embargoed information can be conveyed in the body of an email as

readily as in an attachment.[4] And a single "question" does not ordinarily run more than one hundred Bates-numbered pages; this thread does. (Doc. 360, p. 10 (NHW0003076–3149; NHW0003197–3241)). Only production or review can confirm what was shared.

## II. The Dostie transcript is confidential; Mr. Wooten's fourteen-day argument fails.

Mr. Wooten next argues that the May 30, 2024 Dostie deposition is "not confidential," because Ford's written designation came more than fourteen business days after the transcript was certified. (Doc. 360, pp. 2 and 5). That argument fails three times over.

First, the transcript was designated confidential on the deposition record, which Paragraph 10 makes an independent and sufficient method. Paragraph 10 provides, in relevant part:

> Designation of the portion of the transcript (including exhibits) which contains references to Protected Documents or information shall be made (i) by a statement to such effect on the record during the proceeding in which the testimony is received, **or** (ii) by written notice served on counsel of record in this Litigation within fourteen (14) business days after the receipt of the draft or final transcript (whichever is received earlier) of such proceeding. . . . All portions of transcripts not designed as Confidential within the time frame provided herein shall be deemed not confidential.

(Doc. 47, ¶ 10). The two methods for designation are separate and discrete.

At the outset of the deposition, Ford's counsel stated on the record that "this deposition's going to be taken designated confidential pursuant to the protective order entered in this case," and that Ford would "comply with the rights of that protective order . . . in designating the confidential portions." (Doc. 360-4, 9:21–10:3). That is a confidential designation "by a statement to such effect on the record" under Paragraph 10(i). Mr. Wooten's reading writes method (i) out of the Order to escape another Court Order Violation on a technicality.

---

[4] Ford has already shown this Court *at least* seven emails from Mr. Wooten in which he provides confidential and/or embargoed documents to unqualified individuals via Dropbox links imbedded in an email, which require no attachments to an email. [Doc. 348, pp. 16, 35, 38, 43, 56, 63, 73].

Second, Mr. Wooten's own conduct refutes his new argument. He never treated the deposition as a public document until this filing—after his conduct was discovered. When Mr. Wooten sent the transcript to other plaintiffs' lawyers and AIEG on December 3, 2024, he included Ford's designations and asked that the deposition be kept confidential except for use by lawyers suing Ford. (Doc. 360, p. 7; Doc. 358, p. 7). And before it went to Mr. Rogers in January 2026, Mr. Wooten says, he redacted the designated pages. (*Id.*). Having treated the transcript as confidential at every turn, Mr. Wooten cannot now call that treatment superfluous.

Third, Mr. Wooten's excuse that the October 15, 2024 written designation was pursuant to the "sharing" portion of the Protective Order fares no better. Paragraph 6(f) permits sharing of such materials only with "attorneys representing Plaintiff(s) . . . in other cases pending against Ford involving specifically a 2015-2023 F-150 with claims that the ADAS" was defective. (Doc. 47, ¶ 6). Mr. Rogers' case adverse to Ford did *not* involve a 2015-2023 F-150, so he was not entitled to receive the confidential deposition. Nor is a 1,000-member listserv. And Paragraph 9 bars posting Protected Documents "on any website or internet accessible document repository," whatever the designation. (Doc. 47, ¶ 9).

## III. Counsel have forfeited any protection over the remaining communications.

### A. The crime-fraud exception applies.

Privilege disappears where privileged communications were "made in furtherance of" or "closely related to" a crime, fraud, or other misconduct fundamentally inconsistent with the basic premises of the adversary system. *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1298 (S.D. Fla. 2000). The Eleventh Circuit's two-part test requires (1) a prima facie showing of criminal or fraudulent conduct and (2) a showing that the assistance was "obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *In re Grand Jury Inv.*, 842 F.2d

1223, 1226 (11th Cir. 1987). And the test equally governs civil discovery disputes.[5] *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1416 (11th Cir. 1994); *Gutter*, 124 F. Supp. 2d at 1305.

There is prima facie, if not overwhelming, evidence of criminal or fraudulent conduct. This first prong is "satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed," and that showing need only have "some foundation in fact." *In re Grand Jury Investigation*, 842 F.2d at 1226–1227. Fourteen documented Court Order Violations (Doc. 358, pp. 5-7) and a series of false and incomplete sworn accounts are not "mere allegations"; they are facts of record. Furthermore, Cheeley Law Group conceded some of Mr. Wooten's actions are Court Order Violations (Doc. 338), and the record reflects Cheeley Law Group participated in, or at least approved, some of the improper disclosures to media and attorneys. (Doc. 358, pp. 5 and 7).

Contrary to Plaintiffs' assertion (Doc. 363, p. 7), counsel need not have committed a "crime." The Eleventh Circuit has squarely held that "an attorney may not exploit work product protection when she engages in illegal conduct *or a fraud upon the court* even if her client is innocent." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1337–1338 (11th Cir. 2018). *Gutter's* facts ***are*** Ford's facts: a party that "intentionally violated" court orders and made "false and misleading representations to the Court," which the court held "constitute evidence of an ongoing fraudulent scheme . . . to thwart discovery" "sufficient to show a prima facie case," voiding both the attorney-client and work-product protections. *Id.* at 1300–01, 1316–17.

Nor is Plaintiffs' premise correct that a protective-order violation can never be criminal. Willful disobedience of a lawful court order is punishable as criminal contempt, 18 U.S.C. § 401(3), and a knowingly false material declaration under penalty of perjury in a court proceeding

---

[5] Plaintiffs' insistence on the common-law elements of fraud, including detrimental reliance (Doc. 363, p. 7), misreads the exception, which is not a tort cause of action.

is a federal offense, 18 U.S.C. § 1623(a). Ford asks for no such finding now; the point is that this conduct is squarely within the first prong. And while Plaintiffs invoke *Drummond* for opinion work product's "nearly absolute" protection (Doc. 363, pp. 6–7), *Drummond* holds that an attorney's fraud upon the court overcomes it.[6] 885 F.3d at 1337–38.

The at-issue communications are related to the crime or fraud. The relatedness requirement "should not be interpreted restrictively," precisely because the party seeking discovery "does not know precisely what the material will reveal or how useful it will be." *In re Grand Jury Investigation*, 842 F.2d 1223, 1227 (11th Cir. 1987). Mr. Wooten says the search terms swept in everything with his name, so nothing is "closely related." (Doc. 360, pp. 1 and 9). But Ford does not seek every keyword hit. It seeks only entries whose logged subject, recipients, sender, or attachments suggest further violations. (Exhibit 1). *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d at 1338, requires a document-specific finding—exactly what *in camera* review provides, and exactly what both responses now consent to.

The threshold for that *in camera* review is lower still: only "a factual basis adequate to support a good faith belief by a reasonable person" that review may reveal evidence establishing the exception. *United States v. Zolin*, 491 U.S. 554, 572 (1989). Fourteen documented violations clear that bar many times over.

**B. Counsel put the scope of their disclosures at issue.**

The attorney-client privilege "was intended as a shield, not a sword," and is waived when a party "injects into the case an issue that in fairness requires an examination of otherwise protected

---

[6] Plaintiffs seize on the phrase that the exception reaches communications in furtherance of an "ongoing or future" crime or fraud. (Doc. 363, pp. 9-10). But that language offers no shelter. The misconduct here is ongoing. The violations themselves continued months after the Embargo Order: Mr. Wooten directed the unredacted NHTSA documents to Mr. Rogers on January 14, 2026. (Doc. 358, p. 6). And the misstatements continued into February and April 2026. That is the "ongoing fraudulent scheme" *Gutter* recognized. 124 F. Supp. 2d at 1300–01.

communications." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417-1419 (11th Cir. 1994). By sworn declaration, statements in open court, and filings, counsel have affirmatively misrepresented the scope of their improper NHTSA and confidential document disclosures. Counsel's injection of the purported scope of the disclosures into the case waived the attorney-client privilege over communications on that subject. *Id.* at 1418–1419. Opinion work product is reached through the crime-fraud exception, not waiver. *Id.* at 1422–23.

**C. Counsel's disclosures to third parties waived protection.**

Independently, counsel forfeited protection over materials they sent outside the attorney-client relationship. "[V]oluntary disclosure of privileged attorney-client communication constitutes waiver of the privilege as to all other such communications on the same subject matter." *Cheeves v. S. Clays, Inc.*, 128 F.R.D. 128, 129 (M.D. Ga. 1989). Work-product protection is waived on the same terms when materials are disclosed "in a manner which is either inconsistent with maintaining secrecy against opponents or which 'substantially increases the opportunity for potential adversaries to obtain the information.'" *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 270 F. Supp. 3d 1332, 1338 (S.D. Fla. 2017). Counsel sent embargoed NHTSA documents and confidential documents to a Wall Street Journal reporter, a journalist formerly with the New York Times, firms adverse to Ford, and others. (Doc. 358). They cannot now reassert attorney-client or work product privilege selectively to shield the Court and Ford from investigating the Court Order Violations.[7]

[7] The common-interest doctrine Plaintiffs invoke does not save these disclosures. (Doc. 363, p. 6). It prevents waiver only where "the parties have a shared interest in actual or potential litigation against a common adversary, and the nature of the common interest is legal, and not solely commercial." *Gamache v. Hogue*, 595 F. Supp. 3d 1344, 1352 (M.D. Ga. 2022). Neither a journalist nor a 1,000-member listserv shares such an interest. And a question posted to a listserv of other lawyers is not a client communication at all, so no attorney-client privilege attaches to it in the first place.

## IV. Ford's request for expenses should be granted.

Plaintiffs and Mr. Wooten resist expenses on the ground that their withholding was "substantially justified." It was not. A privilege position resting on the word of counsel whose representations have been repeatedly disproved is not substantially justified. The Court's inherent power reaches "bad faith by . . . hampering enforcement of a court order" and permits an award of fees in these circumstances. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991); *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545–1546 (11th Cir. 1993). Ford renews its request under Rule 37(a)(5) for the reasonable expenses, including attorneys' fees, it has incurred. The responses confirm the motion was necessary: only after Ford moved did both counsel consent to *in camera* review and Mr. Wooten submit the declaration that *Carnes* requires.

## CONCLUSION

Ford's request remains production of the remaining emails identified in its Supplement (Doc. 359-1) as narrowed further here by Exhibit 1, along with all Written Assurances and the disclosure list required by the Protective Order. Each prior round of email review has enlarged, not closed, the universe of violations; counsel's blanked assurances—previously proven false—cannot be the last word.

Alternatively, as both responses agree, the Court should review the withheld materials *in camera*. If the Court prefers not to conduct that review in chambers, Ford requests appointment of a neutral special master under Rule 53, at the expense of Plaintiffs' counsel, whose conduct necessitated the review. ArcherHall, the firm who collected and organized these emails under the parties' negotiated Protocol, is already in place and can review the remaining communications efficiently for privilege and additional violations.[8] Either way, Ford asks that the withheld

[8] Mr. Wooten's contention that ArcherHall is not a "neutral reviewer," because Ford has paid its invoices to date, fails to consider that neither Cheeley Law Group nor Mr. Wooten agreed to share in the costs of the forensic examination

materials be submitted within ten days, together with unredacted privilege logs and the Paragraph 8 Written Assurances and disclosure list.

Respectfully submitted this the 30th of October 2026.

*/s/ Paul E. Petersen*
Michael R. Boorman
Georgia Bar No. 067798
Paul E. Petersen, III
Georgia Bar No. 791066
WATSON SPENCE, LLP
Bank of America Plaza
600 Peachtree Street NE
Suite 2320
Atlanta, GA 30308
Telephone: 229-436-1545
mboorman@watsonspence.com
ppetersen@watsonspence.com

Scott A. Richman
*Admitted pro hac vice*
Tiffany M. Gutierrez
*Admitted pro hac vice*
MCDONALD TOOLE RICHMAN & CORRENTI, P.A.
srichman@mtrclegal.com
tgutierrez@mtrclegal.com

Michael Carey
*Admitted pro hac vice*
DYKEMA
mcarey@dykema.com

*Attorneys for Defendant*
*Ford Motor Company*

borne of Plaintiffs' wrongdoing and despite Ford's request for such sharing at the outset. Furthermore, Ford anticipates seeking recovery of the costs paid to ArcherHall at the appropriate time.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Robert D. Cheeley
Gabrielle W. Waldrop
Andrew T. Craft
McKenzie R. Nadel
CHEELEY LAW GROUP, LLC
2500 Old Milton Parkway, Suite 200
Alpharetta, Georgia 30009
bob@cheeleylawgroup.com
gabby@cheeleylawgroup.com
andrew@cheeleylawgroup.com
mckenzie@cheeleylawgroup.com
*Counsel for Plaintiffs*

Nicholas H. Wooten
Nick Wooten, LLC
nick@nickwooten.com
*Counsel for Plaintiffs*

Donald H. Slavik
Slavik Law Firm, LLC
3001 South Lincoln Avenue
Suite C-1
Steamboat Springs, Colorado 80487
dslavik@slavik.us
*Counsel for Plaintiffs*

This the 30th of October, 2026.

*/s/ Paul E. Petersen, III*
Michael R. Boorman
Georgia Bar No. 067798
Paul E. Petersen, III
Georgia Bar No. 791066