**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| BEVERLEY WOOTEN, as Surviving Spouse of BARRY WOOTEN and BARRY WAYNE WOOTEN, as Administrators of the ESTATE OF BARRY WYATT WOOTEN, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 5:23-cv-00346 |

**DEFENDANT FORD MOTOR COMPANY'S RESPONSE TO NICHOLAS H. WOOTEN'S MOTION TO TERMINATE INVESTIGATION**

Mr. Wooten created this controversy. Now, with the investigation into his Court Order Violations still uncovering new ones, he asks the Court to shut it down. Ford wants this matter resolved as much as anyone—but resolved completely, and not on a timeline dictated by the lawyer under investigation.

More remarkable still, Mr. Wooten asks the Court to bless the very conduct it sanctioned: his stripping of Ford's redactions from the NHTSA documents and his misrepresentations to the Court about them. A ruling freeing Mr. Wooten to use and disseminate the improperly unredacted NHTSA documents outside this litigation would reward him for his already-sanctioned misconduct and invite still wider dissemination of Ford's confidential information. If the Court was concerned that its prior rulings were "[a]rguably . . . not sanctions at all," (Doc. 337 at 12), freeing Mr. Wooten from the embargo would be nothing short of a boon to a violator of this Court's orders.

Neither his sought termination nor the lifting of the NHTSA document embargo nor any of Mr. Wooten's various other requests for judicial relief from his own misdeeds should be granted. Due to Mr. Wooten's misconduct, Ford's confidential business information has been exposed far and wide, and Ford has expended significant time, effort, and resources to discern the scope and correct what it can of the harm from it. This motion should be denied, and Mr. Wooten should have to continue to answer for his Court Order Violations on a complete record.

## BACKGROUND

A majority of the relevant history is set out in Ford's Motion to Compel (Doc. 358) and Reply (Doc. 364), along with the Court's prior orders, (e.g., Docs. 337, 357), but a few items bear repeating.

The NHTSA documents are Ford's confidential business information. Ford submitted them to the National Highway Traffic Safety Administration ("NHTSA") in redacted form, as confidential business information governed by 49 C.F.R. Part 512, and NHTSA kept only the redacted version on its public docket and never released the concealed information to anyone. Mr. Wooten then downloaded the redacted versions, manually removed hundreds of pages of Ford's redactions, filed many of the unredacted documents on the public docket, and told this Court they were all "publicly available," all while concealing what he had done. (Doc. 337, Order, pp. 2-5).

After learning of Mr. Wooten's actions, Ford immediately informed this Court and sought the Court's help to understand the full scope of the violations and distribution, so that Ford could notify NHTSA of the breach and work closely with them to remove the susceptibility from public domain[1] and pursue all other available avenues to protect its confidential business information

[1] NHTSA's own Terms of Use prohibit the unauthorized modification of documents on its site. (Doc. 195, p. 5). And once Ford discovered the alteration and alerted NHTSA, NHTSA removed the documents from the public domain. (*Id.* at 6). NHTSA then worked with Ford to investigate any other vulnerabilities.

now shared in other forums—now known to include to national journalists. In response, this Court ordered Plaintiffs to file a disclosure identifying two whom and what NHTSA documents they sent (to allow Ford some late opportunity to try to mitigate the damage) (Doc. 195), to "immediately embargo the NHTSA documents," barred Plaintiffs' counsel from making use of the redacted NHTSA documents in this case, and barred them from sharing those documents with their experts. (Doc. 337, pp. 5–6). The Court found that Mr. Wooten "chose to maneuver Ford into waiving its objection and the Court into 'permitting' the use of the documents," and that his "judgment is clouded." (*Id.* at 13-14). As the Court put it, "All along the way in the renewed action, Plaintiffs' counsel have accused Ford of misconduct . . . Ford transgressed only once, and the Court afforded the Plaintiffs a remedy. The conduct of Plaintiffs' counsel has been a different story." (*Id.* at 2). Plaintiffs have never sought any relief, clarification, or reconsideration of this Order.

What followed revealed that Mr. Wooten's deception with the NHTSA documents was only part of the story. After Mr. Wooten resigned from Cheeley Law Group in February 2026, his former co-counsel disclosed that Mr. Wooten had violated the Protective Order and this Court's Orders by disseminating Ford's confidential business information to journalists, reporters, and attorney listservs.[2] Subsequently, on April 1, 2026, the Court authorized a forensic email examination that uncovered additional Sanctions Order and Protective Order violations and that Plaintiffs' counsel's prior assurances to the Court had repeatedly proved false. Those Court Order Violations, and Ford completing its investigation, are the subject of Ford's pending Motion to Compel (Docs. 358, 359) and Reply (Doc. 364), which Ford incorporates by reference.

[2] Mr. Wooten brazenly opens his Motion bragging that Ford could not discover his wrongdoing on its own – while knowing it was fully hidden from Ford's view.

## ARGUMENT

Mr. Wooten's motion should be denied in its entirety. Mr. Wooten, appearing "on his own behalf" (not as counsel for any party), now asks the Court to accommodate his personal timeline for its inquiry and seeks a Court order condoning his use of his ill-gotten gains. Most of what he seeks lies beyond anything he has standing to request, and all of it fails not only on the merits but also on the ethics of the legal profession.

### I. Mr. Wooten lacks standing to obtain most of the relief he requests.

Before reaching the merits, the Court should find Mr. Wooten is not entitled to most of what his motion requests, because he has no standing to request it. Mr. Wooten is neither a party nor counsel to any party. Rather, he is Plaintiffs' former attorney whose past conduct is under scrutiny.

Courts have repeatedly held that a party's lawyer—especially a party's former lawyer—is neither a party nor a legal representative entitled to invoke the court's machinery in his own name. The Fifth Circuit held that the phrase "legal representative" "does not include counsel within the context of the attorney-client relationship," and "certainly should not extend to a party's former counsel." *See Matter of El Paso Refinery, LP*, 37 F.3d 230, 234 (5th Cir. 1994). And a New York court denied a withdrawn attorney, though personally named in the court's order, standing to seek its modification, because the rule "makes no provision for a motion to be brought by one in [his] position." *Mobay Chem. Co. v. Hudson Foam Plastics Corp.*, 277 F. Supp. 413, 418 (S.D.N.Y. 1967). Mr. Wooten's personal grievances about the investigation into his Court Order Violations do not make him a party to this case or entitle him to seek relief from this Court.

The lack of Mr. Wooten's standing is most problematic for the affirmative, advisory relief Mr. Wooten seeks, including the requested declaration that he may use the NHTSA documents

outside this case. "Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power," and a ruling whose only effect would be to persuade actors not before the court runs headlong into "Article III's strict prohibition on issuing advisory opinions." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). The Eleventh Circuit enforced both limits by finding, "In the absence of standing, a court is not free to opine in an advisory capacity," and the ripeness doctrine "prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006). Mr. Wooten's request for a decree that does no more than announce that some unspecified future use of the documents is permissible is the kind of abstract, unenforceable pronouncement the Eleventh Circuit forbids. *Id.* at 1209.

Mr. Wooten's invocation of Civil Rule 26(c) does not help him. That Rule authorizes "[a] party or any person from whom discovery is sought" to move for a protective order. Fed. R. Civ. P. 26(c)(1). By its plain terms, that provision confers standing in only two conditions—(1) a party, or a non-party (2) from whom discovery is sought—and courts routinely decline the "invitation" to "misread the rule to create a third circumstance" permitting someone from whom discovery is not sought to block it. *KeyBank Nat'l Ass'n v. Neumann Dermatology LLC*, No. CV-21-00133-PHX-JJT, 2022 WL 11861411, at *3 (D. Ariz. Jan. 3, 2022). At most, Mr. Wooten is "a person from whom discovery is sought" as to the entries on his own privilege log. That entitles him to be heard on those entries—and he has been, in his opposition to Ford's Motion to Compel. (Doc. 360). It does not entitle him to an order ending the Court's inquiry, dictating the content of Ford's

future filings, or declaring rights in documents the Court has embargoed.[3] A movant's "general desire to thwart disclosure of information" held by others "is simply not an interest sufficient to create standing," and a litigant may not "circumvent the well-established standing requirements . . . simply by styling what is effectively a motion to quash as a motion for a protective order." *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 387 (S.D.N.Y. 2018).

Mr. Wooten cannot use Rule 26(c) or the Court's inherent authority as a vehicle to terminate an inquiry into his conduct or to obtain an order blessing his future use of Ford's documents.

## II. The Court should refuse to bless Mr. Wooten's continued exploitation of the NHTSA documents.

Undeterred by this Court's prior orders, Mr. Wooten now asks that the Court "confirm" that its restriction on the NHTSA documents "in no way restricts the use or dissemination of the NHTSA documents outside of this litigation." (Doc. 362 at 5). He justifies this request by, incredibly, blaming the Court for Mr. Wooten's violation of the NHTSA Embargo Order, because the Court's Order (Doc. 195) did not "clearly bar sharing publicly posted" NHTSA Documents (Doc. 362 at 6) and failed to "define 'embargo'" in the text of the Order. (*Id.*) Hairsplitting aside, this Court's endorsement of his continued exploitation of documents he obtained only through misconduct—and then shared in violation of this Court's unambiguous Order—should be rejected out of hand. In all events, a litigant subject to a court order may not "manufacture ambiguity" to escape it; courts "have long been reluctant to allow a party to evade" an order "by claiming the order they violated was ambiguous," particularly where the Court has since clarified its meaning. *In re Vital Pharm.*, No. 23-01051-PDR, 2023 WL 3081322, at *5 (Bankr. S.D. Fla. Apr. 25, 2023).

[3] To the extent Ford's requests seek production from his former firm, the privilege and the documents belong to Plaintiffs, not to him.

Mr. Wooten's ambiguity argument also fails on plain text. An "embargo" is an order prohibiting the release or dissemination of something. And the same Order required Plaintiffs to identify everyone to whom the documents had already been disseminated (Doc. 195)—a directive that makes sense only if further dissemination was forbidden.

*a. Mr. Wooten should not benefit from his own wrongdoing.*

Mr. Wooten seeks judicial imprimatur for future use of the fruits of his misconduct. That is wholly inequitable. The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Equity requires that the movant "acted fairly and without fraud or deceit as to the controversy in issue." *Id.* at 815. Where, as here, the public interest is implicated, that principle "assumes even wider and more significant proportions" to "not only prevent a wrongdoer from enjoying the fruits of his transgression but [also] avert an injury to the public." *Id.* Mr. Wooten unredacted NHTSA's documents, disseminated them in violation of the Court's orders, and concealed what he had done. He does not come to this Court with clean hands, and equity should not reward him for his repeated Court Order Violations and false representations.

The Court's inherent power points the same way. That power permits a court to act when "fraud has been practiced upon it, or . . . the very temple of justice has been defiled," and when a party "shows bad faith by . . . hampering enforcement of a court order"; it "reaches a court's inherent power to police itself." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). A court confronted with documents wrongfully obtained and then shared in violation of the Court's own orders retains "the equitable power . . . to correct that which has been wrongfully done by virtue of its process," including the authority to bar their use. *In re Zyprexa Injunction*, 474 F. Supp. 2d

385, 422 (E.D.N.Y. 2007). Granting Mr. Wooten's requests would do the opposite by converting the Court's sanction into an affirmative authorization.

*b. Seattle Times does not help Mr. Wooten, because the NHTSA documents were not lawfully or independently obtained.*

Mr. Wooten leans heavily on *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), for the proposition that a protective order restrains only information gained through discovery and leaves him free to disseminate the information obtained elsewhere. (Doc. 362 at 5-7). But that is not what *Seattle Times* holds, and its reasoning cuts against him. The Court held that a protective order "prevents a party from disseminating only that information obtained through use of the discovery process," so that "the party may disseminate the identical information . . . as long as the information is gained through means independent of the court's processes." *Id.* at 34. The holding is expressly conditioned on a lawful, independent source. The restriction Mr. Wooten wants lifted is not a discovery protective order at all; it is the remedy the Court imposed for his misconduct after Ford requested the Court aid it in understanding the extent of Mr. Wooten's actions so that Ford could pursue all necessary channels to protect its confidential business information. Mr. Wooten lied to the Court in writing and at a hearing, stripped from Ford the opportunity to act on some of his violations closer in time to when they occurred, and now has fought full disclosure at every turn. (Docs. 195, 337). *Seattle Times* does not purport to limit that power, and nothing in it entitles a sanctioned lawyer to keep exploiting the documents that drew the sanction. Nor did Mr. Wooten obtain Ford's information from an independent, lawful source. It was concealed behind Ford's redactions, and he exposed it by stripping them, contrary to NHTSA's Terms of Use. (Doc. 195 at 5). The independent-source carve-out that *Seattle Times* recognizes does not reach information that was never lawfully public and was obtained only through misconduct.

Courts applying *Seattle Times* to documents acquired through misconduct have enjoined their continued dissemination. In the *Zyprexa* litigation, the court read *Seattle Times* to permit dissemination of "the identical information . . . as long as the information is gained through means independent of the court's processes," then enjoined dissemination precisely because the documents had been obtained through violation of the court's order rather than independently. *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 417 (E.D.N.Y. 2007). The court drew the clean-hands line directly, "Nor is this a case of a newspaper obtaining, with clean hands, documents. . ." *Id.* at 396. And it held that an injunction barring continued dissemination of such documents is content-neutral and not a prior restraint, because it "is justified not by reference to the content of the covered documents, but rather by their unlawful acquisition." *Id.* at 423. The same reasoning defeats Mr. Wooten's request here.

c. *The NHTSA Documents were never "publicly posted," and surreptitiously stripping Ford's redactions did not make them so.*

Even after this Court specifically reprimanded him for the same mischaracterization (Doc. 337), Mr. Wooten's motion continues to describe the unredacted NHTSA documents as "public records" or "publicly" posted. (Doc. 362 at 4 and 6). Ford's confidential business information was submitted to NHTSA under 49 C.F.R. § 512 and shielded by redactions. Manually removing the redactions did not transform concealed confidential business information into a public record. Mr. Wooten again invokes the Court's description of Ford's redactions as "amateurish." (Doc. 362 at 4). The fact a redaction could be defeated did not make defeating it permissible, particularly by an attorney bound by ethics obligations. NHTSA did not release this information; Mr. Wooten extracted it. That information remains "confidential" in the governing sense because it was "both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019).

NHTSA's own conduct—removing the altered documents from the public domain upon learning of Mr. Wooten's conduct—confirms the point. (Doc. 193 at 6).

*d. Granting the requested relief would perpetuate an ongoing wrong against the Court and Ford.*

Mr. Wooten does not seek an order confined to this litigation. He asks the Court to authorize unlimited and unspecified dissemination "outside of this litigation." (Doc. 362 at 5). The record shows where that leads—to reporters, to journalists, and to law firms litigating against Ford in other actions, the very conduct the forensic examination has been uncovering.[4] (Docs. 358, 364.) A court's inherent power exists to act when its process has been abused and to avoid becoming "the abettor of iniquity." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. at 814. The misconduct here is not a closed chapter. Mr. Wooten sent the de-redacted documents to another firm suing Ford months after the embargo, and he now asks for permission to keep going. That is precisely the kind of continuing abuse the Court's inherent authority exists to stop. *See Chambers v. NASCO, Inc.*, 501 U.S. at 50. Nor does the public-record framing Mr. Wooten presses supply any justification: neither the press nor "any other branch of our government[] are authorized to violate court orders," and even where a violator "believe[s] . . . that their ends justified their means, courts may not ignore such illegal conduct without dangerously attenuating their power to conduct necessary litigation effectively." *In re Zyprexa*, 474 F. Supp. 2d at 396-97. The appropriate response to documents obtained and circulated in violation of the Court's orders is to bar their use and require their return—not to bless still wider dissemination. *Id.* at 397.

[4] And Mr. Wooten is even still advertising his experience and knowledge of BlueCruise and touting "public reporting" on his professional website. https://www.nickwooten.com/practice/bluecruise - last visited 11/10/2026.

**III. The Court, not the offender, should control the timing and scope of inquiry.**

Mr. Wooten next asks the Court to declare Ford's investigation "complete," to bar further discovery absent leave, and to impose a fixed schedule on any future sanctions motion. (Doc. 362 at 1, 11). That is not how this works. The subject of an investigation does not get to declare it over. This Court has "the inherent authority to control the proceedings before [it]," including the authority to "conduct an independent investigation to determine whether it has been the victim of fraud." *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002). Indeed, when a sanctioned party pressed repeated protective-order and relevance objections to curtail an inquiry into its conduct, a similarly situated court recognized the maneuver for what it was, "merely another effort by Defendants to improperly control the scope of discovery." *Kipperman v. Onex Corp.*, 260 F.R.D. 682, 693 (N.D. Ga. 2009).

Ford shares the Court's and Mr. Wooten's stated interest in a prompt resolution so that this case can proceed to its merits. But Ford did not cause this investigation to be needed, is not the source of delay, and it has no incentive to prolong this matter. In fact it is the opposite. Ford is acting to ensure the proper protection of its confidential business information – Ford wants this issue fully investigated and then wrapped up as quickly as possible. The pace of this inquiry has been driven by the process itself and by Plaintiffs' and Mr. Wooten's own timeline: the forensic protocol was extensively negotiated after the April 1, 2026 conference, the third-party collection took months given the volume of material, and Plaintiffs' counsel reviewed and produced on their own schedule before withholding the materials now in dispute. Cheeley Law Group and Mr. Wooten repeatedly requested extensions for various parts of the process, which Ford permitted. Ford, for its part, moved promptly—filing its Motion to Compel, its Supplement, and its Reply in succession.

Mr. Wooten's secondary request for a protective order to bar, categorically, any further discovery into his communications fails as well. (Doc. 362 at 11). The movant bears the burden of showing good cause, meaning "a sound basis or legitimate need to limit discovery." *Sierra Equity Grp. v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369, 1371 (S.D. Fla. 2009). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *United States ex rel. Edler v. Escambia Cnty.*, 344 F.R.D. 345, n. 9 (N.D. Fla. 2023) (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). Mr. Wooten offers no such showing—only his assurance that there is nothing more to find, the same assurance the record has repeatedly disproved.

Blanket assertions of privilege do not defeat that authority. As detailed more fully in Ford's Motion to Compel and Reply (Docs. 358 and 364), the crime-fraud exception can pierce privilege and work-product protection where communications were "made in furtherance of" or "closely related to" a crime, fraud, or "other misconduct fundamentally inconsistent with the basic premises of the adversary system." *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1298 (S.D. Fla. 2000). The exception reaches an attorney's own misconduct: "an attorney may not exploit work product protection when she engages in illegal conduct or a fraud upon the court even if her client is innocent." *Drummond Co., Inc. v. Conrad & Scherer*, LLP, 885 F.3d 1324, 1337 (11th Cir. 2018). The Eleventh Circuit squarely rejected "a blanket rule," requiring instead a document-by-document assessment under the totality of the circumstances. *Id.* at 1338.

**IV. Mr. Wooten's tag-along request for corrections is also unwarranted.**

There is no need for a Court order to correct any of Ford's characterizations. If anything, it is Mr. Wooten's characterizations that are and have been proven inaccurate.

*First,* Mr. Wooten contends Ms. Dostie's transcript is "not confidential." (Doc. 362 at 8). As Ford has already explained, Mr. Wooten is wrong. (Doc. 364). Paragraph 10 of the Protective Order provides two independent methods of designation, the first of which is "a statement to such effect on the record during the proceeding." (Doc. 47 ¶ 10). Ford's counsel made exactly that statement at the outset of the Dostie deposition, designating the testimony confidential on the record. (Doc. 364). Mr. Wooten's own conduct confirms the transcript's confidential status: he transmitted it with Ford's designation attached and asked that it be kept confidential, and he says he redacted the designated pages before sending them elsewhere—treatment irreconcilable with his present claim that the designation was a nullity. (Doc. 364.) This is more fully briefed in Ford's Reply in Support of Motion to Compel (*Id.*), which Ford incorporates here.

*Second*, Mr. Wooten claims Ford's description of Wooten failing to supplement his email production is inaccurate—citing a letter he sent as the only evidence. (Doc. 362 at 10, citing Doc. 360-3). However, Mr. Wooten does not argue and the record is clear, there were no additional emails or attachments included in Mr. Wooten's letter. Instead, he refused to provide the requested supplementation, as Ford correctly stated.

The Court should not order Ford to recast an accurate record in the terms Mr. Wooten prefers simply to cater to his warped view of history.

## **CONCLUSION**

The motion should be denied in its entirety. As explained elsewhere, Ford requests that this Court order the withheld materials produced to Ford or submitted for *in camera* or special-master review, consistent with the relief sought in Ford's pending Motion to Compel. (Docs. 358 and 364). Ford also requests the Court order Mr. Wooten to pay Ford its reasonable expenses,

including attorneys' fees, incurred in responding to this frivolous motion. *See* 28 U.S.C. § 1927; *In re Wizenberg*, 602 B.R. 372 (Bankr. S.D. Fla. 2019), *aff'd*, 838 F. App'x 406 (11th Cir. 2020).

Respectfully requested this the 10th of November 2026.

*<u>/s/ Paul E. Petersen</u>*
Michael R. Boorman
Georgia Bar No. 067798
Paul E. Petersen, III
Georgia Bar No. 791066
WATSON SPENCE, LLP
Bank of America Plaza
600 Peachtree Street NE
Suite 2320
Atlanta, GA 30308
Telephone: 229-436-1545
mboorman@watsonspence.com
ppetersen@watsonspence.com

Scott A. Richman
*Admitted pro hac vice*
Tiffany M. Gutierrez
*Admitted pro hac vice*
MCDONALD TOOLE RICHMAN & CORRENTI, P.A.
srichman@mtrclegal.com
tgutierrez@mtrclegal.com

Michael Carey
*Admitted pro hac vice*
DYKEMA
mcarey@dykema.com

*Attorneys for Defendant*
*Ford Motor Company*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Robert D. Cheeley
Gabrielle Gravel
McKenzie R. Nadel
CHEELEY LAW GROUP, LLC
2500 Old Milton Parkway, Suite 200
Alpharetta, Georgia 30009
bob@cheeleylawgroup.com
ggravel@cheeleylawgroup.com
mckenzie@cheeleylawgroup.com
*Counsel for Plaintiffs*

Nicholas H. Wooten
Nick Wooten, LLC
nick@nickwooten.com
*Counsel for Plaintiffs*

Donald H. Slavik
Slavik Law Firm, LLC
3001 South Lincoln Avenue
Suite C-1
Steamboat Springs, Colorado 80487
dslavik@slavik.us
*Counsel for Plaintiffs*

This the 10th of November, 2026.

*/s/ Paul E. Petersen, III*
Michael R. Boorman
Georgia Bar No. 067798
Paul E. Petersen, III
Georgia Bar No. 791066