**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| BEVERLEY WOOTEN, as Surviving Spouse of BARRY WOOTEN and BARRY WAYNE WOOTEN, as Administrators of the ESTATE OF BARRY WYATT WOOTEN, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. 5:23-cv-00346 |

**DEFENDANT FORD MOTOR COMPANY'S RESPONSE TO NICHOLAS H. WOOTEN'S CLAW BACK MOTION**

Mr. Wooten is not entitled to a clawback *from Ford* of emails that he did not produce and which are the evidence of the very Court Order Violations this Court is investigating. He did not produce these emails, he is not the party entitled to claw them back, and the protection he claims for most of them was forfeited the moment he sent them to people outside this case. Ford obtained these communications from Cheeley Law and through the forensic examination this Court ordered to uncover Mr. Wooten's Court Order Violations. Ford's only use for them are in the forthcoming sanctions proceedings, not for the underlying case or elsewhere. Neither Fed. R. Evid. 502(d) nor Paragraph 18 of the Protective Order (Doc. 47) can resurrect work-product protection that Mr. Wooten forfeited by voluntarily sending his work product to third parties. The motion should be denied.[1]

[1] Ford does not oppose, however, returning the two emails with Mr. Lemmon, as Ford has already withdrawn any request for those materials in its Reply to its Motion to Compel. (Doc. 364).

**BACKGROUND**

Briefly, after Plaintiffs' Counsel's Court Order Violations became clear, this Court endorsed a forensic review of Cheeley Law Group's email servers to search for evidence of further violations. (*see* Doc. 358). Thereafter, both Cheeley Law and Mr. Wooten produced additional emails to Ford. (*Id.*). As Mr. Wooten's clawback motion concedes, all of the seventeen emails ("Identified Materials") he now seeks returned were produced by Cheeley Law Group. (Doc. 361 at 2–3).

Paragraph 18 of the Court's Protective Order states, in full:

> The parties may disclose and produce responsive documents to each other in this litigation and seek to do so without risking waiver of any attorney-client privilege, work product or other applicable privilege or protection. As such, the parties will adhere to the following procedures with regard to the production of privileged or protected material, should that occur:
>
> (a) The production of documents (including both paper documents and electronically stored information or "ESI") subject to protection by the attorney-client and/or work product doctrine or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection, **provided that *the producing party*** notifies the receiving party, in writing, of the production after its discovery of the same.
>
> (b) If the **producing party** notifies the receiving party after discovery that privileged materials (hereinafter referred to as the "Identified Materials") have been produced, the Identified Materials and all copies of those materials shall be returned to the producing party or destroyed or deleted, on request of the producing party. The producing party will provide a privilege log containing the information upon request or if required by the Federal Rules of Civil Procedure, and applicable case law to the receiving party at the time the producing party provides the receiving party notice of the Identified Materials. If the receiving party has any notes or other work product reflecting the contents of the Identified Materials, the receiving party will not review or use those materials unless a court later designates the Identified Materials as not privileged or protected.
>
> (c) The Identified Materials shall be deleted from any systems used to house the documents, including document review databases,

e-rooms and any other location that stores the documents. The receiving party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents have been designated by a court as not privileged or protected.

(d) The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents of them before the notice was made. The receiving party must take reasonable steps to retrieve the Identified Materials if the receiving party disclosed the Identified Materials before being notified.

(e) If any receiving party is in receipt of a document from a producing party which the receiving party has reason to believe is privileged, the receiving party shall in good faith take reasonable steps to promptly notify the producing party of the production of that document so that the producing party may make a determination of whether it wishes to have the documents returned or destroyed pursuant to this Order.

(f) The party returning the Identified Materials may move the Court for an order compelling production of some or all of the Identified Material returned or destroyed, but the basis for such motion may not be based on the fact or circumstances of the production.

(g) The disclosure of Identified Materials in this action is not a waiver of the attorney-client privilege, work product doctrine or any other asserted privilege in any other federal or state proceeding, pursuant to Rule 502(d) of the Federal Rules of Evidence.

(Doc. 47 ¶ 18) (emphases added).

Mr. Wooten now seeks to clawback seventeen emails he has lumped into five “Groups”. (Doc. 361).

- **Group A** – What Mr. Wooten characterizes as “consulting expert” emails, containing connected vehicle data designated confidential by the Protective Order, were sent to two outside individuals without first retaining them as consultants or requesting they sign the Protective Order. Mr. Choffnes refused to review—noting both the facial confidential nature of the documents and that he had not been retained.

- **Group B** – Email purportedly from Cam Alberg to Mr. Wooten that was produced by Cheeley Law.

- **Group C** – Mr. Wooten's consultation with counsel regarding sanctions defense. Ford does not oppose this request, returned the messages to Mr. Wooten, and has deleted them.
- **Group D –** Emails to Garrett Rodgers of the Tracey Firm—attorney bringing another case against Ford regarding a different truck model—containing Ford's confidential Rule 30(b)(6) deposition of Natalie Dostie.
- **Group E –** Emails to a 1,000 plus member plaintiffs' attorneys listserv, AIEG.

(*Id.* at 11-12).

Mr. Wooten expressly does not assert Plaintiffs' attorney-client privilege; he asserts his own work product (Groups A, B, D, E) and, as to Group C, his own privilege as a client.[2] (Doc. 361 at 2). Mr. Wooten's Identified Materials include emails he sent to Garrett Rogers, counsel for a plaintiff litigating a separate ADAS case against Ford in Texas (Group D), and emails sharing the Dostie transcript with the Attorneys Information Exchange Group ("AIEG") (Group E). (Doc. 361).

## ARGUMENT

### I. Mr. Wooten is not the producing party and cannot invoke Paragraph 18's clawback.

The Court's Protective Order gives the clawback right to the "producing party." (Doc. 47 ¶ 18). It is the producing party who must give notice of the production; the materials are returned or destroyed "on request of the producing party,"; and it is "[t]he party returning the Identified Materials" who "may move the Court." (*Id.*) Courts construing this exact structure hold that the

[2] "Group C" consists of two September 2025 emails between Mr. Wooten and Andrew Lemmon concerning Mr. Wooten's consultation about representation in the sanctions proceedings. (Doc. 361 at 8). Ford already withdrew any request to compel similar communications, expressly including the emails to Mr. Lemmon, in its Reply to Motion to Compel. (Doc. 364.) Consistent with that position, Ford does not oppose return of the Group C communications. As of the filing of this response, Ford has returned these emails to Mr. Wooten and deleted them from all systems, as required by the Protective Order. (Doc. 47).

clawback right belongs to the producer. Interpreting a materially identical consent order, the Northern District in *United Physician Grp., LLC v. Leche* read the right to demand return and the attendant procedure as running to "the producing party," with the receiving party's recourse being a later motion to compel. 742 F. Supp. 3d 1251, 1259 (N.D. Ga. 2024); *see also BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09 CIV. 9783 RWS, 2013 WL 2322678 (S.D.N.Y. May 21, 2013) (holding that references to the "producing party" and "the party returning such document" allocate the clawback right to the producer and the challenge right to the receiving party, who must first return or destroy the document and only then "apply to the Court for an order that such document is not protected").

Mr. Wooten is not the producing party. By his own account, Cheeley Law Group—Plaintiffs' current counsel—produced every one of the Identified Materials, and Mr. Wooten produced none of them. (Doc. 361 at 2–3). The only party entitled to invoke Paragraph 18 as to these documents is Cheeley Law Group, and it has not done so. Mr. Wooten cannot commandeer a mechanism the Order reserves to the producer to retrieve emails he did not produce.

Mr. Wooten's authorities only confirm the point. In *United Physician Group*, the producing party itself invoked the clawback, and the court enforced the bargain the parties had struck. 742 F. Supp. 3d at 1258–60. In *Brookfield*, as Mr. Wooten describes it, the privilege holder clawed back its own documents after its law firm produced them under subpoena. (Doc. 361 at 5). Here the roles are reversed: the clients' own counsel produced the documents, and a former lawyer who is no longer counsel to any party asks the Court to override that choice. No case Mr. Wooten cites lets a non-producing stranger to the production unwind it. Nor does the Scheduling Order help him. It invokes Rule 26(b)(5)(B) only where "a party inadvertently produces" privileged information (Doc. 19 § IV.D), and nothing here was inadvertent. Cheeley Law reviewed these

emails and produced them deliberately, some of them only after Ford's September 18, 2026 letter. (Doc. 361 at 2–3, Ex. A).

Mr. Wooten also slept on whatever rights he claims. Paragraph 18(a) requires notice "after [the] discovery" of a production. (Doc. 47 ¶ 18(a)). Ford filed the first Group A email and the Group D emails on the public docket (Docs. 348-7, 348-8), and both were discussed at the April 1, 2026 hearing, with Mr. Wooten present. (Doc. 351 at 12:1-14, 30:4-14). He served his first clawback notice five months later, on August 31, 2026. (Doc. 361 at 3). A party who sits silent while a document is filed and argued in open court cannot later demand that the Court pretend it was never seen.

## II. Neither Rule 502(d) nor the Protective Order provides the protections Mr. Wooten's Motion Seeks.

Mr. Wooten reads Paragraph 18(f) to bar motions to compel "based on the fact or circumstances of the production" as requiring blind return of anything he logs as protected. (Doc. 361 at 4). He is wrong. By their terms, Fed R. Evid. 502(d) & (e) "apply only to waiver in connection with disclosures, and say nothing of waiver by other means." *Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 201 (E.D.N.Y. 2016). The Rule "does not purport to supplant applicable waiver doctrine entirely," which would "yield an absurd result." *Id.* at 203. Clawback provisions cure waiver caused by production; they do not erase waivers that occurred outside it. *Id.* at fn. 1.

That distinction resolves Mr. Wooten's ask. Ford's position (here as well in its Motion to Compel) does not rest on "the fact or circumstances" of Cheeley's production. It rests on what Mr. Wooten did long before Cheeley's production: he voluntarily sent his work product to an academic who had refused to accept confidential material (Group A), to a lawyer in another case against Ford (Group D), and to a plaintiffs' document-sharing organization (Group E). (*See* Doc. 358).

Paragraph 18 of the Protective Order does not undo Mr. Wooten's earlier privilege forfeiture, and Paragraph 19 expressly preserves Ford's "right to contest any privilege claims." (Doc. 47, ¶ 19). Whether the materials are protected at all, and whether the crime-fraud exception reaches them, are questions the Protective Order routes to the receiving party's motion to compel—exactly where Ford has raised them.

In *United Physician Grp., LLC v. Leche*, 742 F. Supp. 3d 1251 (N.D. Ga. 2024), the court declined to resolve the absence-of-privilege and crime-fraud arguments on the clawback motion, holding they were "more appropriately considered in the context of the receiving party's motion to compel." *Id.* at 1260; *see also Frassetti v. BP Expl. & Prod., Inc.*, No. 3:21CV551-MCR-HTC, 2023 WL 4099900 (N.D. Fla. June 20, 2023)(finding same procedure for deciding motion to compel). Either way, Mr. Wooten is not entitled to a ruling that forecloses Ford's waiver and crime-fraud showing; those issues should be decided with Ford's pending Motion to Compel.

**III. Mr. Wooten waived work-product protection by disclosing his work product to outside parties.**

Work-product protection is not absolute, and may be waived. *United States v. Nobles,* 422 U.S. 225, 239 (1975). In fact, it "is waived when protected materials are voluntarily disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or which 'substantially increases the opportunity for potential adversaries to obtain the information.'" *In re Chiquita Brands Int'l*, 270 F. Supp. 3d 1332, 1338 (S.D. Fla. 2017)(citing *In re Grand Jury Subpoenas*, 561 F.Supp. 1247, 1257 (E.D.N.Y. 1982)). A party "may not voluntarily waive the ... work product privilege[] for its own benefit" and then "hide behind the privilege in subsequent

civil litigation." *In re Chiquita Brands Int'l*, 270 F. Supp. 3d at 1339. Mr. Wooten waived any protection he seeks to assert over the Identified Materials.[3]

*1. Group A: Choffnes emails.*

Mr. Wooten claims these emails as consulting-expert work product, but he concedes that no consulting agreement was ever signed. (Doc. 361 at 6). Fed R. Civ. P. 26(b)(4)(D) only protects facts and opinions of an expert "retained or specially employed ... in anticipation of litigation." Courts have found, one whose information was not acquired in that capacity "should be treated as an ordinary witness." *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 235 F.R.D. 703, 705 (M.D. Fla. 2006). The consulting-expert work product protection runs to parties and requires that relationship to exist. *Arkansas River Power Auth. v. The Babcock & Wilcox Co.*, 310 F.R.D. 492, 498 (D. Colo. 2015). It does not attach to materials exchanged before any engagement. Professor Choffnes understood exactly that: he told Mr. Wooten he would not handle confidential information without a consulting agreement in place. (Doc. 361 at 3). Mr. Wooten sent it anyway.

Mr. Wooten's fallback—that the emails are his own opinion work product under Rule 26(b)(3)—fares no better. He sent them to an academic researcher who was "actively studying connected-vehicle data" (Doc. 361 at 3), who had no engagement, owed no duty of confidentiality, and had expressly declined to accept one. A disclosure to a researcher free to publish on the very subject of the email is the definition of a disclosure "inconsistent with maintaining secrecy." *In re*

---

[3] Mr. Wooten also cannot invoke Plaintiffs' attorney-client privilege, which he seems to concede. (*Id.* at 2); *Knox v. Roper Pump Co.*, 957 F.3d 1237 (11th Cir. 2020) (attorney-client privilege belongs solely to the client); *see also United States v. Noriega*, 917 F.2d 1543, 1551 (11th Cir. 1990). Mr. Wooten's standing, if any, is therefore limited to genuine work product of his own. Work-product protection, unlike the attorney-client privilege, "belongs to both the client and the attorney, either of whom may assert it," *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009). At most, then, Mr. Wooten may attempt to prove his own work product protects these documents.

*Chiquita Brands Int'l*, 270 F. Supp. 3d at 1338. Mr. Wooten asks the Court to treat the "covering analysis" as separate from the transmission. (Doc. 361 at 7). It is not. The cover email is the instrument of the violation.

2. *Group B: Ahlberg file.*

Mr. Wooten devotes a single sentence to Group B: that the February 3, 2026 file "never left the Plaintiffs' legal team." (Doc. 361 at 6). That is precisely the problem for him. Plaintiffs' legal team—Cheeley Law Group, counsel for the clients for whom any work product was prepared—reviewed the file and produced it. Work-product protection "belongs to both the client and the attorney," *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009), and the clients, through their counsel, chose to give this file to Ford. Mr. Wooten, a former lawyer appearing only for himself, cannot override that choice. Nor has he described the file, created eight days before his resignation, with anything more than a label, which cannot carry a privilege proponent's burden. *See United States v. Davita, Inc.*, 301 F.R.D. 676, 684 (N.D. Ga. 2014).

3. *Group D: Rogers emails.*

By his own account, Mr. Wooten shared his assessments of how to depose Ford's corporate representative with Garrett Rogers, counsel for a plaintiff suing Ford in a separate ADAS action. (Doc. 361 at 2). The common-interest doctrine does not save it: that doctrine extends work-product protection only where the transferor and transferee "anticipate litigation against a common adversary on the same issue or issues." *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 623 (S.D. Fla. 2013). And even then the question bears on "to whom the disclosure is made" and whether disclosure to that person increases the opportunity for adversaries to obtain it. *Id.* at 622–23.

First, Mr. Rogers represents a different plaintiff in a different case involving a different Ford vehicle, one outside the Protective Order, which permits sharing only with attorneys in other cases "involving specifically a 2015-2023 F-150." (Doc. 47 ¶ 6(f); Doc. 364). Lawyers litigating different claims about different vehicles do not share a common legal interest "on the same issue or issues." *MapleWood Partners*, 295 F.R.D. at 623. Second, the Rogers thread is not an exchange of litigation strategy that happened to mention Ford's documents. It is the January 14, 2026 transmission of the de-redacted NHTSA documents, sent four months after this Court embargoed them. (Doc. 348-8). The common-interest doctrine protects shared legal strategy; it does not cloak the act of violating a court order. Mr. Wooten all but concedes the point: he "does not object to the Court's considering what was sent, to whom, or when." (Doc. 361 at 7). Having conceded that the transmission is fair game, he cannot claw back the email that made it.

*4. Group E: AIEG emails.*

Mr. Wooten shared Ms. Dostie transcript and his related judgments to the Attorneys Information Exchange Group, a plaintiffs' listserv with roughly a thousand members. (Doc. 361 at 2). Dissemination to an audience that large is the antithesis of "maintaining secrecy against opponents." *In re Chiquita Brands Int'l*, 270 F. Supp. 3d at 1338. Courts find waiver where materials are disseminated broadly, because such conduct "substantially increased the opportunity for a potential adversary to obtain the protected information." *Stern v. O'Quinn*, 253 F.R.D. 663, 682 (S.D. Fla. 2008). Courts have found waiver in closely analogous settings: sharing attorney work product with roughly 2,300 lawyers on a bar-association listserv "unquestionably waived its protection." *Stern v. Does*, 978 F. Supp. 2d 1031, 1052 (C.D. Cal. 2011). An organization that exists to circulate documents among hundreds of lawyers is no different. And Paragraph 9 independently barred posting Protected Documents to any "internet accessible document

repository." (Doc. 47 ¶ 9). Mr. Wooten disclaims any protection in the transcript and designation themselves. (Doc. 361 at 7). What remains are the emails arranging their placement in AIEG's repository: not work product, but the mechanics of the violation.

Finally, these are not neutral work-product materials. They are among the communications through which Mr. Wooten carried out the Court Order Violations now under investigation. For that independent reason the crime-fraud exception reaches them, as Ford's Motion to Compel explains: the exception applies to an attorney's own "fraud upon the court." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1337 (11th Cir. 2018). It reaches materials "made or performed in furtherance of a crime, fraud, or other misconduct fundamentally inconsistent with the basic premises of the adversary system." *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1298 (S.D. Fla. 2000). That showing is fully briefed in Docs. 358 and 364, and Ford incorporates it here.

## IV. Ford Obtained These Materials Through the Court-Ordered Examination, and Seeks Them Only as Evidence of Misconduct.

The Identified Materials are not documents Ford stumbled upon. They were captured by the Forensic Email Collection Protocol this Court ordered precisely to uncover the scope of Mr. Wooten's Court Order violations. The Protocol channeled every privilege dispute to the Court's resolution on a motion to compel, which is exactly where Ford has presented them. (Docs. 357-1, 358, 364). Mr. Wooten's motion is an attempt to end-run that process: to have the evidence returned before the Court decides whether it is protected at all.

Ford's purpose is narrow, and it is legitimate. It does not seek to use these communications substantively in the case-in-chief; it seeks them as evidence of the violations for the Court's sanctions decision. That limited purpose both answers any claim of prejudice and underscores why

return is inappropriate. The documents are proof of the very misconduct the Court authorized Ford to investigate.

Mr. Wooten's request to restrict Docs. 348-7 and 348-8 should also be denied. (Doc. 361 at 9). Those exhibits have been on the public docket for months, were argued in open court on April 1, 2026, and document the conduct at the center of this inquiry. Restricting judicial records requires good cause that outweighs the public's right of access, *see Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001), and Mr. Wooten offers none beyond his preference that the record of his conduct be less visible. His request for an order barring use of the materials "in this or any other matter" (Doc. 361 at 9) is broader still and finds no support in Paragraph 18 as applied to documents he did not produce.

## CONCLUSION

The Court should deny Mr. Wooten's motion as to Groups A, B, D, and E, deny as moot his request as to Group C, and deny his request to restrict Docs. 348-7 and 348-8. To the extent any protection question remains, the Court should resolve it, together with the waiver and crime-fraud questions, on Ford's pending Motion to Compel. (Docs. 358, 364).

Respectfully requested this the 10th of November 2026.

*/s/ Paul E. Petersen*
Michael R. Boorman
Georgia Bar No. 067798
Paul E. Petersen, III
Georgia Bar No. 791066
WATSON SPENCE, LLP
Bank of America Plaza
600 Peachtree Street NE
Suite 2320
Atlanta, GA 30308
Telephone: 229-436-1545
mboorman@watsonspence.com
ppetersen@watsonspence.com

Scott A. Richman
*Admitted pro hac vice*
Tiffany M. Gutierrez
*Admitted pro hac vice*
McDonald Toole Richman & Correnti, P.A.
srichman@mtrclegal.com
tgutierrez@mtrclegal.com

Michael Carey
*Admitted pro hac vice*
Dykema
mcarey@dykema.com

*Attorneys for Defendant Ford Motor Company*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Robert D. Cheeley
Gabrielle W. Waldrop
Andrew T. Craft
McKenzie R. Nadel
CHEELEY LAW GROUP, LLC
2500 Old Milton Parkway, Suite 200
Alpharetta, Georgia 30009
bob@cheeleylawgroup.com
gabby@cheeleylawgroup.com
andrew@cheeleylawgroup.com
mckenzie@cheeleylawgroup.com
*Counsel for Plaintiffs*

Nicholas H. Wooten
Nick Wooten, LLC
nick@nickwooten.com
*Counsel for Plaintiffs*

Donald H. Slavik
Slavik Law Firm, LLC
3001 South Lincoln Avenue
Suite C-1
Steamboat Springs, Colorado 80487
dslavik@slavik.us
*Counsel for Plaintiffs*

This the 10th of November, 2026.

*/s/ Paul E. Petersen, III*
Michael R. Boorman
Georgia Bar No. 067798
Paul E. Petersen, III
Georgia Bar No. 791066